IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| CARLOS HASAN HICKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:18-cv-0850 JB/JFR |
| | § | |
| BOARD OF COUNTY | § | |
| COMMISSIONERS OF THE | § | |
| COUNTY OF OTERO, CAROLYN | § | |
| BARELA, RICK MARTINEZ, | § | |
| AND JOHN DOE 1, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF OTERO AND CAROLYN BARELA'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT IN LIEU OF ANSWER**

**TO THE HONORABLE UNITED STATES DISTRICT COURT**:

COME NOW Defendants Board of County Commissioners of the County of Otero ("Board") and Carolyn Barela ("Ms. Barela") (also collectively referred to as "County Defendants"), by and through their counsel of record Kemp Smith LLC, by Richard Bonner, and pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") move the Court for an order dismissing Plaintiff's Amended Complaint ("Complaint") against them with prejudice or, in the alternative, pursuant to Federal Rule of Civil Procedure 12(e) ("Rule 12(e)") an order for a more definite statement.[1]

---

[1] County Defendants bring this Motion pursuant to Rule 12 and therefore reserve the right to state available affirmative defenses in an Answer, should one become necessary. Defendants also reserve the right to rely on other defenses as they become known during discovery and do not knowingly waive any defenses.

## I. INTRODUCTION

Plaintiff brings federal and state law claims against the County Defendants and Rick Martinez and John Doe 1 (the "other named defendants") other named defendants for alleged violations of his federal constitutional rights and state tort law which he claims occurred during a period of incarceration at the Otero County Detention Center ("OCDC") and the Otero County Prison Facility ("OCPF"). Plaintiff entered a guilty plea to his underlying criminal charges and has been released. Plaintiff's suit was originally filed *pro se* on September 10, 2018 and remained unserved for over a year. On March 25, 2020, the Court entered an order denying Plaintiff's Motion for Service, but noted that plaintiff's counsel had entered an appearance and granted them 30 days to amend plaintiff's pleadings. The Amended Complaint was filed on April 24, 2020.

County Defendants assert that the entirety of Plaintiff's Complaint fails to state a claim upon which relief can be granted. Plaintiff's claims are insufficient because they fail to plead factual content sufficient enough to allow this Court to draw a reasonable inference that the County Defendants are liable for the misconduct alleged against them. In fact, it was difficult for the County Defendants to prepare an initial response to the Complaint since it is unclear who is accused of doing what and to whom. The preparation of this motion was complicated by the complete omission of facts that would provide even the slightest hint of validity to Plaintiff's claims. It is unknown which allegations each of the County Defendants are required to defend against.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

1. On November 25, 2014, Plaintiff was arrested by the Alamogordo Police Department and booked into OCDC on various charges, including battery against his wife; after posting bond, he was released on November 26, 2014. Compl., Doc. 22, ¶¶ 8,10.

2. On December 16, 2014, a Grand Jury returned an indictment, a criminal summons was issued on December 17, 2014, and on January 17, 2015, he was arrested and booked into OCDC; he was released on bond on January 9, 2015. Compl., Doc. 22, ¶ 11,13.

3. Plaintiff claims that prior to his arrests, and for all times relevant to his Complaint, he suffered from mental illnesses, for which he was being treated by psychiatrists and other mental health professionals. Compl., Doc. 22, ¶ 14. Other than general references to his mental illnesses, Plaintiff's Complaint does not elaborate on these claims, or state exactly how they relate to his claims. He does not identify or describe specific actions, policies, or customs by the County Defendants that deprived him of any constitutional right with respect to these claims. The Complaint makes only conclusory allegations that County Defendants denied him access to treatment for medical, mental, and dental conditions.

4. On or about September 21, 2015, Plaintiff was arrested in the State of New York and then extradition proceedings began to bring him to New Mexico. Compl., Doc. 22, ¶ 15.

