UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CARLOS HASAN HICKS,**

      **PLAINTIFF,**

**V.**　　　　　　　　　　　　　　　　　　　　　　　**NO. 18-CV-0850 JB-JFR**

**BOARD OF COUNTY COMMISSIONERS OF THE
COUNTY OF OTERO, CAROLYN BARELA,
RICK MARTINEZ, AND
JOHN DOE 1,**

      **DEFENDANTS.**

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF OTERO AND CAROLYN BARELA'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT IN LIEU OF AN ANSWER (DOC. 28)

COMES NOW, Plaintiff, Carlos Hasan Hicks, by and through his attorneys of record, ELLIS & ESTES, and submits this Response to Defendants Board of County Commissioners of the County of Otero and Carolyn Barela's Motion to Dismiss Plaintiff's Amended Complaint for Damages Caused by the Deprivation of Civil Rights (Doc. 28).

This response addresses the Motion to Dismiss filed by Defendant Board of County Commissioners of the County of Otero and Carolyn Barela, Director of the Otero County Detention Center.[1] For clarity, Plaintiff shall refer to these Defendants collectively as the "County Defendants". In addition, Plaintiff hereby responds to the County Defendants' Motion for a More Definite Statement. Plaintiff does not strictly oppose the Motion for a more definite

---

[1] Defendant Ricardo Martinez, the Warden of Otero County Prison Facility, has also filed a similar Motion to Dismiss (Doc. 26) and will be addressed by Plaintiff in a subsequent pleading.

statement. Indeed, Plaintiff has requested from all Defendants his detention records. Pursuant to these requests, and since Plaintiff filed his Amended Complaint, Plaintiff has received some but not all of these records. The records Plaintiff has received have helped elucidate his specific pretrial detention conditions at the Otero County Detention Facility ("OCDC"). Plaintiff is still waiting on records concerning his detention at the Otero County Prison Facility ("OCPF"). It is believed that once Plaintiff is in possession of all of these records, he will be in a much better position to address some of the concerns raised in Defendants' Motions to Dismiss in the form of a Second Amended Complaint.

### *1. Overview of Plaintiff's Claims Against the County Defendants*

On September 10, 2018, Plaintiff, then a *pro se* pretrial detainee, filed his original Complaint in this matter and was allowed to proceed paying reduced fees and costs pursuant to 28 U.S.C. § 1915 (Doc. 10). Following his release from custody on April 9, 2019, Plaintiff retained current counsel, who, pursuant to the Court's Order Permitting Amendment (Doc. 20), filed the pending Amended Complaint on April 24, 2020 (Doc. 22)(requiring the submission of our Amended Complaint by April 24, 2020).

Plaintiff's claims against the County Defendants stem from events that occurred during the time he spent as a pretrial detainee within the Otero County Detention Center ("OCDC"). During his 38-month pretrial detention,[2] Plaintiff was shuttled back and forth between OCDC

---

[2] The mere fact that Plaintiff spent over 38-months in pretrial detention is conscious shocking. Ultimately, after repeated failed attempts to raise speedy trial issues or even to have a trial held, Plaintiff became fed up and pleaded guilty to a petty misdemeanor (assault against a household member) and a misdemeanor (criminal damage to the property of a household member, under $1,000) and was sentenced to 545 days' time served (even those Plaintiff had already spent 1,171 days as a pretrial detainee).

and the Otero County Prison Facility ("OCPF").  Plaintiff was detained at OCDC during the following approximate dates:

- January 24, 2016 – February 9, 2016 (when Plaintiff was transferred to OCPF);
- March 9, 2017 – November 29, 2017 (when Plaintiff was transferred to OCPF); and
- August 30, 2018 – April 9, 2019 (when Plaintiff was released from custody after accepting an *Alford* plea to a petty misdemeanor charge of assault against a household member and a misdemeanor plea of damage to property damage under $1,000.

Throughout his detention in OCDC, Plaintiff was repeatedly placed in solitary confinement without notice and without an opportunity to challenge the County Defendants' decision.  Specifically, Plaintiff spent *at least* the following periods in solitary confinement without any legitimate penological justification:

- September 24, 2017 – November 29, 2017 (when Plaintiff was transferred to OCPF);
- August 30, 2018 – October 19, 2018; and
- November 30, 2018 – December 12, 2018.

