**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CARLOS HASAN HICKS,

     Plaintiff,

v.                                 No. 2:18-cv-0850 JB-JFR

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF OTERO, *et al*,

     Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION:**

     This matter is before the Court on two defense motions:  (1) the County Defendants'
Motion to Dismiss the Amended Complaint, or in the Alternative Motion for a More Definite
Statement, filed May 18, 2020 (Doc. 28);[1] and Defendant Martinez's Motion to Dismiss, filed
May 15, 2020 (Doc. 26).[2]  Plaintiff responded to both motions on July 6, 2020 (Docs. 30-31).
Defendant Martinez replied on July 20, 2020 (Doc. 32), and the County Defendants replied on
August 3, 2020 (Doc. 35).  By an Order of Reference filed on May 2, 2020, the matter was
referred to this Court to conduct hearings as warranted, and to perform any legal analysis
required to recommend an ultimate disposition of the motions.  Doc. 14.  Having reviewed the
parties' submissions and the relevant law, and for the reasons set forth herein, the Court finds

---

[1] For purposes of this Order, the "County Defendants" include the Board of County Commissioners of Otero County
("the County") and Carolyn Barela.  Plaintiff brings suit against Defendant Barela in her individual and official
capacities for acts committed during the course and scope of her employment.  Defendant Barela was the Director of
the Otero County Detention Center ("OCDC"), where Plaintiff was detained for portions of time relevant to this
dispute.  Doc. 22 ¶ 5.

[2] Defendant Martinez was the Warden of the Otero County Prison Facility ("OCPF"), where Plaintiff was also
detained at times relevant to this dispute.  Plaintiff's claims against Defendant Martinez include allegations
regarding Martinez in his individual and official capacities for acts committed during the course and scope of his
employment.  Doc. 22 ¶ 6.

that no hearing is required and recommends that Defendants' motions be GRANTED in part and DENIED in part and that Plaintiff file a more definite statement in the form of a Second Amended Complaint as specified herein.  The Court also recommends that Defendants be ordered to facilitate complete disclosure of Plaintiff's prison record within fourteen (14) days after District Judge James O. Browning issues a final order on Defendants' motions,[3] and that Plaintiff file a Second Amended Complaint fourteen (14) days after he receives his complete prison record.

## I.    BACKGROUND INFORMATION

The Court takes its facts from the Amended Complaint, as it must when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(b)(6).  Relevant facts arise out of Plaintiff Carlos Hasan Hicks' 38-month pre-trial detention, much of which he spent in solitary confinement and/or administrative segregation.  Mr. Hicks spent a total of twenty-one months at OCPF, and seventeen months at OCDC.[4]   In April 2019, he pled guilty to misdemeanor charges of assault against a household member and damage to property, and was sentenced to 545 days time-served, after spending 1,171 days in detention as a pretrial detainee.  *See* Doc. 22 (Am. Compl. ¶¶ 18-19, 22, 25), Doc. 31 at 3 n.2.  Plaintiff received no explanation or reason for being placed in solitary confinement/administrative segregation and no opportunity to challenge or review his

---

[3] As noted below, the parties have fourteen (14) days to file objections to this Proposed Findings and Recommended Disposition ("PFRD").  A final order will enter after that date.

[4] Plaintiff was detained at OCPF from February 9, 2016 to March 9, 2017, and November 29, 2017 to August 30, 2018.  Doc. 31. The Amended Complaint alleges he spent 14 months at OCPF, but discovery received since Plaintiff filed his Amended Complaint reveals his stay there was instead 21 months.  *Id.* at 3 n.3.  Plaintiff was detained at OCDC from: (1) January 24, 2016 to February 9, 2016; (2) March 9, 2017 to November 29, 2017; and (3) August 30, 2018 to April 9, 2019.  Doc. 30 at 3.   In OCDC, he was in solitary confinement for at least seventy-six (76) days.  Doc. 30 at 10.  In OCPF, Plaintiff alleges he was in solitary confinement "for a majority of his 21 months."  Doc. 31 at 2.

confinement conditions.

The factual and procedural history leading to Plaintiff's challenged detention is as follows:  The Alamogordo Police Department arrested Plaintiff on November 25, 2014. Plaintiff was subsequently booked into OCDC on various charges, including battery against a household member, Crystal Hicks, Plaintiff's wife.  *Id*. ¶ 8.  On November 26, Mr. Hick's bond was set at $25,000; Plaintiff was assigned a Public Defender; a bond was secured, and Plaintiff was released from custody.  *Id*. ¶¶ 9-10.  On December 16, 2014, a Grand Jury returned an indictment against Mr. Hicks, and a criminal summons was issued in his name on December 17, 2015.[5] Plaintiff was arrested and booked into OCDC on January 5, 2015.  *Id*. ¶ 11.   Plaintiff requested a speedy trial on December 22, 2014 and was released on bond January 9, 2015.  *Id*.  ¶¶ 12-13. Plaintiff suffered from mental illnesses, for which he was being treated by psychiatrists and other mental health professionals at all times relevant to this case, but he was denied necessary treatment during his detention.  *Id*. ¶¶ 14, 29-30, 33.  On September 21, 2015, Plaintiff was arrested in New York, and extradited back to New Mexico where his conditions of release were amended, and bond was reset at $100,000 cash only.  *Id*. ¶ 16.  On January 24, 2016 Plaintiff returned to custody, where he was shuttled between OCDC and OCPF until his plea on April 10, 2019.  *Id*. ¶¶ 17-18.

Throughout Plaintiff's detention, Defendant Barela controlled conditions of custody at OCDC, and Defendant Martinez controlled conditions of custody at OCPF.  *Id*. ¶¶ 20-21. Defendants are policy makers responsible for creating, enacting, and enforcing appropriate policies regarding the humane and constitutional treatment of pre-trial detainees, and for hiring, training, and supervising employees at OCDC and OCPF.  *Id*. ¶¶ 39-40.  Plaintiff requested, but

---

[5] The Court assumes the correct date is December 17, 2014.

3

was denied review of his confinement conditions, and Defendants never offered a non-punitive reason for keeping Plaintiff in solitary confinement/administrative detention. *Id.* ¶ 22. The policies, customs, decisions, and practices (or lack thereof) of Defendants created a climate within OCDC and OCPF wherein pre-trial detainees such as Plaintiff were deprived of adequate medical and mental health care and were subjected to inhumane conditions of confinement, including extended periods of solitary confinement for no legitimate reason, and limited access to exercise and personal hygiene. *Id.* ¶ 41.

Plaintiff was not afforded a hearing, or any other process, before being placed in solitary confinement/segregation. *Id.* ¶ 27. During Plaintiff's 38 months of pre-trial detention, he suffered medical conditions that went unaddressed, despite exhausting all available administrative remedies. Mr. Hicks suffered physical and emotional damages, including a dental abscess; he was unable to maintain personal hygiene and physical fitness;[6] and his mental, dental, and physical health deteriorated – all as a result of Defendants' failure to provide lawful conditions of confinement. *Id.* ¶¶ 23-25, 29-32, 35. Defendants knew or should have known of the risks their actions posed, and they acted and/or failed to act with deliberate indifference[7] to Plaintiff's health and constitutional rights. *Id.* ¶¶ 36-37, 39-41.