5. On or about January 24, 2016, Plaintiff was booked into OCDC and remained in the Board's custody (being shuttled between OCDC and OCPF, between January 24, 2016 and April 10, 2019, when Plaintiff accepted an Alford plea[2] to misdemeanor charges of assault against a household member and damage to property. Compl., Doc. 22, ¶ 18. Presumably, it is this period between January 24, 2016 to April 10, 2019 ("incarceration period") that Plaintiff's alleged violations occurred. Plaintiff claims that during his incarceration period he spent time at OCDC (approx. 24 months) and at OCPF (approx. 14 months) for a total of 38 months in pre-trial detention. Compl., Doc.22, ¶¶ 20-22. Plaintiff's claims against the Board appear to be

---

[2] "Like any plea, an Alford plea results in a conviction to which *Heck* applies." *See Havens v. Johnson*, 783 F.3d 776, 784 (10th Cir. 2015) (quoting *Green v. Chvala*, 567 Fed. Appx. 458, 459 (7th Cir. 2014)).

limited only to those alleged constitutional deprivations that occurred at OCDC. Compl. Doc. 22, ¶ 4.

6. Due to Defendants' actions and omissions, Plaintiff remained in pre-trial detention for over 38 months. Compl., Doc. 22, ¶ 19. Like the rest of the Complaint, this particular allegation is so broad that it is impossible to prepare a proper response. It is unclear if Plaintiff attempts to impose liability on the County Defendants for incarcerations beyond the subject incarceration period. Nowhere in the Complaint does Plaintiff expressly challenge the legality of his incarceration period or the appropriateness of the underlying criminal charges that resulted in his incarceration. To the extent that Plaintiff attempts to impose federal or state liability on the County Defendants for his incarceration, beyond the stated claims that relate to the conditions of confinement once he was at OCDC or OCPF, those claims would fail because the County Defendants were not involved in the underlying criminal adjudication process that resulted in his incarceration. Furthermore, Plaintiff fails to identify which, if any, of the procedural safeguards at all phases of the criminal adjudication process – pre-trial to sentencing – was denied to him, and by whom.

7. Plaintiff remained in pre-trial custody at OCDC, and under the direct control of Ms. Barela, for approximately 24 months. Compl., Doc. 22, ¶ 20. And remained in pre-trial custody at OCPF, and under the direct control of Defendant Martinez, for approximately 14 months. Compl., Doc. 22, ¶ 21.

8. Most of the 38 months of Plaintiff's pre-trial detention were spent in solitary confinement/segregation, despite Plaintiff's administrative requests to review his conditions of confinement and despite Defendants having no punitive reason for keeping him in solitary confinement/segregation. Compl., Doc. 22, ¶ 22. These allegations are raised repeatedly

throughout the Complaint: (1) that Plaintiff was placed in "solitary confinement/segregation" for most of his incarceration period, (2) that Plaintiff sought administrative review of his conditions of confinement, but those requests were denied. Yet, nowhere in the Complaint does Plaintiff describe the conditions of his confinement or explain why they were unconstitutional. He does not identify a single confinement condition in detail. He also fails to identify the persons that were directly involved in any of the alleged deprivations. Broadly asserting his claims against the County Defendants is insufficient to state a proper Section 1983 claim. Plaintiff also fails to identify the constitutional interests that he relies upon to claim that he had a right to be free from the confinement conditions that he claims were unconstitutional. The claims that Plaintiff sought administrative review of his confinement conditions and that those requests were denied suffer from level vagueness and are factually insufficient to assert a proper Section 1983 claim. Plaintiff's Complaint unfairly denies each of the County Defendants the right to know what exactly they are accused and the allegations they need to defend against.

9. During the 38 months of Plaintiff's pre-trial detention, Plaintiff suffered medical conditions that went unaddressed, despite Plaintiff's administrative requests for medical care, mental health care, and dental treatments. Compl., Doc. 22, ¶ 23.

10. Plaintiff, upon information and belief, exhausted all available administrative remedies with regard to his conditions of confinement and requests for medical care. Compl., Doc. 22, ¶ 24. This allegation is vague and lacks factual support. The Complaint provides no information regarding the administrative process that Plaintiff repeatedly mentions throughout his Complaint. However, he does concede the existence of an administrative process to review confinement conditions and medical care and that he was afforded the opportunity invoke it.

11. Because of the 38 months of pre-trial detention – most of which was spent in solitary confinement for no legitimate reason – Plaintiff suffered physical and emotional damages. Compl., Doc. 22, ¶ 25.