As is sufficiently alleged in Plaintiff's complaint, Plaintiff was never told the reasons he was being transferred to solitary confinement and at no time was Plaintiff given the ability to challenge the County Defendants' decisions to house him in solitary confinement.  *See* Amended Complaint, ¶¶ 18, 22.  These actions and omissions constitute violations of Plaintiff's procedural and substantive due process rights.

In addition, during Plaintiff's detention in OCDC, Plaintiff was denied adequate medical care.  *See* Amended Complaint, ¶ 23.  Specifically, Plaintiff suffered from an untreated abscess in his tooth that resulted in Plaintiff having to undergo extensive dental care following his release.  Plaintiff's complaints of severe back, shoulder, and knee pain went untreated, resulting

in prolonged pain and suffering. Moreover, Plaintiff's mental health disorders (suspected schizoaffective disorder and major depression) went inadequately treated, and exasperated during long stints in solitary confinement, causing Plaintiff to suffer a deterioration of his mental health status. *See* Amended Complaint, ¶¶ 14, 25.

Plaintiff's Complaint and Amended Complaint come at a time when there is heightened awareness of the inequities imposed on Black Americans by our criminal enforcement and justice system. The Black Lives Matter movement is an increasingly influential voice in our political process because it helps highlight the over-incarceration of Black American men like Plaintiff Carlos Hicks, and the lack of constitutional process being afforded to this disadvantaged segment of society. In addition, Americans are becoming increasingly aware of the deep psychological damage caused by prolonged periods in solitary confinement. Indeed, even a cursory review of recent medical literature shows that mental health professionals are increasingly describing solitary confinement as "torture". *See e.g.*, Solitary Confinement is Torture, Robert T. Miller, Ph.D., PSYCHOLOGY TODAY, May 10, 2018 ("Solitary confinement, [as a punishment] cannot be justified for any reason, precisely because it imposes severe mental pain and suffering beyond any reasonable retribution for criminal behavior and thus constitutes an act defined [as] . . . torture.") (quoting a 2011 United Nations report).

In his Amended Complaint, and as set forth in more detail below, Plaintiff adequately alleges deprivations of his liberty interests through denials of procedural and substantive due process; adequately alleges similar deprivations for denial of adequate medical care; and states a justiciable cause of wrongful imprisonment under the New Mexico Tort Claims Act. Accordingly, Plaintiff's claims against the County Defendants should be allowed to move forward and discovery on these claims should be freely allowed.

Alternatively, Plaintiff does not necessarily oppose the County Defendants' request for a more definite statement under FED. R. CIV. PRO. 12(e). Plaintiff has sought from the County Defendants all records regarding Plaintiff's pretrial detention conditions at both OCDC and OCPF. Pursuant to those requests, Plaintiff has received some, but not all, of his records. For example, Plaintiff recently received approximately 500 pages of records pertaining to Mr. Hicks' detention at OCDC, including logs documenting Mr. Hicks' periods in solitary confinement.[3] However, none of these records include any information regarding Plaintiff's detention at OCPF. Once Plaintiff reviews these detention records, he believes he will be in a much better position to provide a more definite statement in the form of a Second Amended Complaint.

### 2. *Standards for a Motion to Dismiss*

County Defendants have moved this Court to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6). 12(b)(6) motions ask the court to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

---

[3] These records contain one instance of disciplinary action taken against Mr. Hicks. In that instance, Mr. Hicks was accused of hording medication. According to the records, Mr. Hicks was notified of the accusation and was allowed to present evidence for his defense. After being heard, the accusation was substantiated and certain of Mr. Hicks' privileges were taken away for thirty days. No similar records exist for any of the times Mr. Hicks was placed in solitary confinement. A reasonable inference can be made from the lack of documentation that Mr. Hicks was never placed on notice of why the County Defendants had decided to place him in solitary confinement, and also that Mr. Hicks was ever given an opportunity to challenge such decisions.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

In *Twombly*, the Supreme Court clarified the standard for courts to use in reviewing a dismissal, *to wit*: courts must test "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly . . .).* Under this standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Id.* "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id. Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In this case, given the incredible amount of time Plaintiff was placed in pretrial solitary confinement without any justification, all the while suffering from mental and physical ailments, Plaintiff should be able to proceed in this litigation, taking the necessary discovery to "muster [the] factual support for these claims." *Id.*

### 3. *Standards of Qualified Immunity in Solitary Confinement Cases*

The doctrine of qualified immunity (which is currently the subject of much scrutiny and skepticism) provides that "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether qualified immunity exists is a question of law. *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994).