Plaintiff brings four claims of relief against all Defendants:[8]  (1) a procedural due process

---

[6] Plaintiff awaits disclosure of his detention records and asserts they will confirm that during periods of his solitary confinement, he was "only able to shower three times per week and allowed outdoor recreation only two hours per week." Doc. 30 at 17. He also claims his ability to interact with other prisoners was significantly curtailed and that Defendants' failure to explain any reasons for his solitary confinement or to provide a review of those conditions caused him a great deal of anxiety and fear. Doc. 31 at 9.

[7] Plaintiff also alleges Defendants acts and omissions were willful, wanton, intentional and in gross disregard to his rights. Doc. 22 ¶ 46.

[8] Plaintiff alleges the individuals acted under color of law, within the scope of their employment, and he names unknown John Doe Defendants as well. *Id.* ¶¶ 5-7. He claims that John Doe 1 "is the person entrusted by the Board to provide access to medical services to Plaintiff during his detention, and he is sued in his individual and official capacities." *Id.* ¶ 7.

violation under the Fourteenth Amendment (*id.* ¶¶ 26-28); (2) a substantive due process violation under the Fourteenth Amendment (*id.* ¶¶ 29-28); (3) municipal liability flowing from the lack of adequate policies, customs and supervision that caused Plaintiff's injuries (*id.* ¶¶ 39-42); and (4) false imprisonment under New Mexico's Tort Claims Act, N.M.S.A. § 41-4-1 in reliance upon principles of *respondeat superior* (*id.* ¶¶ 43-47).

Defendants contend that Plaintiff fails to state a claim upon which relief can be granted because the allegations are insufficient as a matter of law, and because "it is unclear who is accused of doing what and to whom."  Doc. 26 at 2, Doc. 28 at 2.  The individual, supervisory Defendants (Martinez and Barela) argue that Plaintiff fails to establish the requisite "affirmative link" between them and any constitutional violation because Plaintiff has not adequately alleged the personal involvement required for a supervisory liability claim under section 1983.  Doc. 26 at 4; Doc. 28 at 9-10.  Defendant Barela also argues that Plaintiff fails to assert a constitutionally protected liberty interest thereby entitling her to qualified immunity for the claims against her individually.[9]  Doc. 28 at 10-12.  Because the Court recommends dismissal of the individual claims against Defendant Barela based on Plaintiff's failure to adequately state a claim against her, the Court need not consider the qualified immunity argument at this point.

All Defendants also argue that Plaintiff:  (1) insufficiently alleges a government policy or custom caused his injuries; (2) failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)(a); and (3) failed to properly allege a claim or give proper notice under the NMTCA, N.M.S.A. § 41-4-16 (1978).  Doc. 28 at 12-15;

---

[9] Defendant Martinez does not assert a right to qualified immunity in his motion to dismiss.  Plaintiff's response assumes Martinez seeks qualified immunity, and he therefore addresses that issue in his brief.  Doc. 31 at 5-6. Because Defendant Martinez also does not address qualified immunity in his reply brief, his right to qualified immunity is not before the Court.

Doc. 26.  The County Defendants alternatively ask the Court to order Plaintiff to file a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure.  Whereas, Defendant Martinez argues that permitting any amendment is prejudicial because Mr. Hicks "has already had ample time and opportunity to amend his complaint."  Doc. 32 at 2 n.1.  Defendant Martinez does not, however, address OCPF's continued delay in producing documents arguably relevant to Plaintiff's claims.

Plaintiff filed his original complaint in this case *pro se* as a pretrial detainee on September 10, 2018 (Doc. 1), but he retained counsel after his release in 2019, and filed an Amended Complaint on April 24, 2020 (Doc. 22).  Plaintiff has made two public record requests to obtain the factual background information he needs to substantiate the claims he asserts here, and to date he has not obtained the records he needs, particularly with respect to OCPF, but also for portions of his detention at OCDC.  He received 500 pages related to his detention at the OCDC,[10] but he still has not received records concerning his confinement at the OCPF, or his detention at OCDC from December 12, 2018 to April 9, 2019.  *See* Doc. 30 at 17.

Rather than filing an Answer, the County Defendants filed the motion to dismiss, or in the alternative a motion for a more definite statement (Doc. 28).  Defendant Martinez filed an Answer (Doc. 27) and a Motion to Dismiss (Doc. 26).  No scheduling order has entered yet in this case.  Plaintiff's claims against Defendant Barela concern Plaintiff's time at OCDC, while those against Defendant Martinez relate to conditions at OCPF; otherwise, the claims and defenses involved in this dispute essentially overlap among the Defendants except as otherwise noted herein.  Plaintiff welcomes the opportunity to provide a more definite statement once he

---

[10] Plaintiff submitted his public records requests in October 2019 and renewed his request in June 2020.  The only record of discipline against Plaintiff concerned allegations that he was hording medication, which resulted in an unspecified "loss of privileges" at OCDC.  Doc. 30 at 5 n.5; Doc. 31 at 4 n.4.  There is no other evidence concerning the reasons, if any, for Plaintiff's segregation and/or solitary confinement.

receives his requested records, especially the records from OCPF, and he states an intent to seek

leave to file a Second Amended Complaint once all relevant records are disclosed to him.  Doc.

30 at 2, 17; Doc. 31 at 3, 14.

## II.   <u>LEGAL STANDARDS</u>

### A.  <u>Law Regarding Rule 12(b)(6)</u>

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion

tests the sufficiency of the allegations within the four corners of the complaint after taking those

allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency

of a complaint is a question of law, and when considering a Rule 12(b)(6) motion, a court must

accept as true all well-pleaded factual allegations in the complaint, view those allegations in the

light most favorable to the non-moving party, and draw all reasonable inferences in the

plaintiff's favor.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 127 S. Ct. 2499, 2509 (2007)

("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged

facts would the defendant prevail on a motion to dismiss."); *Smith v. United States*, 561 F.3d

1090, 1098 (10th Cir. 2009) ("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as

true all well-pleaded factual allegations in a complaint and view these allegations in the light

most favorable to the plaintiff.") (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir.

2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers

labels and conclusions or a formulaic recitation of the elements of a cause of action" is

insufficient.  *Ashcroft v. Iqbal*, 129 S. Ct. 662, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*,

127 S. Ct. 1955, 1964-65 (2007)). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See id.* at 1973-74; *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010) ("To determine whether a motion to dismiss was properly granted, we apply a plausibility standard to ascertain whether the complaint includes enough facts that, if assumed to be true, state a claim to relief that is plausible on its face."). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 127 S. Ct. at 1965). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007); *see also* Fed. R. Civ. P. Rule 8(a)(2) ("A pleading that states a claim for relief must contain . . a short and plain statement of the claim showing that the pleader is entitled to relief").

The Tenth Circuit has held that "*Iqbal* establishes the importance of context to a plausibility determination." *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010). "[P]lausibility" in th[e general pleading] context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly

(not just speculatively) has a claim for relief.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1973) (citations omitted).

**B.  Law Regarding Liability for Constitutional Violations under 42 U.S.C. § 1983**

Allegations of a constitutional deprivation in the conditions of pretrial confinement are properly raised in a civil rights complaint pursuant to 42 U.S.C. § 1983.  *See Muhammad v. Close,* 124 S. Ct. 1303, 1304-05 (2004) ("requests for relief turning on circumstances of confinement may be presented in a § 1983 action.") (citations omitted); *see also Rael v. Williams,* 223 F.3d 1153, 1154 (10th Cir. 2000) (claims arising from conditions of confinement must be brought in 42 U.S.C. § 1983 civil rights complaint rather than in a habeas petition). Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 108 S. Ct. 2250, 2255 (1988).