Counts I and II of the Complaint broadly allege that as a result of his confinement conditions the County Defendants violated Plaintiff's 14th Amendment right to procedural and substantive due process. Compl., Doc.22, ¶¶26-38.

Count III of the Complaint, entitled, Municipal Liability, broadly alleges that the County Defendants and the other named defendants are "policymakers responsible for created, enacting, and enforcing appropriate policies regarding the humane and constitutional treatment of pre-trial detainees, including Plaintiff. Compl., Doc. 22, ¶¶39-42. Plaintiff alleges that the County Defendants and Defendant Martinez are responsible for "hiring, training, and supervising OCDC and OCPF employees." Compl., Doc. 22, ¶40. The nature of the claim being made here is unclear. Count III concludes by alleging that the actions of the County Defendants and Defendant Martinez actions in creating or failing to create policies and customs within OCDC and OCPF resulted in "violations of Plaintiff's constitutional rights" and did so "with deliberate indifference."

Lastly, in Count IV (another hodgepodge of vague and imprecise allegations), Plaintiff makes a claim for false imprisonment pursuant to the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1 et seq. Compl., Doc. 22, ¶¶ 43-47. Plaintiff claims the County Defendants and the other named defendants are liable under the doctrine of respondeat superior for the conduct of their employees. The allegations in Count IV are factually insufficient and fail to state a claim upon which relief can be granted.

## III. MOTION TO DISMISS

### A. Standard for 12(b)(6) Motion

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To overcome a motion to dismiss, the complaint must allege sufficient facts so that relief is plausible on its face. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). In considering the County Defendants' motion, the Court must assume as true all well-pleaded facts, and must draw all reasonable inferences in Plaintiff's favor. *See Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, `1244 (10th Cir. 2006). To survive a motion to dismiss, a complaint must contain sufficient factual matter that if accepted as true states a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The mere metaphysical possibility that plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007). Conclusory allegations are not "well-pleaded," and thus are not taken as true for purposes of a motion to dismiss. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Twombly warned against "wholly conclusory statement[s]," *Id.*at 1966-67. As the Tenth Circuit explained, "[t]his requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claims against them." *Robbins v.*

*Oklahoma*, 519 F.3d 1248 (10th Cir. 2008). "The *Twombly* Court was particularly critical of complaints that 'mentioned no specific time, place, or person involved in the alleged conspiracies.'" *Id*. (internal citations omitted). The degree of specificity "depends on context." *Id.*

> Although we apply "the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally," *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007), complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically involve complex claims against multiple defendants. The *Twombly* standard may have greater bite in such context, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity "at the earliest possible stage of litigation." [Citations omitted]

519 F.3d at 1249. This standard should be considered in light of the requirement that Section 1983 liability must be based on personal acts of the individuals or governmental entities sought to be held liable.

### B. Plaintiff's Claims Against Carolyn Barela Should be Dismissed.

Ms. Barela is the Director of the Otero County Detention Center and Plaintiff has sued her in her individual and official capacities. Compl., Doc. 22, ¶5. Plaintiff asserts that Ms. Barela "was acting under color of state law and within the scope of her employment at all times material" to his complaint. *Id*. As noted above, Plaintiff asserts claims against Ms. Barela in all four Counts of the Complaint. But as stated above, he fails to provide any factual support for his allegations against Ms. Barela. The Complaint makes no mention of any direct contacts between Ms. Barela and Plaintiff. It also fails to state how it is that she is individually liable for the alleged deprivation of constitutional rights.

Unfortunately, Plaintiff's Complaint attempts to hold Ms. Barela liable for the actions and omissions of others, including those over which she had no control. Plaintiff concedes that Ms. Barela does not oversee operations at OCPF, but as alleged, he seeks to impose liability on her for constitutional deprivations that occurred at OCPF. He also claims that Defendant John Doe 1 "is

the person entrusted by the Board to provide access to medical service to Plaintiff during his detention" but seeks to hold Ms. Barela liable for claims regarding his access to medical care. Plaintiff also alleges that Ms. Barela is liable for Board actions, including their policies and customs, but, quite contradictorily, also claims, in the Complaint, that OCDC is a "subdivision" of Otero County overseen by the Board. In effect, admitting that Ms. Barela works for and reports to the Board, and absent factual allegations establishing otherwise, she is not liable for actions of the Board.