When determining if a right is clearly established, courts look to see if the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Typically, for a right to

6

be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). However, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 745 (2002). The "salient question" is whether the state of the law at the time of the incident gave the defendants "fair warning" that their conduct was unconstitutional. *Id.* at 741.

In the context of pretrial detention claims, it is clearly established that "when the conditions of confinement are excessive in relation to their purpose, there is a procedural due process right at stake." *Romero v. Bd. Of Cnty. Comm'rs*, 202 F. Supp. 3d 1223, 1258 (D. N.M. 2016) (Browning, J.) (citing *Littlefield*, 641 F.2d at 730). Similarly, it is clearly established that when a pretrial detainee's conditions of confinement are "sufficiently serious" (an inquiry that examines the "severity of the alleged deprivations" and "their duration"), such conditions implicate the detainee's substantive due process rights if such conditions are created by the defendants' deliberate indifference to the detainee's health and safety. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). Denying an inmate adequate medical care can constitute a deprivation of that inmate's substantive due process rights. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) (stating that pretrial detainees "are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment").

### 4. *Carlos Hicks Has Sufficiently Pleaded a Claim for Violation of Procedural Due Process Against the County Defendants*

The County Defendants have moved to dismiss Plaintiff's Amended Complaint for failure to state a claim. To respond to Defendants' motion, it is necessary to examine what procedural process is due to pre-trial detainees with regard to solitary confinement.

As in all procedural due process cases, the plaintiff must show (1) that he possessed a protected liberty interest to which due process protection was applicable; and (2) that the government failed to afford the plaintiff an appropriate level of process. *See Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006).

"[O]nce it is determined that the Due Process Clause applies, the question remains what process is due." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* at 542. What process is due is a "flexible" analysis "and calls for such procedural protections as the particular situation demand." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).

In the specific context of pretrial detention cases, the protected liberty interest is clearly established as the right to be free from punishment. *See Bell v. Wolfish*, 441 U.S. 520, 534 (1979) ("what is at issue when an aspect of pretrial detention that is not alleged to violate any express guarantee of the Constitution is challenged, is the detainee's right to be free from punishment."); *see also Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (being placed in administrative segregation triggers due process concerns).

> [T]he constitutionality under a due process analysis of the nature or duration of pretrial detention turns on whether such detention amounts to "punishment" in the constitutional sense. "For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."

*Littlefield v. Deland*, 641 F.2d 729, 731 (10th Cir. 1981) (quoting *Bell v. Wolfish*, 441 U.S. at 535).

8

The concept of pretrial punishment has been defined by our Supreme Court as an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandlin v. Conner*, 515 U.S. 472, 484 (1995). In the case of *Littlefield v. Deland* (*supra*), the Tenth Circuit grappled with what constitutes unconstitutional punishment for a pretrial detainee. 641 F.2d at 730. There, Mr. Littlefield was arrested and charged with disorderly conduct. Upon arriving at the jail, Mr. Littlefield (who suffered from mental illness) was placed in a segregated cell where he was held for fifty-six days without notice or opportunity to be heard with respect to the nature or duration of his confinement. *Id.* at 730. The court held that "[Mr. Littlefield's] confinement amounted to punishment and therefore that the county's failure to provide plaintiff with any meaningful notice and hearing violated the due process clause of the fourteenth amendment." *Id.* at 731 (citing *Bell v. Wolfish*, 441 U.S. at 534).

More recently, in *Fogle v. Pierson*, the Tenth Circuit held that "[t]he district court abused its discretion in concluding that there was no <u>arguable</u> basis that a three-year period of administrative segregation – during which time Fogle was confined to his cell for all but five hours each week and denied access to any outdoor recreation – is not 'atypical.'" 435 F.3d at 1259 (emphasis in original). Similarly, the Tenth Circuit has found that a district court had erred in dismissing a prisoner's due process claim after finding that the prisoner's 75-day disciplinary segregation was not "atypical". *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002). In *Gaines*, the court found that dismissal of the prisoner's complaint, before conducting a careful examination of the prisoner's conditions of confinement, was reversible error.

In determining whether segregation is "atypical," the Tenth Circuit considers, as a whole, the following factors:

    (i)    The duration of the confinement and whether it increases the inmate's overall confinement duration;

      (ii)      Whether the placement in segregation is indeterminate;

      (iii)     The frequency with which the segregation placement is reviewed;

      (iv)     The penological interest that segregation furthered, such as safety or rehabilitation; and

      (v)      Whether the conditions of placement are extreme.