**1.  Color of State Law**

"Under Section 1983, liability attaches only to conduct occurring 'under color of law.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).  The under-

color-of-state-law requirement is a "jurisdictional requisite for a § 1983 action, which . . . furthers the fundamental goals of preserving an area of individual freedom by limiting the reach of federal law . . . and avoiding imposing on the state, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 108 S. Ct. 2250, 2255 (quoting *United States v. Classic*, 61 S. Ct. 1031, 1043 (1941)).

Here, there is no dispute about whether the Defendants were acting under color of law, although they do challenge the sufficiency of their personal involvement as supervisors with respect to Plaintiff's alleged constitutional violations. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation'" but "[p]ersonal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him. Personal involvement does not require direct participation because § 1983 states "'[a]ny official who "causes" a citizen to be deprived of her constitutional rights can also be held liable.'" *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (internal citations omitted).

## 2. Individual, Non-Supervisory Liability and Supervisory Liability

Individual, non-supervisory, government actors may be liable for the constitutional violations that another committed, if the defendants "set in motion a series of events that the defendant[s] knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights," thus establishing the "requisite causal connection" between the government actor's conduct and a plaintiff's constitutional deprivations. *Trask v. Franco*, 446

F.3d 1036, 1046 (10th Cir. 2006). The Tenth Circuit has explained that § 1983 liability should be "'read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (quoting *Monroe v. Pape*, 81 S. Ct. 473, 492 (1961), *overruled in part by Monell v. Dep't of Soc. Servs.*, 98 S. Ct. 2018). "Thus, Defendants are liable for the harm proximately caused by their conduct." *Martinez v. Carson*, 697 F.3d at 1255 (citing *Trask v. Franco*, 446 F.3d at 1046). A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations. The recovery should be guided by common-law tort principles—including principles of causation. *Train v. City of Albuquerque*, 629 F.Supp.2d 1243, 1251 (D.N.M. 2009). The only non-supervisory defendant named in the Amended Complaint is John Doe, and that claim is not currently before the Court, as Plaintiff has yet to identify any such employees who were involved in the alleged constitutional deprivations.

### *Supervisory Liability Requires an Affirmative Link*

A plaintiff must prove that supervisory defendants "directly and personally participated in the purported constitutional violation." *Persaud v. Doe*, 213 F. App'x 740, 743 (10th Cir. 2007) (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *overruled on other grounds by Jones v. Bock*, 127 S. Ct. 910 (2007)). There must be an affirmative link between the alleged constitutional violation and either the supervisor's participation, his exercise of control or direction, or his failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055-56 (10th Cir. 1993) (no affirmative link between arresting officer and police chief based on isolated incident of arrest coupled with failure to discipline, granting qualified immunity to police chief on summary judgment); *Cox v. Glanz*, 800 F.3d 1231, 1248-50 (10th Cir. 2015)

11

(Sheriff Glanz entitled to qualified immunity on summary judgment where he could not be found to have acted with deliberate indifference absent proof that he had a "particularized state of mind" and "knowledge that the specific inmate at issue presented a substantial risk of suicide"). The Supreme Court has made clear that there is no *respondeat superior* liability under 42 U.S.C. § 1983. *See Ashcroft,* 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Bd. of Cnty. Comm'rs v. Brown*, 117 S. Ct. 1382, 1388 (1997). The requisite showing of an "affirmative link" between a supervisor and the alleged constitutional injury has come to have three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) a culpable state of mind. *See Cox*, 800 F.3d at 1248.

### 3. <u>Municipal Liability</u>

A municipality will not be held liable under § 1983 solely because its officers inflicted injury. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). Plaintiff instead must demonstrate (i) that an officer committed an underlying constitutional violation, (ii) that a municipal policy or custom exists, and (iii) that there is a direct causal link between the policy or custom, and the injury alleged). *Id*.; *see also Romero v. Bd. of Cnty. Comm'rs for the Cnty. of Curry,* 202 F. Supp. 3d 1223, 1255 (D.N.M. 2016) (detainee adequately alleged a procedural due-process claim against the County by asserting that officers confined her in punishing conditions that were excessive in relation to any legitimate governmental interest without providing any hearings or reviews). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately

indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d

760, 770 (10th Cir. 2013). The custom or practice giving rise to liability must be "so well settled

and widespread that the policymaking officials of the municipality can be said to have either

actual or constructive knowledge of it yet did nothing to end the practice." *Burke v. Regalado*,

935 F.3d 960, 998 (10th Cir. 2019) (citing *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir.

1989)); *Cannon v. City & Cnty. of Denver*, 998 F.2d 867, 878 (10th Cir. 1993) (recognizing that

a practice "so permanent and well settled as to constitute a custom or usage with the force of

law" can give rise to municipal liability (quotations omitted)); David W. Lee, Handbook of

Section 1983 Litigation § 3.02 (2019-3 Supp.) ("An official policy can also be a persistent,

widespread practice for the city officials and employees, which, although not authorized by

officially adopted or promulgated policy, is so common and well-settled as to constitute a custom

that fairly represents municipal policy.")).  An official policy subjects a government entity to

liability only when it is "the 'moving force' behind the injury alleged." *Barney v. Pulsipher*, 143

F.3d 1299, 1307 (10th Cir. 1998) (affirming summary judgment against inmates who were raped

while serving short sentences because the record contained no evidence the county acted with

deliberate indifference where there were no previous episodes of abuse by the guard at issue, no

notice the training program was deficient, and no pattern of violations existed).  "[A] plaintiff

must show that the municipal action was taken with the requisite degree of culpability and must

demonstrate a direct causal link between the municipal action and deprivation of federal rights."

*Brown,* 117 S. Ct. at 1388.

   This standard is not akin to vicarious liability.  "Where a plaintiff claims that the

municipality has not directly inflicted an injury, but nonetheless has caused an employee to do

so, rigorous standards of culpability and causation must be applied to ensure that the

municipality is not held liable solely for the actions of its employee." *Id.* at 1389.  Furthermore, "[t]he causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring."  *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (citation omitted).  Finally, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown*, 117 S. Ct. at 1390 (citation omitted).  Proving deliberate indifference generally requires a plaintiff to establish that the municipality was on notice that "its failure to act is substantially certain to result in a constitutional violation" by either proving the existence of a pattern of tortious conduct or by showing that "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction . . . ." *Barney v. Pulsipher*, 143 F.3d at 1307–08 (addressing allegations the County was liable for guard's sexual assault based on its conduct in hiring and training the guard).

### 4.  <u>Fourteenth Amendment</u>

The Fourteenth Amendment Due Process Clause states, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Due Process Clause encompasses two distinct forms of protection: (i) procedural due process . . . and (ii) substantive due process[.]" *Romero*, 202 F. Supp. 3d at 1242. "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision."