1. **Ms. Barela is Not Liable in Her Official Capacity.**

Plaintiff's claims against Ms. Barela in her official capacity should be dismissed because those claims are duplicative of the claims he asserts against the Board. A suit against a governmental officer represents another way to plead an action against a governmental entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Thus, "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 166. Where a plaintiff chooses to sue both the municipality and the municipal officers in their official capacities, courts routinely dismiss the official capacity claims as redundant. *Mays v. Board of County Comm'rs of the County of Lincoln*, No. 09-CV-662 WJ/KBM, 2010 WL 11626655, *6 (D. N.M. March 26, 2010).

Here, Plaintiff has already sued the Board and as such his claims against Ms. Barela, in her official capacity, are redundant and should be dismissed.

2. **Ms. Barela is Not Liable in Her Individual Capacity.**

To sustain a claim under Section 1983 against Ms. Barela in her individual capacity, Plaintiff must allege facts showing that the "conduct complained of was committed by a person;" that the person was "acting under color of state law;" and that this "conduct deprived [the plaintiff]

of rights, privileges or immunities secured by the Constitution or laws of the United States." *Parrat v. Taylor*, 451 U.S. 527, 535 (1981). Plaintiff Complaint fails to make a proper Section 1983 claim against Ms. Barela. "It is axiomatic that, to prevail on a damages claim for a constitutional violation pursuant to Section 1983, the plaintiff must show that the defendant, acting under color of state law, "personally participated in the alleged violation.'" *Roberston v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007) (quoting *Jenkins v. Wood*, 81 F.3d 988. 994 (10th Cir. 1996)). "The plaintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation." *Jenkins*, 81 F.3d at 994. A plaintiff must name the individuals responsible, and plead the facts showing "exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Smith v. United States,* 561 F.3d 1090, 1104 (10th Cir. 2009) (emphasis in original) (internal quotations omitted). Merely hypothesizing that an individual defendant had personal knowledge or involvement is insufficient. *Grissom v. Werholtz*, 2012 WL 3732895, at *4 (D. Kan. Aug. 28, 2012), aff'd, *Grissom v. Werholtz*, 524 Fed. Appx. 467 (10th Cir. 2013). Also, "supervisory status alone does not create § 1983 liability. Rather, there must be an affirmative link … between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Any claim that a defective policy creates supervisory liability must be supported by plausible allegations that, when taken as true, the supervisor's conduct was a "deliberate or conscious choice." *Barney v. Pulsipher*, 143 F.3d at 1307-08.

      Here, because of the generality of the claims asserted against the County Defendants, it is clear that Plaintiff claims against Ms. Barela arise solely because of her position as Director of

OCDC. The Complaint fails to allege sufficient facts that Ms. Barela "personally participated" in the deprivation of Plaintiff's constitutional rights or that her conduct was "deliberate or conscious." Plaintiff attempts to impose Section 1983 liability on Ms. Barela solely because of her position as Director of OCDC. Supervisory status alone does not create Section 1983 liability and Plaintiff has failed to establish an affirmative link between his alleged constitutional deprivations and Ms. Barela's personal participation. Permitting Plaintiff's Complaint to proceed beyond a 12(b)(6) motion would be unfair to Ms. Barela and would force her to defend against vague and speculative claims. It would also force her to guess which of the claims that Plaintiff asserts against all of the named defendants (all of his claims) are claims that she need to defend against. Because his claims are insufficient and fail to give fair notice to Ms. Barela what she is alleged to have done, Plaintiff's claims against Ms. Barela should be dismissed.

### 3. Ms. Barela is Entitled to Qualified Immunity.

Furthermore, to extent that any of Plaintiff's claims are held to meet the standards of a Section 1983 claim, Ms. Barela is protected by the doctrine of qualified immunity. Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018). When a defendant asserts a qualified immunity defense, the plaintiff has a "heavy two-part burden" of establishing "(1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the rights violated was clearly established at the time of the defendant's action." *Id.*

Here, Plaintiff has failed to meet his burden of establishing that Ms. Barela violated a federal constitutional or statutory right, and the right violated was clearly established at the time of the alleged occurrence. Clearly, during the period of incarceration, Plaintiff was not entitled to

the same liberty interests that he would enjoy outside of incarceration. To establish his due process claims, Plaintiff must demonstrate that the County Defendants deprived him of a constitutionally protected liberty interest. *See Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). And conditions of confinement do not invoke a liberty interest unless they "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandlin v. Conner*, 515 U.S. 472, 484 (1995). Thus, Plaintiff has failed to assert what constitutional right as a jail inmate he had to be free of the confinement conditions that he experienced during his incarceration period.