*See e.g., Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1223, 1342 (10th Cir. 2007).

In this case, Plaintiff has alleged that he endured conditions that were punitive in nature. Specifically, at OCDC, Mr. Hicks was held in solitary confinement on at least three different occasions, for a total of at least seventy-six days. On no occasion was Mr. Hicks given notice of the reasons he was being transferred to solitary confinement and Mr. Hicks was never given the opportunity to challenge these decisions. During these times, Mr. Hicks' ability to interact with other inmates was significantly curtailed; his ability to maintain personal hygiene suffered (at times, Mr. Hicks was only allowed to shower three times per week); and his ability to maintain his physical and mental health deteriorated (at times, Mr. Hicks was only allowed outdoor recreation two or three times per week). In addition, the County Defendants' failure to ever provide the reason for placing Mr. Hicks in solitary confinement caused Mr. Hicks a great deal of anxiety over never knowing when he may be arbitrarily sent to segregation. Finally, the County Defendants never conducted any periodic reviews of Mr. Hicks' classification status while he was being housed in solitary confinement. *See Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983) ("Prison officials must engage in some sort of periodic review of the confinement" of prisoners in segregation); *see also Romero v. Bd. Of Cnty Comm'rs*, 202 F.Supp 3d at 1258 ("On these facts, where M. Romero alleges that A. Romero was 'placed in solitary confinement without *any* review, and that during his time in the facility he received no periodic hearing, and

no review of his classification' . . . M. Romero plausibly alleges a due process violation."). Taken together, the conditions to which Mr. Hicks was subjected must be considered atypical and unconstitutional punishment imposed upon Mr. Hicks in the absence of any legitimate governmental goal.

As in *Gaines v. Stenseng*, 292 F.3d at 1224, it would be error for this Court to dismiss Plaintiff's Amended Complaint against the County Defendants without first conducting a careful examination of the Mr. Hicks' conditions of confinement.

### 5. *Carlos Hicks Has Sufficiently Pleaded a Claim for Violation of Substantive Due Process Against the County Defendants*

As set forth in Plaintiff's Amended Complaint: "Plaintiff has a substantive due process right under the Fourteenth Amendment to humane conditions or pre-trial confinement, including but not limited to access to adequate medical care, the ability to maintain personal hygiene and physical fitness, and exposure to only limited periods of solitary confinement that are reasonable and justifiable." As stated above, to make a substantive due process claim for conditions of confinement, a plaintiff must satisfy two requirements. First, the alleged deprivation must be sufficiently serious with regard to the severity of the alleged deprivations and their duration. *Craid v. Eberly*, 164 F.3d at 495. Second, an aggrieved plaintiff must ultimately be able to show that the defendants acted intentionally or with a deliberate indifference to the plaintiff's health and safety. *Id.*

In this case, Mr. Hicks has satisfied his burden at the 12(b) stage of the proceedings. First, Plaintiff has alleged that he was deprived humane conditions of confinement while being

11

housed at OCDC. Such deprivations include being refused adequate medical and dental care,[4] being denied the ability to maintain personal hygiene and physical fitness,[5] and being subjected to extended periods of solitary confinement.[6] *See* Amended Complaint at ¶ 30. These deprivations were severe and resulted in Plaintiff suffering both physically and emotionally. Defendants' failure to provide adequate dental care caused Plaintiff to suffer an untreated tooth abscess, which required dental care following his release. Defendants' failure to provide adequate mental health care and subjecting Plaintiff to lengthy periods of unjustified and arbitrary solitary confinement worsened Plaintiff's underlying mental health.

Plaintiff has also sufficiently alleged a culpable state of mind. *See* Amended Complaint at ¶ 36 ("Plaintiff repeatedly complained to Defendants of the unreasonable conditions to which he was being subjected . . . . Thus, Defendants knew or should have known of the risk posed to Plaintiff by their actions and omissions as described herein.").

Accordingly, Plaintiff has sufficiently alleged substantive due process violations such that these claims should not be dismissed.

### 6. *The Constitutional Claims Against Carolyn Barela and the Board Should Not be Dismissed*

---

[4] *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners in their custody.") (citation omitted).

[5] *See Id.* at 810 (recognizing that "some form of regular outdoor exercise is extremely important to the psychological and physical wellbeing of inmates" and finding the district court erred in dismissing Eighth Amendment claims based on Plaintiff's allegations that he was denied regular outdoor exercise).