14

*Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).  Essential to

both is the existence of a protected liberty or property interest.  *See Zia Shadows, L.L.C.*, 829

F.3d at 1237 ("To prevail on a due-process claim under § 1983, a plaintiff must first establish

that a defendant's actions deprived plaintiff of a protectable property interest." (internal

quotation marks omitted).  Holding a prisoner in certain conditions may violate the Due Process

Clause if the prisoner is subjected to an "atypical and significant hardship . . . in relation to the

ordinary incidents of prison life."  *Sandin v. Conner*, 115 S. Ct. 2293 (1995); *see Payne v. Friel,*

266 F. App'x 724, 728 (10th Cir. 2008) (finding duration of confinement by itself may be an

"atypical and significant hardship"); *Jordan v. Federal Bureau of Prisons,* 191 F. App'x 639,

651–53 (10th Cir. July 25, 2006) (finding that long periods spent in administrative segregation

could be atypical if not justified by sufficient extenuating circumstances); *see also Wilkerson v.*

*Stalder,* 329 F.3d 431, 436 (5th Cir. 2003) (30 years in lockdown—23 hours a day in isolation—

*might* give rise to a *Sandin* "atypical and significant" hardship); *Shoats v. Horn,* 213 F.3d 140,

144 (3d Cir. 2000) (finding that an inmate in administrative custody for eight years, confined to

his cell 23 hours a day, five days a week, and 24 hours a day, two days a week, with contact only

with guards implicates a liberty interest); *Fogle v. Pierson,* 435 F.3d 1252, 1259 (10th Cir. 2006)

(reversing district court's dismissal of complaint as frivolous where court concludes that there

was no arguable basis that a three-year period of administrative segregation where prisoner was

in his cell all but five hours a week and denied outdoor activities, was not "atypical").

## C.  Exhaustion of Remedies under the Prison Litigation Reform Act

The Prison Litigation Reform Act requires a prisoner (including detainees) to exhaust

available administrative remedies before suing over prison conditions.  *See* 42 U.S.C. § 1997e(a)

("No action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are exhausted."); *Booth v. Churner,* 121 S. Ct.

1819, 1821 (2001); *see also Porter v. Nussle*, 122 S. Ct. 983 (2002) (holding that "the PLRA's

exhaustion requirement applies to all inmate suits about prison life").  Because the prison's

procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust

by properly following all of the steps laid out in the prison system's grievance procedure.  *Jones*

*v. Bock,* 127 S. Ct. at 922; *Bridgeforth v. Workman*, 410 F. App'x 99, 100 (10th Cir. 2010).

"[T]he burden of proof for the exhaustion of administrative remedies in a suit governed by the

PLRA lies with the defendant." *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).  If a

prisoner fails to exhaust the administrative procedures, his case must be dismissed without

prejudice to afford the plaintiff an opportunity to exhaust his administrative remedies. *Fitzgerald*

*v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005).  In the event that an incarcerated

plaintiff who brings a § 1983 action "fails to state a claim upon which relief can be granted, . . .

the court may dismiss the underlying claim without first requiring exhaustion of administrative

remedies." 42 U.S.C. § 1997e(c)(2).

Failure to exhaust administrative remedies is an affirmative defense under the PLRA;

however, "inmates are not required to specially plead or demonstrate exhaustion in their

complaints." *Jones v. Bock*, 127 S. Ct. at 921.  An inmate's failure to exhaust is excusable if the

remedy becomes unavailable because of the action or inaction of prison officials. *See Freeman v.*

*Alicia Vineyard, MLP*, No. 13-CV-03397-MSK-CBS, 2015 WL 4113845, at *3 (D. Colo. July 9,

2015) (citing *Little v. Jones* 607 F.3d 1245, 1250 (10th Cir. 2010)).  The Tenth Circuit has

cautioned that "only in rare cases will a district court be able to conclude from the face of the

complaint that a prisoner has not exhausted his administrative remedies and that he is without a

16

valid excuse." *Aguilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).  The Tenth Circuit explained that part of this requires that "a district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue." *Id.*  Courts "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials.  *Id.* (citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).  "District courts taking this approach must exercise caution. To determine whether an inmate has exhausted his administrative remedies requires an understanding of the remedies available and thus likely would require information from the defendant as well as the inmate." *Id.* (citation omitted).

### D.  False Imprisonment, New Mexico Tort Claims Act

The New Mexico Tort Claims Act ("NMTCA") preserves sovereign immunity against tort claims for state governmental entities and public employees acting in the scope of their duties, except as specifically waived.  *Fernandez v. Mora-San Miguel Elec. Co-Op, Inc.*, 462 F.3d 1244, 1250 (10th Cir. 2006); *see also* N.M. Stat. Ann. § 41-4-4(A) (1978) ("A governmental entity and any public employee while acting within the scope of duty are granted immunity for any tort except as waived . . . ."). Sections 41-4-5 through 41-4-4(A) waive immunity for certain, specified tortious acts. *See* N.M. Stat. Ann. § 41-4-4(A) (1978).  Also, NMTCA requires that to maintain a claim for damages against a governmental entity, the plaintiff must provide proper notice of the claim.  The notice-of-claim requirement operates as a statutory limitations period and failure to file a timely notice of claim is a statutory bar to suit. *See Marrujo v. New Mexico Highway Transportation Dep't*, 887 P.2d 747 (N.M. 1994).

### III.    ANALYSIS

### A.  Exhaustion of Administrative Remedies under the PLRA

Defendants argue that Plaintiff's claims must be dismissed because he "failed to file any grievance related to this claim" and failed to allege specific facts demonstrating that he exhausted his administrative remedies concerning the Amended Complaint at issue here.  Doc. 26 at 4.  Defendants maintain that Plaintiff had the opportunity to address this issue in his response brief, but he failed to do so.  Plaintiff points out his need for prison records to further support his position on this affirmative defense.  His Amended Complaint does allege that he "exhausted all available administrative remedies with regard to his conditions of confinement and requests for medical care."  Doc. 22 ¶ 24.  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik v. United Airlines,* 671 F.3d 1188, 1192 (10th Cir. 2012).  Defendants suggest no reason why this is such a "rare case" that dismissal is warranted at this stage of the pleadings.  The Court, therefore, finds that dismissal is not appropriate based on Plaintiff's failure to exhaust administrative remedies.  He has adequately alleged such compliance.  Accordingly, the Court recommends Defendants' motion to dismiss on this ground be denied.

**B. <u>Constitutional Claims:  Fourteenth Amendment Substantive & Procedural Due Process Violations</u>**

Plaintiff characterizes his individual liability claims against Defendants Martinez and Barela as both "direct" and "indirect" supervisory liability claims.  *See* Doc. 31 at 12 ("Defendant Martinez mischaracterizes Plaintiff's claims as being solely relegated to an indirect supervisory liability claim, and Plaintiff has made direct claims against him.").  By this, it appears Mr. Hicks seeks to characterize "direct" actions outside the context of those Defendants' supervisory roles, *and* in their "indirect" roles as supervisors on behalf of the County.  However, despite arguing

that he alleges "direct" claims against Defendant Martinez (and by inference against Defendant Barela), Plaintiff cites to allegations in his Amended Complaint wherein he specifically names Defendants in their supervisory "indirect" roles.  *See* Doc. 31 at 12 (characterizing the direct claim against "Martinez, in his role as Warden").  The Court finds no basis for a "direct" non-supervisory claim against Defendants Barela or Martinez.  The legal standard that would apply to a constitutional claim against an individual employee outside of the supervisory context is set forth above at pages 10-11; however, because Plaintiff does not allege such a claim against Defendants Barela or Martinez, that issue is not before the Court.  Instead, his claims against those Defendants are limited to their supervisory roles, though he asserts a claim against them in their official *and* individual capacities.  Accordingly, the motions to dismiss are properly analyzed as seeking to dismiss the supervisory liability claims against the named individual Defendants in their official and individual capacities.