        **C.**        **Plaintiff's Claims Against the Board Should be Dismissed.**

For all of the foregoing reasons, the Court should also dismiss Plaintiff's allegations against the Board. Plaintiff asserts his claims broadly and collectively without providing the Board with fair notice of which claims it is required to defend against. Plaintiff fails to state a claim upon which relief can be granted.

        **1.**        **Plaintiff Fails to Allege that His Claims Against Otero County are the Result of a Municipal Policy or Custom.**

Section 1983 is the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). "A cause of action under Section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees,* 215 F.3d 1168, 1172 (10th Cir. 2000). In *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978), the United States Supreme Court held that municipalities and other local government units are "persons" to whom § 1983 applies. However, a governmental entity is liable under Section 1983 only when the entity itself is a "moving force" behind a deprivation of constitutional rights. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, supra, 436 U.S., at 694, 98 S.Ct., at 2037) The entity's "policy or custom" must

have played a part in the violation of federal law. *Craft v. City of Hobbs Police Dep't*, 2017 WL 5135578, at *3 (D.N.M. Nov. 3, 2017). Thus, it is well settled that in order to make a claim against a governmental entity, a plaintiff must identify a governmental policy or custom which cause his injuries. *Id.* at *3 (citing to *Board of County Commissioners v. Brown*, 520 U.S. 397 (1997)).

Here, Plaintiff fails to show that Board was the "moving force" behind a policy or custom that resulted in the deprivation of his constitutional rights. In fact, he does not reference or name any policy or custom attributable to the Board that could have resulted in his claimed injuries. Having failed to identify a specific policy or custom in the Complaint, Plaintiff is unable to allege that the execution of a policy or custom of the Board's is what resulted in the deprivation of his constitutional rights. Consequently, he has failed to assert a proper claim against the Board and his Complaint should be dismissed.

### D. Plaintiff's Claims Against the County Defendants Should be Dismissed for Failure to Comply with the Prison Litigation Reform Act's ("PLRA") Exhaustion Requirements.

The 1996 PLRA requires prisoners to exhaust all administrative remedies available to them before filing a complaint in federal court. 42 U.S.C. § 1997(e)(a). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted." The PLRA also provides that "[n]o federal civil action may be brought by a prisoner . . . for mental or emotional injury while in custody without a prior showing of physical injury. 42 U.S.C. § 1997e(e); *see also* Fletcher v. Flood, 2020 WL 2065287, at *3 (D. N.M. Apr. 29, 2020). "Congress enacted the PLRA to . . . provide for [frivolous prisoner lawsuits'] dismissal at an early stage." *Woods v. Carey,* 722 F.3d 1177, 1182

(9th Cir. 2013). The Supreme Court has affirmed that the PLRA's exhaustion requirement is mandatory. *Woodford v. Ngo,* 548 U.S. 81, 85 (2006).

Here, Plaintiff has failed to identify or describe the administrative review process that he only vaguely references in his Complaint. He does not claim to have exhausted any of administrative review processes that may have in place, during his incarceration period, at either OCDC or OCPF. He does, however, concede the existence of an administrative review process. Also, to the extent Plaintiff claims mental or emotional injuries, he has failed to first establish, or even claim, a physical injury. As result of these pleading deficiencies, Defendant's Complaint should be dismissed in its entirety.

> **E.  Plaintiff's Claims Against the County Defendants for False Imprisonment Under the New Mexico Tort Claims Act Should be Dismissed.**

Plaintiff's state law claims arise out of the same allegations he uses in his Section 1983 claims. As discussed above, Plaintiff's Complaint does not challenge the legality of the underlying criminal charges that resulted in his incarceration period; in fact, he eventually entered a plea of guilty. Count IV is so vaguely and broadly worded that Plaintiff's intended claims are unknown.