[6] *See Romero v. Bd. Of Cnty. Comm'rs*, 202 F.Supp. 3d at 1262 ("It [is] clearly established . . . that . . . being confined to a solitary cell without access to recreation for long periods of time violated [plaintiff's] constitutional rights.").

Individual government actors, such as OCDC director Carolyn Barela, are liable for constitutional violations that another committed, if such actor "set in motion a series of events that the defendants knew or reasonably should have known would cause others to deprive the plaintiff of his constitutional rights." *Bliss v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006) (quoting *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990). In this case, Mr. Hicks has alleged that Ms. Barela directly controlled the conditions of his pretrial detention (*see* Amended Complaint at ¶ 20), which necessarily includes controlling the decisions to place him in solitary confinement, and to do so without notice, opportunity to be heard, or periodic classification reviews. The claims against Ms. Barela in her individual and official capacity should not be dismissed.

While it is true that municipalities cannot be held liable under § 1983 solely because its officials deprived a plaintiff of a constitutional right, municipalities may be held liable if (1) the official committed an underlying constitutional violation; (2) a municipal policy or custom exists; and (3) there is a direct causal link between the policy or custom and the injury alleged. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). In this case, Plaintiff believes that discovery will reveal customs at OCDC, allowed to continue with the Board's deliberate indifference, that subject pretrial detainees such as Mr. Hicks to long periods of solitary confinement without affording due process and deny pretrial detainees such as Mr. Hicks adequate physical and mental healthcare in violation of their substantive due process rights.

### 7. *Plaintiff's State Claims Arising Under the New Mexico Tort Claims Act Should Not be Dismissed*

The New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1 *et seq.* waives immunity for law enforcement officers committing certain intentional torts, including false imprisonment. *See* NMSA 1978, § 41-4-12. Jail and prison officials are considered "law enforcement officers"

under the Tort Claims Act.  *See* NMSA 1978, § 41-4-3(D) (defining "law enforcement officer" as a public employee or governmental entity "whose principal duties under law are to hold in custody any person accused of a criminal offense . . . .").

To prove a claim of false imprisonment, a plaintiff must show that (1) the defendants intentionally confined the plaintiff without the plaintiff's consent; and (2) the defendants knew that they had no lawful authority to do so.  *See Scull v. New Mexico*, 236 F.3d 588, 599 (10th Cir. 2000) (interpreting New Mexico law).  In this case, the County Defendants intentionally confined Mr. Hicks in solitary confinement without Mr. Hicks' consent and without any legal justification to do so.  *See Willey v. Kirkpatrick*, 801 F.3d 51, 71 ("[to succeed on a claim of] false imprisonment within solitary confinement must have sufficiently pleaded that he had been subjected to punitive segregation for no legitimate reason and without the rudimentary protections of due process.") (internal quotations omitted).  As set forth in the Amended Complaint, and as more fully described above, Plaintiff has sufficiently alleged a claim of false imprisonment against the County Defendants under the New Mexico Tort Claims Act.

As to Defendants' contention that they were not on notice, as required by NMSA 1978, § 41-4-16, it is Defendants' burden to prove that the notice requirement was not met, and pleading sufficient notice is not a requirement borne by the Plaintiff.  *See Dutton v. McKinley Cty. Bd. Of Comm'rs*, 1991-NMCA-130, ¶ 7, 113 N.M. 51.  However, given the fact that Mr. Hicks has alleged that he "exhausted all available administrative remedies with regard to his conditions of confinement" (Amended Complaint, ¶ 23), dismissal of Plaintiff's state claims for failure to provide notice would be improper.  Furthermore, upon information and belief, Plaintiff did file actual tort claims notices regarding his conditions of confinement during his period of detention.

8. ***Defendants' Failure to Exhaust Argument is Premature and Belayed by Plaintiff's Plausible Allegations that He did Exhaust His Administrative Remedies***:

14

The County Defendants argues that the Court should dismiss the Amended Complaint because Plaintiff failed to exhaust his administrative remedies. This argument is, at best, premature. Because failure to exhaust administrative remedies is an affirmative defense under the PLRA, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Indeed, the Tenth Circuit has cautioned that "only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). Courts "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Id.* citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Further undercutting the County Defendants' argument is that Plaintiff has affirmatively alleged that he did, in fact, exhaust his administrative remedies with regard to his claims regarding his unjust placement in segregation, and with regard to his claims regarding being denied adequate healthcare. Accordingly, this Court should not dismiss the Amended Complaint for Plaintiff's alleged failure to exhaust administrative remedies.