### 1.  *Claims Against Individuals in their* Official *Capacities*

Defendants Martinez and Barela correctly state that the claims against them in their official capacities must be dismissed.  Such claims are equivalent to a claim against the County. *Cox v. Glanz*, 800 F.3d at 1254 (citation omitted).  A suit against a governmental officer represents another way to plead an action against a governmental entity of which the official is an agent. *Kentucky v. Graham*, 105 S. Ct. 3099, 3104-05 (1985). Thus, "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 166. Where a plaintiff chooses to sue both the municipality and the municipal officers in their official capacities, courts routinely dismiss the official capacity claims as redundant. *Mays v. Board of County Comm'rs of the County of Lincoln*, No. 09-CV-662 WJ/KBM, 2010 WL 11626655, *6 (D.N.M.  Mar. 26, 2010).  The Court recommends the claims against those individuals in their

official capacities, therefore, be dismissed with prejudice.[11]

### 2. *Claims Against Individuals in their* Individual *Capacities:  Personal Involvement of Each Individual Defendant under § 1983*

Defendants seek dismissal of Plaintiff's supervisory liability claims based on his failure

to allege their personal participation in his section 1983 claim.  Personal participation is an

essential allegation in a civil rights action.  *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th

Cir. 1976).  "It is axiomatic that, to prevail on a damages claim for a constitutional violation

pursuant to Section 1983, the plaintiff must show that the defendant, acting under color of state

law, 'personally participated in the alleged violation.'" *Robertson v. Las Animas County Sheriff's*

*Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007) (alleged false statements in an affidavit by an

officer did not amount to personal participation in a subsequent arrest where the officer "played

no role" in the challenged arrest) (quoting *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996)).

As stated above, a supervisor's personal involvement in the alleged constitutional violation is the

first prong of the analysis to determine whether Plaintiff has sufficiently pled an affirmative link

between the supervisor and the harm alleged.  *See Schneider v. City of Grand Junction Police*

*Dep't*, 717 F.3d at 767-78 ("The requisite showing of an 'affirmative link' between a supervisor

and the alleged constitutional injury requires proof of:  (1) personal involvement, (2) sufficient

causal connection, and (3) culpable state of mind.").

Moreover, "conclusory allegations are not sufficient to state a constitutional violation."

*Jenkins*, 81 F.3d at 994.[12]  The Tenth Circuit has noted that in a civil rights case asserting claims

---

[11] While the Court recommends permitting Plaintiff leave to file a Second Amended Complaint regarding the claims against the Defendants in their individual capacities, the Court recommends the claims against Defendants Barela and Martinez in their official capacities be dismissed with prejudice.

[12] In *Jenkins,* 81 F.3d at 995, the court affirmed summary judgment in favor of the defendant officers who entered the premises at issue in reliance on a valid warrant in order to search an upstairs apartment. Plaintiffs did not allege the officer at issue was liable as a supervisor. *Id.* at 996. The court recited numerous reasons the officers were not personally involved in the arrests at issue.

against individual government actors, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations" against a group of defendants. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011); *Smith v. United States,* 561 F.3d 1090, 1104 (10th Cir. 2009) (emphasis in original) (internal quotations omitted).[13]  Merely hypothesizing that an individual defendant had personal knowledge or involvement is insufficient.  *Grissom v. Werholtz*, No. 07-3302-SAC, 2012 WL 3732895, at *4 (D. Kan. Aug. 28, 2012).  In *Grissom*, the district court converted a motion to dismiss into a motion for summary judgment and dismissed constitutional claims against several prison officials, including claims of prolonged time in administrative segregation.[14]  That Plaintiff was a key participant in several illegal activities during his prison sentence, which included four consecutive life sentences for murder and aggravated kidnapping. The Secretary of the Kansas Department of Corrections submitted a sworn statement that he "'was not directly involved with anything connected with plaintiff's conditions of confinement'; that 'he did not have any direct involvement with anything about which plaintiff now complains'; that the 'protocol for managing [plaintiff] was developed by then Warden [Bruce at a different facility]'; and that the 'details of the housing rules at each facility were determined by

---

[13] In *Smith*, the court held that Plaintiff provided fair notice of who was alleged to have done what to whom where he named multiple prison officials responsible for his exposure to asbestos, with the exception of the Attorney General of the United States and the director of the Federal Bureau of Prisons.  The plaintiff had not alleged those two individual defendants had any knowledge of a survey revealing the presence of toxic chemicals that was published years before plaintiff's exposure.  *Smith*, 561 F.3d at 1105.

[14] The *Grissom* plaintiff was serving a sentence in administrative segregation from 1996 to 2012, and he objected to various conditions of his confinement.  His security risk was heightened over the years because he continually violated prison rules, collected contraband, and threatened to escape.  *See Grissom*, 2012 WL 3732895, at *2. Several reviews by the Segregation Review Boards at three institutions justified his continued detention in administrative segregation.  *Id.*  That plaintiff was transferred among three institutions to prevent the formation of any personal relationships that might assist him to acquire additional, dangerous contraband.  *Id.* at 3.

each facility's staff.'" *Id*. at *5.  The former warden at the facility that developed plaintiff's

challenged protocol had also sworn consistently in that case that plaintiff's possession of

contraband and attempted escapes compelled *him* and *his security staff* to develop increased

secure settings to manage that plaintiff.  Based on the sworn testimony in that motion for

summary judgment, plaintiff's speculation that the secretary of the Kansas Department of

Corrections "may have had any direct personal responsibility for the claimed deprivations" was

insufficient to raise a genuine issue of fact regarding the secretary of the state's agency.  *Id*.  The

*Grissom* plaintiff's case proceeded against the wardens and former warden of several different

prison facilities.  However, the court granted those defendants qualified immunity based on

plaintiff's failure to identify a property or liberty interest and the presence of constitutionally

sufficient procedures.  *Id*. at *7.

Defendants correctly state that supervisory status alone does not create § 1983 liability.

*See Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008) (upholding dismissal where there

was no affirmative link alleged between the supervisor of the medical operation and the

treatment received).  Rather, there must be an affirmative link between the constitutional

deprivation and either the supervisor's personal participation, his exercise of control or direction,

or his failure to supervise.  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (no

affirmative link where plaintiff's only allegation against defendants related to their rubber-

stamping the denials of his grievances) (citing *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir.

1997) (reversing summary judgment in the warden's favor and finding sufficient allegation of an

affirmative link between the constitutional deprivation and the warden's lackadaisical attitude,

improper control, and failure to supervise guards who beat prisoner)).

To overcome Defendants' motion to dismiss, Plaintiff relies upon case law that recognizes violations of procedural and substantive due process rights based upon the deprivation of notice, hearing, and the right to review inadequate conditions of confinement. Doc. 31 at 7-9 and 11-12, Doc. 30 at 8-13.  He neglects, however, to adequately address the insufficiency of his Amended Complaint with respect to the dearth of allegations concerning Defendants' personal involvement in the alleged violations.  Plaintiff also fails to address the problem associated with the global allegations that he makes against all Defendants, wherein he fails to distinguish which Defendant is associated with which violations at each facility.   For example, the Amended Complaint alleges that (1) Defendants "as a whole" ignored his complaints (Doc. 22 ¶ 34), (2) Defendants' "collective" (and individual) failures caused his damages (*id*. ¶¶35), and (3) Plaintiff repeatedly complained "to Defendants" about unreasonable conditions (*id*. ¶ 36).  *See id*. ¶ 28 ("Defendants denied procedural due process"), ¶ 22 ("Defendants having no non-punitive reason"), ¶ 19 ("Defendants' actions and omissions").  Plaintiff's response brief likewise fails to cure the improper grouping of Defendants as the "County Defendants," which is particularly troublesome here because the dispositive issue concerns his failure to allege the requisite personal involvement.  Rather than grouping the actions of the Defendants together, Plaintiff must establish that *each* defendant caused the alleged constitutional violation.  *See Pahls v. Thomas*, 718 F.3d 1210, 1225-31 (10th Cir. 2013) (because § 1983 is a "vehicle[ ] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants.").