Nonetheless, the New Mexico Tort Claims Act ("NMTCA") preserves sovereign immunity against tort claims for state governmental entities and public employees acting in the scope of their duties, except as specifically waived. *Fernandez v. Mora-San Miguel Elec. Co-Op, Inc.*, 462 F.3d 1244, 1250 (10th Cir. 2006); see also N.M. Stat. Ann. § 41-4-4(A) ("A governmental entity and any public employee while acting within the scope of duty are granted immunity for any tort except as waived by the New Mexico Religious Freedom Restoration Act and by Sections 41-4-5 through 41-4-12 NMSA 1978."). Section 41-4-5 through 41-4-4(A) waive immunity for certain tortious acts, but not all. *See* NMSA 1978, §§ 41-4-4(A). Also, NMTCA requires that to maintain a claim for damages against a governmental entity, the plaintiff must provide proper notice of the claim.

*Id.* at § 41-4-16. The notice-of-claim requirement operates as a statutory limitations period and failure to file a timely notice of claim is a statutory bar to suit. *See Marrujo v. New Mexico Highway Transportation Dep't,* 1994-NMSC-116, ¶14, 118 N.M. 753, 887 P.2d 747.

Not surprisingly, Plaintiff's Complaint does not identify which specific waiver provision of the NMTCA he relies upon to proceed with his claims for false imprisonment. He also fails to allege that he has complied with the notice-of-claim requirement. Lastly, Count IV fails to comply with the federal pleading standards and does not state a claim for which relief can be granted. As such, Plaintiff's allegation in Count IV should be dismissed.

> **E.  Plaintiff's Remaining Federal Claims and State Law Claims Should All be Dismissed Due to His Failure to Plead Sufficient Facts to Support Any and All Remaining Claims.**

The entirety of Plaintiff's federal and state law claims are broad, factually unsupported, and nothing more than a long list of conclusory allegations. As such, he has failed to comply with the federal pleading standards. Most importantly, he has failed to a state a claim upon relief can be granted. Thus, Plaintiff's Complaint should be dismissed in its entirety.

### IV.  ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT

A Rule 12(e) motion is appropriate when a complaint "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The Supreme Court of the United States has held that, "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). "Whether to grant or deny such a motion lies within the sound discretion of the court." *Graham v. Prudential Home Mortg. Co.*, 186 F.R.D. 651, 653 (D. Kan. 1999)(citation omitted).

As explained at length above, the entirety of Plaintiff's Complaint is nothing more than broad and vague allegations, without any factual support, asserted against all of the named defendants collectively. In addition to its failure to meet the federal pleading standard, Plaintiff's Complaint provides no basis for the County Defendants to formulate a thoughtful and informed response. Therefore, if the Court declines to dismiss the Complaint, the County Defendants respectfully request that the Court order a more definite statement from Plaintiff.

## V. CONCLUSION

Plaintiff's Complaint is legally and factually insufficient and should be dismissed under Rule 12(b)(6) with prejudice, and for such other and further legal and equitable relief as the Court deems just and proper. Should the Court conclude that Plaintiff's Complaint may not be dismissed, Defendants ask, alternatively, that the Court, pursuant to Rule 12(e), require Plaintiff to make a more definite statement of the factual and legal grounds of the Board's and Ms. Barela's alleged liability.

Respectfully submitted,

KEMP SMITH LLP
P.O. Box 2800
El Paso, Texas 79999-2800
915-533-4424
915-546-5360 (Fax)

By: _____
   **RICHARD BONNER**
   Richard.Bonner@kempsmith.com

*Attorney for Defendants Board of County Commissioners of the County of Otero & Carolyn Barela*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 18th day of May 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| James C. Ellis, Esq.<br>ELLIS & ESTES<br>3949 Corrales Rd. Suite 230<br>Corrales, NM 87048<br>James@EllisEstes.com<br>*Attorneys for Plaintiff* | Christina Muscarella Gooch, Esq.<br>SUTIN, THAYER & BROWNE<br>P.O. BOX 1945<br>Albuquerque, NM 87103<br>tmg@sutinfirm.com<br>*Attorney for Defendant Martinez* |

By: /s/ Richard Bonner

**RICHARD BONNER**
Richard.Bonner@kempsmith.com