### 9. *Plaintiff Does Not Object to Filing a More Definite Statement in the Form of a Second Amended Complaint, Especially Once Plaintiff's Entire Prison File is in Plaintiff's Possession.*

Federal Rule of Civil Procedure 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." In this case, the County Defendants have claimed that Plaintiff's Amended Complaint is vague and ambiguous, such that Plaintiff should be required to provide a more definite statement before the County Defendants are required to respond.

Although Plaintiff disputes that the Amended Complaint is so vague or ambiguous as to merit an Order from this Court requiring a more definite statement, Plaintiff does not object to providing more detail to which all Defendants may respond. Indeed, Plaintiff has worked to obtain his entire jail file, which, upon information and belief, will provide *at least* the following information material to his claims:

- The exact dates in which he was held in solitary confinement in both OCDC and OCPF;

- The names of those individuals personally responsible for the decisions to place Plaintiff in solitary confinement;

- The names of those individuals personally responsible for the decisions to keep Plaintiff in solitary confinement;

- The lack of documentation regarding any notice to Plaintiff regarding the decisions to place Plaintiff in solitary confinement;

- The lack of documentation regarding any opportunity for Plaintiff to challenge or otherwise be heard regarding the decisions to place Plaintiff in solitary confinement;

- Records indicating the limited amount of time Plaintiff was allowed to shower and enjoy outdoor recreation; and

- The names of those individuals personally responsible for the decisions to deny Plaintiff adequate medical care.

In order to gather this information, Plaintiff submitted public records requests to Otero County and the New Mexico Department of Corrections in October, 2019 and renewed these requests beginning in June, 2020. Pursuant to these requests, Plaintiff has been provided approximately 500 pages of records from Otero County, which generally correspond to the Plaintiff's detention in OCDC between the dates of January 24, 2016 – December 12, 2018, but

do not contain a full record regarding Plaintiff's detention at OCDC between the dates of Dec 12, 2018 to his release on April 9, 2019.  These approximately 500 pages of records confirm Plaintiff's allegations that he was placed in solitary confinement without any justifiable penological reason and show that Plaintiff was given no notice or opportunity to challenge the confinement decisions.

Plaintiff still has no records regarding his detention at OCPF.  As stated above, Plaintiff alleges that he was kept in OCPF's Special Housing Unit ("SHU"), mostly in solitary confinement, between the dates of February 9, 2016 and March 9, 2017.  Plaintiff additionally alleges that he was kept in OCPF's SHU between the dates of November 29, 2017 and August 30, 2018, and that during this second period of solitary confinement, he was only able to shower three times per week and was only allowed to enjoy outdoor recreation two hours per week.  Upon information and belief, the OCPF records, once received, will confirm Plaintiff's allegations.

Once Plaintiff has been able to review his entire jail file, from both OCDC and OCPF, Plaintiff believes that he will be able to provide the Defendants exactly what they ask for: a more definite statement as to Plaintiff's claims against them.  At that time, Plaintiff may find it necessary to request leave to file a Second Amended Complaint that incorporates the information contained in the produced records.

WHEREFORE, for the reasons set forth above, this Court should deny the County Defendants' Motion to Dismiss in its entirety.  In the alternative, this Court should demand that Defendants provide Plaintiff with the records he has requested and allow the Plaintiff to file a Second Amended Complaint based on the information so provided.

Respectfully submitted,

**ELLIS & ESTES**

By: ___*/s/ Daniel P. Estes*___
Daniel P. Estes
3949 Corrales Rd. Ste. 230
Corrales, NM 87048
Tel: (303) 266-0800
Daniel@EllisEstes.com
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on July 6, 2020, I filed the foregoing pleading electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as fore fully reflected on the Notice of Electronic Filing:

Richard Bonner
**KEMP SMITH LLP**
P.O. Box 2800
El Paso, TX 79999-2800
Richard.Bonner@kempsmith.com
*Attorneys for Defendant Board of County Commissioners*
*Of the County of Otero, and Defendant Carolyn Barela*


Christina Muscarella Gooch
**SUTIN, THAYER & BROWNE**
P.O. Box 1945
Albuquerque, NM 87103
tmg@sutinfirm.com
*Attorneys for Defendant R. Martinez*


By: ___*/s/ Daniel P. Estes*___
Daniel P. Estes
3949 Corrales Rd. Ste. 230
Corrales, NM 87048
Tel: (303) 266-0800
Daniel@EllisEstes.com
*Attorneys for Plaintiff*