As noted above, in order to demonstrate the requisite affirmative link in this case, Plaintiff must show "(1) personal involvement; (2) causation, and (3) state of mind."  *See Perry*

*v. Durborow*, 892 F.3d 1116, 1121 (10ᵗʰ Cir. 2018) (citation omitted).  The Court is mindful that

"the Supreme Court has yet to speak with much clarity on the theories of causation that could

demonstrate a supervisory official's liability for the constitutional violations carried out by a

subordinate." *Dodds*, 614 F.3d at 1208.  And, further, that in the context presented here, the

Tenth Circuit has not interpreted precisely "what allegations of personal involvement . . . meet

*Iqbal's* stricter liability standard."  *See Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016)

("*Keith II*");[15] *Schneider*, 171 F.3d at 768. Given these uncertainties, as well as an often-

perceived overlap between the second and third prongs of the supervisory liability inquiry, the

Court will address each prong against the facts presented here.  *Dodds,* 614 F.3d at 1200 n. 8

("We do not mean to imply that these are distinct analytical prongs, never to be intertwined.").

### Personal Involvement

        The Tenth Circuit has held that "personal involvement" can be alleged by stating that: (1)

the supervisor personally participated in the alleged violation; (2) the supervisor exercised

control or direction over the alleged illegal acts, or the supervisor's failure to supervise caused

the alleged illegal acts; (3) the supervisor knew of the violation and acquiesced in its

continuance; or (4) the supervisor promulgated, created, implemented or utilized a policy that

caused the alleged deprivation of constitutional rights.  *Dodds*, 614 F.3d at 1195-96.  Although

the Amended Complaint states that Defendant Martinez "controlled" pre-trial custody at OCPF

and that Defendant Barela "controlled" pre-trial custody at OCDC (Doc. 22 ¶¶ 19-20), that does

not suggest that either of them controlled or directed the unlawful acts alleged here.  Further,

Plaintiff fails to allege the existence of any supervision or any policy or custom involved with his

---

[15] In *Keith I*, the Court affirmed the district court's denial of Warden Koerner's motion to dismiss. With the benefit
of discovery, the parties presented a more complete version of the facts at summary judgment, which led to the
decision in *Keith II*.

confinement.  The Court finds the Amended Complaint devoid of any allegations that would satisfy the personal involvement prong of the affirmative link requirement associated with a section 1983 claim against these supervisory Defendants.  *See Johnson v. Sec'y of Corr.*, No. 1:17-CV-0448 SWS/MLC, 2018 WL 1581673, at *3 (D.N.M. Mar. 27, 2018) ("county defendants, private corporates acting under the color of state law, and prison supervisors cannot be held liable solely because they employ or oversee a tortfeasor. Such defendants can only be liable if they promulgate an official policy that leads to the constitutional violation") (citing *Starrett v. Wadley*, 876 F.2d 808, 818 (10th Cir. 1989) (holding counties "are subject to liability [under § 1983] only for their official policies or customs")) (additional citations omitted).

**Causal Link**

A "causal connection" is alleged by claiming that a supervisor defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive plaintiff of his constitutional rights.  *Dodds*, 614 F.3d at 1195-96; *see Estate of Booker v. Gomez,* 745 F.3d 405, 435 (10th Cir. 2014).  Although Plaintiff makes the general allegation that each Defendant "knew of should have known" that others would deprive Plaintiff of his constitutional rights, there are no facts to suggest that either Defendant set anything in motion, let alone a series of events that would cause John Doe, or any corrections officer or employee, to violate Plaintiff's constitutional rights.  It is doubtful whether any of the allegations cited by Plaintiffs could be said to show that either Defendant knew or should have known that his/her actions or inactions would result in the purported deprivations of constitutional rights here. Plaintiff's causal link is premised on the allegation that each Defendant was in control of the respective detention facility.  Such a theory still requires plausible allegations that each Defendant knew or should have known that (1) Mr. Hicks was subjected to solitary confinement

without notice, opportunity to be heard, or any review, and (2) deficient policies deprived Mr.

Hicks of access to adequate medical, dental and mental health care.  Yet, Plaintiff alleges nothing

to suggest (1) any facts related to his segregated placement, nor (2) any policy that existed or

failed to exist concerning his access to appropriate levels of care.  The crux of Plaintiff's

argument is that because OCDC and OCPF were "under the direct control" of Defendants Barela

and Martinez respectively, those Defendants caused Plaintiff to remain in solitary confinement

and be deprived of adequate care, thereby "setting into motion" the constitutional deprivations

alleged here.  However, those are essentially *respondeat superior* arguments that are not

permitted under section 1983.  *Keith*, 843 F.3d at 838 ("[I]t is not enough that [the warden] acted

in a supervisory role when [the employee] violated [the plaintiff's] constitutional rights."); *Serna

v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under

§ 1983 for their own culpable involvement in the violation of a person's constitutional rights. To

establish supervisor liability under § 1983, 'it is not enough for a plaintiff merely to show a

defendant was in charge of other state actors who actually committed the violation.'").

"[S]upervisory liability 'must be based upon active unconstitutional behavior' and 'more than a

mere right to control employees.'" *Id*.  This, Plaintiff does not allege.

### State of Mind

To satisfy the third element of a supervisory liability claim, a plaintiff must show that the

supervisor "took the alleged actions with the requisite state of mind." *Schneider*, 171 F.3d at 768.

Under the Fourteenth Amendment a plaintiff can "establish the requisite state of mind by

showing that [a supervisor] 'acted with deliberate indifference.'" *Perry v. Durborow*, 892 F.3d

1116, 1122 (10th Cir. 2018). "[D]eliberate indifference is a stringent standard of fault." *Bd. of

Cnty. Comm'rs v. Brown*, 117 S. Ct. at 1388.  It requires proof that an actor disregarded a known

or obvious consequence of his action.  *Id.*  "[A] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff."  *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997).  The Tenth Circuit has characterized three requirements to satisfy the deliberate-indifference test.  Plaintiff must show that:  (1) each Defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; (2) each Defendant actually drew that inference; and (3) each Defendant was aware of and failed to take reasonable steps to alleviate that risk.  *Perry*, 892 F.3d at 1122 (citations omitted); *see Sexson v. Wood*, CIV 13-0944 KBM/GBW, 2016 WL 10538007, *10 (D.N.M. Apr. 20, 2016) ("Because 'mere negligence' is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with 'deliberate indifference' that a constitutional violation would occur.") (citation omitted).  Plaintiff's allegations here fail for the same reasons that Mr. Hicks falls short in pleading plausible aspects of personal involvement and causation; he simply lacks the requisite specificity.

For example, Plaintiff has made no allegations that Defendants Barela or Martinez had or should have had personal knowledge that he requested a hearing or a review of his conditions, or that he was placed in solitary confinement.  Nor does he claim that either individual Defendant had or should have had knowledge of his medical, dental, or psychological conditions, or that his showers or opportunities for physical fitness were limited.  While he summarily states that Defendants "caused" him to remain in solitary confinement at each of their respective facilities (Doc. 22 ¶¶ 32-33), he does not provide any facts in support of that conclusory allegation.  Despite general allegations that Mr. Hicks "repeatedly complained" to Defendants collectively

(Doc. 22 ¶ 36), he is silent regarding when he complained, how he complained, and to whom he complained.  Nowhere in the Amended Complaint does Mr. Hicks cite factual allegations in support of these conclusory contentions.  He cites no specific policies, no specific training procedures, and no specifics about any supervision or lack thereof.  Stated simply, Plaintiff fails to allege facts about who, what, where, and when in order to establish plausible claims.  And, regarding the requisite state of mind, Plaintiff pens the words "deliberate indifference," (Doc. 22 ¶ 36) but offers no facts that would support that broad assertion.  Though he states Defendants (collectively) "knew or should have known of the risk posed to Plaintiff by their actions and omissions," (Doc. 22 ¶ 36), the Court finds that such conclusory statements lumped together regarding all defendants are merely recitations of general legal principles as opposed to plausible allegations substantiating Plaintiff's claims.  *See Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) ("it is particularly important" in a § 1983 case brought against 'a number of government actors sued in their individual capacity . . . that the complaint make clear exactly who is alleged to have done what to whom . . . as distinguished from collective allegations.'") (additional citations omitted).  The Court finds that the Amended Complaint asserts formulaic conclusions rather than the factual allegations necessary to nudge the claims beyond conceivable to plausible.  *See Keith I*, 707 F.3d at 1188; *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) ("A plaintiff must . . . identify the specific policies over which particular defendants possessed responsibility and that led to the alleged constitutional violations.").  Although Plaintiff's brief asserts a somewhat stronger basis for his claim than the Amended Complaint, Mr. Hicks argues facts that the Amended Complaint does not allege.  *See County of Santa Fe, N.M. v. Pub. Serv. Co. of New Mexico*, 311 F.3d 1031, 1035 (10th Cir. 2002) ("In deciding a Rule 12(b)(6) motion, a federal court may only consider facts alleged within the complaint.").

The Court recommends that Plaintiff be permitted to file a more definite statement in the form of a Second Amended Complaint, as explained below.

### 3. *Municipal Liability*

The Amended Complaint does not allege a specific custom, policy, or practice that was the "moving force" behind the alleged deprivation of Plaintiff's constitutional rights. Nor does Plaintiff allege any decision made by an individual who held final policymaking authority or the ratification of any subordinates' decisions by such an individual. He also does not allege a failure to train or supervise employees. Instead, Plaintiff alleges generally as follows:

> The policies, customs, decisions, and practices (or lack thereof) of Defendants Board, Barela, and Martinez created a climate within OCDC and OCPF wherein pre-trial detainees such as Plaintiff were deprived of adequate medical and mental health care and were subjected to inhumane conditions of confinement, including extended periods of solitary confinement for no legitimate reason, and limited access to exercise and personal hygiene.

*Id*. ¶ 41. He also alleges that by maintaining or failing to maintain adequate policies and customs, the collective Defendants caused the constitutional deprivation, and did so with deliberate indifference. *Id*. ¶ 42. The Amended Complaint conclusively states that Defendants collectively and inadequately hired, trained, and supervised employees at OCDC and OCPF. Doc. 22 ¶ 40. While Plaintiff states that he has yet to discover precisely who carried out the challenged conduct or what policies existed or should have existed to prevent the alleged constitutional deprivations, his conclusory assertions neglect to allege that any individual, including the two named Defendants, denied Mr. Hicks adequate medical care, or notice, a hearing and/or review of any conditions of confinement while housed at OCDC or OCPF. Nor does Plaintiff explain: (1) how any policy, custom, decision, or practice operated or failed to operate to his detriment, (2) how any Defendant was deficient in hiring, training, or supervising, (3) how any deficiency caused John Doe to violate his rights, or (4) how a Defendant was

deliberately indifferent to the need for further training.  Vague allegations of an undefined custom are insufficient to show an informal practice that will withstand a motion to dismiss.  *See Rubi v. Town of Mountainair*, No. CIV 18-0979 RB/KBM, 2019 WL 3843049, at *4 (D.N.M. Aug. 15, 2019) ("The plaintiff cannot simply allege that there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists."). Merely lumping together, a John Doe defendant, two supervisory defendants, and the County, with obvious different roles in the alleged conduct at issue will not suffice, as it leaves the Court and the Defendants to speculate as to who did what to whom.  And, there can be no municipal liability claim without an underlying constitutional claim, which Plaintiff has yet to properly allege.  *See DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1236 (10th Cir. 2000) (plaintiff must show underlying constitutional violation to establish a *Monell* claim). Accordingly, because this claim could otherwise be dismissed without prejudice for failure to state a claim, the Court recommends that Plaintiff be permitted to file a more definite statement in the form of a Second Amended Complaint as set forth below.

### C. **False Imprisonment Claim**

In Count IV, Plaintiff asserts a claim for false imprisonment pursuant to the New Mexico Tort Claims Act ("NMTCA"), N.M.S.A. §§ 41-4-1, *et seq*. (1978).  Doc. 22, ¶¶ 43-47. Plaintiff alleges Defendants are liable under the doctrine of *respondeat superior* for the conduct of their employees.  To prove a claim of false imprisonment, a plaintiff must show that (1) the defendants intentionally confined the plaintiff without the plaintiff's consent; and (2) the defendants knew that they had no lawful authority to do so.  *See Scull v. New Mexico*, 236 F.3d 588, 599 (10th Cir. 2000) (interpreting New Mexico law).

Defendants argue this claim fails because (1) they are immune from tort liability under

the NMTCA, (2) Plaintiff failed to provide the requisite notice required by the NMTCA, and (3) Plaintiff fails to comply with minimal pleading requirements under Rule 8 of the Federal Rules of Civil Procedure with respect to this claim.[16]  *See* Fed. R. Civ. P. Rule 8. Though it appears that immunity is waived under the law enforcement exception of the NMTCA for the claim against the individual Defendants,[17] and that Plaintiff can overcome Defendant's notice-provision argument because he alleges that he complied with notice-of-claim requirements by exhausting all available administrative remedies (Doc. 22 ¶ 23), the Court agrees this claim suffers from the insufficient pleading requirements demanded by Rule 8 that are associated with Plaintiff's other claims.  The issue here concerns Plaintiff's failure to distinguish what each Defendant is alleged to have done with respect to this particular claim.  The Court, therefore, recommends that Plaintiff remedy the problem through a Second Amended Complaint as stated below.

### D.  <u>Motion for a More Definite Statement</u>

Rule 12(e) of the Federal Rules of Civil Procedure provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e). A motion for a more definite statement should not be granted merely because the pleading lacks detail.  *See Williams v. Cutting Edge Hairstyling*, No. 10-CV-2174-CM-DJW, 2010 WL

---

[16] Defendant Martinez's motion to dismiss the false imprisonment claim is limited to his argument that the claim against him "is lumped together with other defendants."  Doc. 26 at 5.

[17] N.M. Stat. Ann. § 41-4-3(D) (1978) (law enforcement waiver); *see Methola v. County of Eddy,* 622 P.2d 234, 237 (N.M. 1980) (jailers considered law enforcement for purposes of waiver); *Abalos v. Bernalillo County Dist. Atty's Office,* 734 P.2d 794, 800 (N.M. Ct. App. 1987) (director of a county detention center considered law enforcement); § 41-4-12 (waiver of immunity for claims against law enforcement for false imprisonment).  An agency cannot be a "full-time salaried public employee as required by the definition of "law enforcement officer."  *See Fernandez v. Mora-San Miguel Elec. Co-op., Inc*., 462 F.3d 1244, 1250 (10th Cir. 2006) (citing *Dunn v. McFeeley,* 984 P.2d 760, 766 (N.M. 1999)).

5463056, at *1 (D. Kan. Dec. 29, 2010) (citation omitted).  Rather, the standard to be applied is whether the claims alleged are sufficiently specific to enable a responsive pleading in the form of a denial or admission.  *Id*.  The discovery process should be used to learn additional details with respect to the claims.  *Id*.  The decision whether to grant or deny a motion for a more definite statement of a pleading rests within the sound discretion of the court.  *Id*.

The County Defendants claim that Plaintiff's Amended Complaint is vague and ambiguous, such that Plaintiff should be required to provide a more definite statement before the County Defendants are required to respond.  Particularly challenging, according to Defendants, is Plaintiff's "global allegations and generic grouping of all defendants."  Doc. 35 at 5.  Where a court has granted a motion for more definite statement, the plaintiff must comply "within 14 days after notice of the order or within the time the court sets, [and if not] the court may strike the pleading or issue any other appropriate order."  *Id.*

Plaintiff does not object to providing more detail in response to receiving and reviewing his complete jail file after he receives it.  Doc. 30 at 16.  He believes the file will allow him to add details concerning the following issues:

> The exact dates in which he was held in solitary confinement in both OCDC and OCPF;  the names of those individuals personally responsible for the decisions to place Plaintiff in solitary confinement;  the names of those individuals personally responsible for the decisions to keep Plaintiff in solitary confinement; the lack of documentation regarding any notice to Plaintiff regarding the decisions to place Plaintiff in solitary confinement; the lack of documentation regarding any opportunity for Plaintiff to challenge or otherwise be heard regarding the decisions to place Plaintiff in solitary confinement; records indicating the limited amount of time Plaintiff was allowed to shower and enjoy outdoor recreation; and the names of those individuals personally responsible for the decisions to deny Plaintiff adequate medical care.

Doc. 30 at 16.  Plaintiff appears aware of the details that will permit him to sufficiently articulate plausible claims, but unable to do so until his prison records are disclosed.  Defendants argue that

a dismissal is more appropriate than permitting Plaintiff the opportunity to make a more definite statement because allowing Plaintiff more time to investigate will result in undue delay, futility, and prejudice, but they neglect to address why Plaintiff has not received the records he's now formally requested on two occasions under the public records act.  The Court disagrees that a more definite statement and a Second Amended Complaint will result in undue delay, where no discovery has been exchanged, no responsive pleading is yet filed, and no scheduling order has entered.  Nor does an amendment appear prejudicial or futile where the County appears able, but did not, provide the documents Plaintiff would have needed to state more particular allegations in his Amended Complaint, and analogous fact patterns have resulted in plausible claims for municipal and supervisory liability on grounds similar to those alleged here.  *See Romero*, 202 F. Supp. 3d at 1257–58 (sufficient allegations where plaintiff alleged he was "placed in solitary confinement without *any* review, and that during his time in the facility he received no periodic hearing, and no review of his classification"); *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020) (finding error in refusing to allow plaintiffs to amend complaint where they alleged: (1) Santa Fe County maintained an unconstitutional custom of failing to treat detainees for withdrawal, which resulted in a deficient medical intake protocol, (2) that custom caused plaintiff's injury, and (3) the County's actions (or inaction) stemmed from deliberate indifference); *see Littlefield v. Deland*, 641 F.2d 729, 730-31 (10th Cir. 1981) (affirming judgment "that plaintiff's confinement amounted to punishment and therefore that the county's failure to provide plaintiff with any meaningful notice and hearing violated the due process clause.").

   The Court finds that Plaintiff should be permitted to clarify which conduct each Defendant is personally alleged to be involved at each facility, and that he be permitted to do so

after receiving his complete prison record, particularly those documents he has requested in two public record requests (one more than a year ago), to include documents from OCPF, and OCDC's records concerning his detention from December 12, 2018 to April 9, 2019.  *See* Doc. 30 at 17.  Because Plaintiff acknowledges that Defendant Barela's conduct relates only to OCDC and Defendant Martinez's only to OCPF, Plaintiff shall clearly indicate which behaviors are challenged at each facility, and which Defendant is, therefore involved in each count.  Plaintiff should also clarify whether his access to medical care claim is directed against all defendants, or only against the yet-identified John Doe Defendant, and if it is directed to all defendants, under what theory of liability he proceeds for that and every other claim as well.  Among the deficiencies noted herein, the Court recommends that, to the extent the following issues are intended to form the basis of his claims, Plaintiff include a more definite statement of his claims, that is, a short and plain statement of each claim showing that Plaintiff is entitled to relief, including (1) any custom, policy or practice and/or any decision made by any final policymaking authority, or ratification of the same by any subordinates, which operated to his detriment; (2) the hiring, training or supervisory behaviors challenged in this case; (3) any requests he made, and to whom, regarding a hearing and/or review of his confinement conditions; (4) how any deficiency caused John Doe to violate his rights, and the identity of John Doe; and (5) the personal involvement, causal link, and required state of mind regarding each of his claims.

The Court, therefore, recommends that Plaintiff shall file a more definite pleading in the form of a Second Amended Complaint, and he shall do so fourteen (14) days after receiving his complete prison record.[18]  The Court further recommends that Defendants be ordered to produce

---

[18] The opportunity to amend a complaint should be granted unless amendment would be futile.  *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). In other words, "if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990).

those records to Plaintiff fourteen (14) days after a final order enters regarding Defendants'

motions to dismiss, *i.e.*, after any objections are filed and ruled upon.  Plaintiff shall identify

which claim he alleges against each Defendant(s), as well as plausible facts in support of such

claims.  This may be satisfied by referring back to a specific factual paragraph concerning a

particular Defendant.

## IV.  <u>RECOMMENDATION</u>

For the reasons set forth above, the Court makes the following recommendations:

1.  The County Defendants' Motion to Dismiss the Amended Complaint or for a More
    Definite Statement (Doc. 28) filed May 18, 2020 should be GRANTED in part and
    DENIED in part:

    a.  The motion is GRANTED with respect to their request for a more definite
        statement as to all claims, except the claim against the individual defendants
        in their official capacity; the claim against Defendants Barela and Martinez in
        their official capacities is DISMISSED with prejudice.

    b.  The motion is DENIED to the extent they seek (i) a dismissal of all claims
        because the Court will allow Plaintiff to file a Second Amended Complaint,
        and (ii) a dismissal of the claims for failure to exhaust administrative remedies
        and the notice of claim requirement in connection to the NMTCA claim.

2.  Defendant Martinez's Motion to Dismiss (Doc. 26) filed May 15, 2020 should be
    GRANTED in part and DENIED in part, consistent with the rationale associated with
    the County Defendants' motion to dismiss.

3.  Plaintiff shall file a more definite pleading in the form of a Second Amended

Complaint, and he shall do so fourteen (14) days after receiving his complete prison record.

4. Within fourteen (14) days of the final order on Defendants' motion herein, Defendants should be ordered to provide Plaintiff all remaining documents responsive to his public records request, specifically those that concern the allegations raised herein.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**