**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CARLOS HASAN HICKS,

     Plaintiff,

v.                                No. 2:18-cv-0850 JB-JFR

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF OTERO, *et al*,

     Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS**
**AND RECOMMENDED DISPOSITION RE: DOCS. 52, 64, and 70:[1]**

Plaintiff presents constitutional and tort challenges concerning 842 (out of 1171) days he spent in solitary confinement as a pretrial detainee at two New Mexico state prison facilities. He contends that Defendants provided no reason for his solitary placement, and he received no notice or opportunity to challenge that detention prior to being released after his decision to plead guilty, which he only did to end the solitary confinement. Plaintiff also alleges he was denied important medical and dental care that should have been available during his pretrial detention.

This matter is before the Court on three substantive motions. First, a Motion to Dismiss from four individual defendants and the Management & Training Corp. ("MTC") (collectively referred to here as the "MTC Defendants") filed March 15, 2021. Doc. 52. Plaintiff's counsel withdrew shortly after that motion was filed, and Plaintiff filed an incomplete response on July 14, 2021 (Doc. 73),[2] and he filed a subsequent response on October 6, 2021 (Doc. 84). The same

---

[1] This Order also addresses the following motions: Docs. 77, 82, 85 and 86. By an Order of Reference filed on May 2, 2019, the case was referred to this Court to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the motions. Doc. 14.

[2] Plaintiff's first response to the Motion to Dismiss at Doc. 52 merely asserts that he is searching for new counsel and suffering from "deep depression." Doc. 73 (attaching letter from physician).

day, Plaintiff also filed a motion to proceed *pro se*.  Doc. 82.[3]  The MTC Defendants moved to strike Document 84 (the second response) on October 20, 2021 (Doc. 86), and they had already filed a reply to their Motion to Dismiss on July 28, 2021 (Doc. 74).  Plaintiff responded to the MTC Defendants' reply on August 2, 2021.  Doc. 76.  On August 17, 2021, the MTC Defendants moved to strike Document 76 as an improper surreply.  Doc. 77.  In further response to the MTC Defendants' motion to dismiss, on October 12, 2021, Plaintiff also filed a document entitled "Further Testimony to ("MTC Defendants") Document No. 52," which is essentially a motion to depose a former, neighboring inmate that Plaintiff knew during his time spent in solitary confinement.  Doc. 85 at 2 ("I IMPLORE this Court to DELVE into my testimony further!!!").  Defendants did not respond to that request/motion.

The second substantive motion presented for consideration is a Motion to Dismiss that Defendant Javier Sifuentes filed on April 19, 2021.  Doc. 64.  The *pro se* Plaintiff responded to that motion on October 6, 2021.  Doc. 83.  Defendant Sifuentes replied on October 20, 2021.  Doc. 87.

The third and final motion before the Court is Southwest Correctional Medical Group, Inc.'s (hereinafter "SWCMG") Motion for Partial Summary Judgment based on the statute of limitations, filed on June 7, 2021.  Doc. 70.  Plaintiff responded very briefly on page 7 of Document 83.  SWCMG replied on October 21, 2021.  Doc. 89.

Having reviewed the parties' submissions and the relevant law, and for the reasons set forth herein, the Court finds that no hearing is required and recommends that Defendants' motions, Documents 52, 64, and 70 be **DENIED**.  The Court also recommends the district court

---

[3] This motion (Doc. 82) is devoid of any substantive request or information, and is unnecessary for Plaintiff to proceed *pro se* as the Court permitted that by Order on April 13, 2021 when it allowed Plaintiff's counsel to withdraw.  Doc. 63.

**GRANT** the motion to strike at Document 77 (striking Document 76 as an improper surreply), but **DENY** the motion to strike at Document 86 (allowing Document 84 to stand).  The Court recommends the district judge **DENY** Plaintiff's motion at Document 82 as moot (motion to proceed *pro se*), and **GRANT IN PART** Plaintiff's motion at Document 85 (request to depose former inmate), as limited herein.

## I.    BACKGROUND INFORMATION

The Court takes its facts concerning the two motions to dismiss from the Second Amended Complaint ("SAC") (Doc. 40) filed January 14, 2021, as it must when considering the alleged failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[4]  *See* Fed. R. Civ. P. 12(b)(6).  Plaintiff filed his original complaint in this case *pro se* as a pretrial detainee on September 10, 2018 (Doc. 1).[5]  He retained counsel after his release from custody on November 4, 2019, and he filed a First Amended Complaint ("FAC") on April 24, 2020 (Doc. 22).[6]  On December 18, 2020, District Judge James O. Browning ordered Defendants to produce discovery and permitted Plaintiff to file a SAC (Doc. 38), which Plaintiff did with assistance of counsel on January 14, 2021 (Doc. 40); his counsel withdrew on April 13, 2021.  This Court previously ruled on Otero County's motion to dismiss, denying the motion and permitting Plaintiff time to obtain new counsel as he requested, but which he did not do.  Doc. 72.  Plaintiff, therefore, proceeds here *pro se*.

The underlying facts at issue are discussed at length in this Court's prior orders and are

---

[4] The motion for partial summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.

[5] The original complaint alleged, *inter alia*, cruel and unusual punishment, medical malpractice, and personal injury arising from his time spent in solitary confinement, or the "Special Housing Unit."  Doc. 1.

[6] The FAC alleged substantive and procedural due process claims, as well as the same four counts alleged in the SAC. Doc. 22.

repeated here only as required for purposes of addressing the pending motions. *See* Docs. 37 and 72.[7]  The crux of the SAC (and the prior complaints) concerns the 842 days in solitary confinement that Plaintiff experienced during his 1171 days as a pretrial detainee. Doc. 40 ¶ 31. Plaintiff is no longer in custody.  Plaintiff was eventually sentenced to 545 days of 1171 days of time served. *Id*. ¶ 48.

The Alamogordo Police Department first arrested Plaintiff on November 25, 2014. *Id*. ¶ 16.  The police booked Plaintiff into the Otero County Detention Center ("OCDC") on several charges, including battery against a  household member. *Id*.  He was released on bond the next day, and on December 16, 2014, a Grand Jury returned an indictment against him, and a criminal summons was issued on December 17, 2014. *Id*. ¶ 17.  Plaintiff was again arrested and booked into OCDC on January 5, 2015. *Id*. ¶ 21.  He was released on bond a few days later (January 9, 2015), but then arrested in New York and extradited back to New Mexico on September 21, 2015. *Id*. ¶¶ 23-24.  Plaintiff went back into custody on January 24, 2016, and he remained a pretrial detainee until he accepted an Alford Plea to assault against a household member and damage to property on April 10, 2019, at which time he was released from custody. *Id*. ¶ 25. Plaintiff alleges that he accepted the Alford Plea only because of the uncertainty associated with the ongoing, indefinite duration of his solitary confinement. *Id*. ¶ 26.  While detained, Plaintiff filed his original complaint on September 10, 2018; the time-period of his placement in solitary confinement ranged from October 24, 2017 to April 9, 2019.  With counsel's assistance, Plaintiff made two public record requests for discovery related to his detention, first in October 2019, and again in June 2020. *See* Doc. 30 at 16.

During Plaintiff's time at OCDC, Defendant Sifuentes directed Plaintiff's administrative

---

[7] On June 30, 2021, this Court recommended, and the district court later adopted the order, denying Defendants' motion to dismiss on several grounds.  Doc. 72.

detention[8] from (1) October 24, 2017 to November 29, 2017, (2) August 30, 2018 to October 19, 2018, and (3) November 30, 2018 to April 9, 2019.  Defendants moved Plaintiff from OCDC to the Otero County Prison Facility ("OCPF") and the Hidalgo County Detention Center throughout his detention; at the Hidalgo Detention Center, he was placed in the general population.  Doc. 40 ¶¶ 45, 48.  Plaintiff was also in the general population at OCDC for eight months, beginning March 23, 2017.  *Id*. ¶¶ 34, 37, 42-43, 45-47.  SWCMG is a California corporation that provides medical services to correctional facilities, including OCDC.  *Id*. ¶ 6.  Defendant Sifuentes is employed at OCDC (and/or Otero County).  Doc. 40 ¶ 7.  Defendant MTC is a Utah corporation that operates and staffs OCPF and MTC Medical Units.  Doc. 40 ¶ 5.  Plaintiff asserts that MTC is liable for any negligence or deprivation that OCPF and its employees caused.  Defendants Soto, Camacho, Moya, Leon, and Ochoa are employees at MTC and/or OCPF.[9]

During Plaintiff's pretrial detention, Defendant(s) failed to inform him why he was placed in solitary confinement; they also neglected to (1) perform a mental health assessment as required by relevant guidelines, and (2) provide an opportunity to challenge his conditions of confinement.  *Id*.  Plaintiff's physical and mental health deteriorated during his confinement, including severe dental problems and known, pre-existing conditions of schizoaffective disorder and post-traumatic stress disorder.  *Id*. ¶¶ 27, 30, 50-51, 53.

The SAC alleges four Counts against Defendants the Board of County Commissioners of the County of Otero (hereinafter "Otero County"), the MTC Defendants and Defendant Sifuentes:  Count I: Violation of Procedural Due Process; Count II: Violation of Substantive Due Process; Count III: Municipal and Corporate Liability (as to only Otero County and Defendant

---

[8] The court uses the terms administrative detention and solitary confinement interchangeably.

[9] Plaintiff uses the terms MTC, OCPF, and Otero County interchangeably to represent the same general entity.  Doc. 84 at 3-4.

MTC); and Count IV: False Imprisonment Under the New Mexico Tort Claims Act

("NMTCA").  Doc. 40.  Count II is also asserted against Defendant SWCMG.

## II.    LEGAL STANDARDS

### A.  *Partial Summary Judgment*

A motion for summary judgment is appropriate when there is no genuine issue of

material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986); *Jones v. Kodak Med.*

*Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); Fed. R. Civ. P. 56(a).  "[A] party seeking

summary judgment always bears the initial responsibility of informing the district court of the

basis for its motion and identifying those portions of [the record] ... which it believes

demonstrate the absence of a genuine issue of material fact."  *Catrett*, 106 S. Ct. at 2552 (internal

quotation marks omitted); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th

Cir. 1998).  Once the movant meets this burden, the non-moving party is required to put in the

record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106

S. Ct. 2505, 2511 (1986); Fed. R. Civ. P. 56(c).  "A fact is 'material' if, under the governing law,

it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine'

if a rational jury could find in favor of the nonmoving party on the evidence presented."

*Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal

citations omitted); *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016).  Only material

factual disputes preclude the entry of summary judgment.  *Atl. Richfield Co. v. Farm Credit*

*Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

The trial judge is not to weigh the evidence to determine the truth of the matter, but

instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the

evidence presented."  *Anderson,* 106 S. Ct. at 2512.  "Where the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp*., 106 S. Ct. 1348, 1356 (1986) (citation omitted). Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co*., 985 F. Supp. 1277, 1281 (D. Kan. 1997). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g., Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

### B.   *Law Regarding Rule 12(b)(6)*

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a Rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007) ("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.") (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 129 S. Ct. 662, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See id.* at 1973-74; *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010) ("To determine whether a motion to dismiss was properly granted, we apply a plausibility standard to ascertain whether the complaint includes enough facts that, if assumed to be true, state a claim to relief that is plausible on its face."). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 127 S. Ct. at 1965). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007); *see also* Fed. R. Civ. P. Rule 8(a)(2) ("A pleading that states a claim for relief must contain . . a short and plain statement of the claim showing that the pleader is entitled to relief").

### C. *Standard Applicable to Pro Se Matters*

In addition to the standards applicable to all summary judgment motions and a motion to dismiss, the court notes that several of Plaintiff's responses were prepared without the assistance

of counsel.  It has long been the rule that *pro se* pleadings, including complaints and pleadings connected with summary judgment, must be liberally construed.  *See Hall v. Bellmon,* 935 F.2d 1106, 1110 & n. 3 (10th Cir. 1991); *Hill v. Corrections Corp. of America,* 14 F. Supp.2d 1235, 1237 (D. Kan. 1998).  This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction.  *See Hall,* 935 F.2d 1110.  Liberal construction does not, however, require this court to assume the role of advocate for the *pro se* litigant.  *See id.*  Plaintiff is expected to construct his own arguments or theories.  *See id*.; *Hill,* 14 F.Supp.2d at 1237. Additionally, the fact that Plaintiff is proceeding *pro se* does not excuse his noncompliance with every litigant's duty to comply with the fundamental rules of procedure.  *See Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir. 1994) and noting that the *Nielsen* court cited "several cases for the principle that *pro se* parties must comply with the same procedural rules that govern all other litigants").  Plaintiff's *pro se* status, in and of itself, does not prevent this court from granting summary judgment.  *See, e.g., Baughman v. Saffle,* No. 00–6296, 2001 WL 1241329, at *1 (10th Cir. Oct.27, 2001) (granting summary judgment against a *pro se* plaintiff); *Woods v. Roberts,* No. 94–3159, 1995 WL 65457, at *2–3 (10th Cir. Feb.17, 1995) (affirming the grant of an unopposed motion for summary judgment).

Moreover, "[d]ismissal of a *pro se* complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).  Amendment is futile if plaintiff has been granted an opportunity to file an amended complaint and the amended complaint fails to cure the identified deficiencies.  *See Sheldon v. Vermonty*, 269 F.3d 1202, 1207 n.5 (10th Cir. 2001) (holding that dismissal with prejudice was appropriate because even after amendment plaintiff had "made no showing, beyond his conclusory

allegations, that he could have stated viable causes of action against [defendants] if he had been granted yet another opportunity to amend his claims"). The burden is on the Plaintiff to frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court notes that Plaintiff did have counsel through the filing of his SAC.

### D. *Law Regarding Constitutional Violations under 42 U.S.C. § 1983*

Allegations of a constitutional deprivation in the conditions of pretrial confinement are properly raised in a civil rights complaint pursuant to 42 U.S.C. § 1983. *See Muhammad v. Close,* 124 S. Ct. 1303, 1304-05 (2004) ("requests for relief turning on circumstances of confinement may be presented in a § 1983 action.") (citations omitted); *see also Rael v. Williams,* 223 F.3d 1153, 1154 (10th Cir. 2000) (claims arising from conditions of confinement must be brought in 42 U.S.C. § 1983 civil rights complaint rather than in a habeas petition). Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 108 S.

Ct. 2250, 2255 (1988).

### III. <u>ANALYSIS</u>

#### A. *<u>The Statutes of Limitations as to SWCMG – Undisputed Material Facts</u>*

The Court considers first whether the applicable statute of limitations bars Plaintiff's

claim against SWCMG pursuant to rule 56 of the Federal Rules of Civil Procedure. SWCMG is

"a California corporation that provides medical services to correctional facilities, including

OCDC," which Plaintiff maintains is liable for any constitutional deprivations caused by its staff.

Doc. 40 ¶ 6. SWCMG argues the statutory bar applies to Plaintiff's substantive due process

claim against it because the Complaint and FAC did not name SWCMG as a defendant.[10] Docs.

1, 22.[11] *Id.*

A three-year statute of limitations applies to the § 1983 claim against SWCMG. *See*

*Lymon v. Aramark*, 728 F. Supp. 2d 1207, 1216 (D.N.M. 2010). Accrual of a claim brought

under § 1983 is governed by "federal rules conforming in general to common-law tort

principles." *Wallace v. Kato,* 549 U.S. 384, 388, 127 S. Ct. 1091 (2007) ("The accrual date of a

§ 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.")

(emphasis in original); *Fratus v. Deland,* 49 F.3d 673, 675 (10th Cir. 1995) ("While state law

governs limitations and tolling issues, federal law determines the accrual of section 1983

claims."). "In general, under the federal discovery rule, claims accrue and [t]he statute of

---

[10] Named Defendants originally included the District Judge of the Twelfth Judicial District, the DA's Office, OCPF, OCDC, the Alamogordo Police, Department of Public Safety, and the Alamogordo Public Defender's Office. Doc. 1.

[11] The FAC named the Board of County Commissioners of the County of Otero, facility Director Carolyn Barela and Warden Rick Martinez, and John Doe 1. Doc. 22. It further identifies "and/or any other Director of OCDC [and/or any other Warden of OCPF] acting in that position during the time relevant to this Complaint . . . ." *Id.* ¶¶ 5-6. John Doe is described as "the person entrusted by the Board to provide access to medical services to Plaintiff during his detention, and is sued in his individual and official capacities." *Id.* ¶ 7.

limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander v. Oklahoma,* 382 F.3d 1206, 1215 (10th Cir. 2004) (internal quotations omitted). The focus is "on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm. In this context, a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Id.* at 1216 (internal citations omitted). *Lymon,* 728 F. Supp. 2d at 1216. "Once a plaintiff has discovered his or her injury and the cause of that injury, the statute of limitations begins to run." *Maestas v. Zager*, 152 P.3d 141, 148 (N.M. 2007).

Here, Plaintiff's complaints regarding improper or lack of medical care spanned the period of time he was placed in solitary confinement, which ranged from October 24, 2017 to April 9, 2019. Plaintiff filed his original complaint on September 10, 2018, and the first amendment on April 24, 2020, both within the three-year statute of limitation considering Plaintiff's first placement in solitary confinement.

Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading. . . ." Fed. R. Civ. P. 15(c)(1)(B). "Relation back is intimately connected with the policy of the statute of limitations." Fed. R. Civ. P. 15 advisory committee's note (1966). The purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S.p.A.,* 560 U.S. 538, 548-49 (2010). Though a potential defendant has a "strong interest in repose," repose should not be a "windfall" for a defendant who possesses sufficient notice of impending claims. *Id.* "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a

particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cnty. Welcome Cntr. v. Brown,* 466 U.S. 147, 149 n. 3 (1984). The same general standard of notice applies regardless of whether a litigant seeks to add defendants, plaintiffs, or claims. *See, e.g.,* Fed. R. Civ. P. 15 advisory committee's note. *McClelland v. Deluxe Fin. Servs., Inc*., 431 F. App'x 718, 723–24 (10th Cir. 2011). If the relation-back doctrine applies here, there is no bar to Plaintiff's claims based on the statute of limitations.

Before determining whether Plaintiff's amendment satisfies the requirements of Rule 15(c), the Court must first determine whether the Rule is available to Plaintiff in this instance. Rule 15(c) provides that an amendment of a complaint relates back to the date of the original complaint when "the amendment *changes the party or the naming of the party against whom a claim is asserted*" and certain requirements are met. Fed. R. Civ. P. 15(c)(1). Rule 15(c) contemplates either (1) a change to an existing party name, or (2) the substitution of one party for another. In this case, Plaintiff did change certain parties, substituting one party for another in part, while also retaining some parties. Rule 15(c)(1), therefore, applies.

Next, for an amendment to relate back to the date of the original Complaint, Rule 15(c)(1) requires that (1) the amended claim "arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading," and (2) within the time for service of the complaint set forth in Fed. R. Civ. P. 4(m), "the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(1)(C)(i)-(ii); *see Alexander v. Beech Aircraft Corp.,* 952 F.2d 1215, 1226–27 (10th Cir. 1991).

Whether an amended pleading relates back to the date of the original complaint is left to the discretion of the trial court. *Shea v. Esenten,* 208 F.3d 712, 720 (8th Cir. 2000) (citations

13

omitted); *see also Williams v. United States,* 405 F.2d 234, 237 (5th Cir. 1968) (noting that Rule

15(c) is permissive). A trial court should exercise this discretion liberally, especially when the

complaint alleges a violation of civil rights. *Ayala Serrano v. Callazo Torres,* 650 F. Supp. 722,

726 (D.P.R. 1986) (citation omitted). Courts look at whether the plaintiff deliberately chose not

to sue the proposed defendant, or whether he made a mistake concerning the identity of the

proper party. *Id.* (citation omitted). A court will deem that a mistake under Rule 15(c) occurred

if the plaintiff intended to sue certain participants, but misidentified or misnamed them in the

original complaint. *Id.* On the other hand, the Court will not find a mistake when a plaintiff,

with full knowledge of all potential defendants, made a tactical decision to pursue a particular

defendant in lieu of another. *Bloesser v. Office Depot, Inc.,* 158 F.R.D. 168, 171 (D. Kan. 1994).

Where, as here, an inmate identifies "John Does" because that information is particularly

within the defendants' knowledge, and a plaintiff has diligently attempted to ascertain those

identities through discovery, and then seeks to amend shortly after learning the identities, courts

have permitted the relation back doctrine to apply. *Alston v. Bellerose*, No. 3:12-CV-147 (CSH),

2016 WL 554770, at *3 (D. Conn. Feb. 11, 2016) (citing *Byrd v. Abate*, 964 F. Supp. 140, 146

(S.D.N.Y. 1997)) (permitting amendment replacing John Doe defendants to relate back pursuant

to Rule 15(c) because the plaintiff's "circumstances are distinguishable from those . . . in which

the plaintiff "failed to make any efforts to obtain the identity of their names until well after the

statute of limitations had run."). The *Byrd* court permitted the inmate-plaintiff to invoke rule

15(c) where he "made a series of efforts to obtain the identity of the individual officer without

prompting, and well before the end of the limitations period," and the identity of John Doe was

"uniquely within the knowledge of Corporation Counsel." *Byrd*, 964 F. Supp. at 146. As the

*Byrd* court explained, to hold that Rule 15(c) does not permit relation back in such circumstances

"would permit defense counsel to eliminate claims against any John Doe defendant merely by

resisting discovery requests until the statute of limitations has ended." *Id.*

The record shows that Plaintiff was diligent in his effort to identify the proper parties to name as defendants. First, prior to obtaining counsel, he provided notice by alleging that he "suffered medical conditions that went unaddressed, despite [his] administrative requests for medical care, mental health care, and dental treatments." Doc. 22 ¶ 23. The FAC counsel filed was replete with allegations regarding insufficient medical care during all times relevant to the case. Plaintiff sought discovery to determine the precise actors involved in the alleged misconduct. *Id.* ¶¶ 24, 29, 30, 32, 33, 36, and 41. The Court's December 18, 2020 Order permitted Plaintiff the opportunity to file a SAC, but first ordered Defendants to disclose Plaintiff's complete prison record, which was still lacking after two public record requests Plaintiff made during the preceding 18 months. Doc. 37 at 32 ("Plaintiff appears aware of the details that will permit him to sufficiently articulate plausible claims, but unable to do so until his prison records are disclosed."). On December 31, 2020, Defendants produced an additional 1,477 documents to Plaintiff including records from his detention at OCDC and OCPF. Doc. 39 (Notice of Compliance with the Court's Order). After receiving those records, Plaintiff filed his SAC identifying the current Defendants, including SWCMG.

Plaintiff filed his SAC on January 14, 2021, naming SWCMG as a Defendant, as well as John Does 5 & 6. Plaintiff alleged the John Doe defendants were SWCMG employees who had the ability, but failed, to provide medical and dental care and referrals to Plaintiff while he was detained at OCDC.[12] Doc. 40 ¶¶ 6, 15, 52, and 63. The Court notes that the amendments sought and permitted in a SAC appear to relate to Defendants' repeated failure to provide discovery Plaintiff diligently sought since filing his lawsuit in 2018. *See* Doc. 37 at 32 ("The discovery

---

[12] Named Defendants in the SAC included the Board of County Commissioners of the County of Otero, Management & Training Corp., SWCMG, and Defendants Sifuentes, Soto, Camacho, Moya, Ochoa, Leon, and John Does 1-6. Doc. 40.

process should be used to learn additional details with respect to the claims."); *see also* Doc. 30 at 16 (Plaintiff's brief seeking "names of those individuals personally responsible for the decisions to deny Plaintiff adequate medical care").  As stated above, Plaintiff made two formal requests for his complete records:  one in 2019 and the other in 2020; yet, Defendants did not provide those records prior to 2021.  *See* Doc. 30 at 16; *see also* Doc. 37 at 33 ("the County appears able, but did not, provide the documents Plaintiff would have needed to state more particular allegations in his Amended Complaint").  It is clear to this Court that Plaintiff diligently sought information in order to properly amend his complaint.

The Court previously looked at the statute of limitation issue as raised by Otero County, and rejected its motion because that Defendant offered no specific argument or facts in support of its position, but instead simply stated that "to the extent Plaintiff seeks to impose liability on Otero County for alleged actions or omissions that fall outside of the applicable statutes of limitation," the Court should dismiss such claims.  Doc. 41 at 6.  Plaintiff successfully argued that the Amended Complaint related back to his first *pro se* Complaint.  Doc. 42 at 2-3; Fed. R. Civ. P. 15(c) (relation back of amended pleadings); Doc. 72 (SAC related back to Plaintiff's first *pro se* complaint because it asserted a claim "that arose out of the conduct" set out – or attempted to be set out – in the original pleading); Fed. R. Civ. P. 15(c)(1)(B).  Otero County's statute of limitations argument, therefore, failed.

SWCMG contends that it did not know, nor should it have known, that but for a mistake in identity, this action would have been brought against it.  Doc. 89 at 4; *see Nelson v. Adams, USA, Inc.*, 529 U.S. 460, 467 n.1 (2000).   It argues that where a plaintiff's failure to name a defendant stems from lack of knowledge, rather than a mistake in identification, the plain language of Rule 15(c) does not permit relation back.  *Henry v. Fed. Deposit Ins. Corp.,* 168 F.R.D. 55, 59 (D. Kan. 1996).  Defendant SWCMG does not raise arguments relating to the

accrual of the Plaintiff's claim, tolling issues, or any prejudice that arises against SWCMG, but instead argues that because the relation-back doctrine does not apply to it, Plaintiff's claim against SWCMG is barred to the extent it concerns any behavior prior to January 14, 2018, *i.e.*, three years prior to Plaintiff's SAC.

This Court has already explained that Plaintiff submitted two public record requests attempting to obtain his prison record. Defendants had not fully disclosed that requested discovery through the Court's order on December 2020 Order. The Court's 2020 Order then permitted Plaintiff to file a SAC after Defendants provided all discovery. Plaintiff had already asserted his intention to sue "the person entrusted by the Board to provide access to medical services to Plaintiff during his detention," and then repeatedly alleged facts in support of the claims he had regarding a lack of medical and dental services. *See* Doc. 22 ¶ 7 (Am. Compl.). The fact that SWCMG was an unknown entity to Plaintiff until he received Defendants' complete disclosure of written discovery falls squarely within the meaning of mistake concerning the proper identity. *Garcia v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*, No. 09-CV-322 BB/WDS, 2010 WL 11618983, at *7 (D.N.M. Nov. 30, 2010) ("inadequate knowledge" about a party's identity constitutes a "mistake" under Rule 15(c)(1)(C)(ii)); *cf. Maclin v. Paulson*, 627 F.2d 83, 87–88 (7th Cir. 1980) (when "party is ignorant of defendants' true identity, it is unnecessary to name them until their identity can be learned through discovery or through the aid of the trial court"); *McClain v. Dugan*, No. 917CV0046LEKML, 2019 WL 6330507, at *12 (N.D.N.Y. Oct. 28, 2019), *report and recommendation adopted sub nom. McClain v. Doe*, No. 9:17-CV-46 (LEK/ML), 2019 WL 6330205 (N.D.N.Y. Nov. 26, 2019) (permitting relation back where plaintiff encountered resistance from defendants while attempting to identify the proper defendants) (citing *Benitez v. Locastro*, No. 9:04-CV-423, 2010 WL 419999, at *6 (N.D.N.Y. Jan. 29, 2010) (recognizing unique issue that arises when a defendant has prevented the plaintiff

from discovering the identity of the John Doe defendants, and the plaintiff has taken reasonable affirmative steps to discover their identities)).

This case is not the situation where relation back is prevented because Plaintiff opted not to find out whom to sue within the limitation period. *See Brown v. Cuyahoga Co., Oh.*, 517 F. App'x 431, 434 (6th Cir. 2013) (Opting not to find out whom to sue within the limitation period or simply not knowing whom to sue does not constitute a "mistake" for purposes of relation back.). The Court will not penalize Plaintiff for Defendants' failure to provide the requested discovery. The Court finds that all three conditions of Rule 15(c) are satisfied because the SAC involves the same transaction and occurrence as the original complaint, *i.e.*, Plaintiff's medical treatment (or lack thereof) during his solitary confinement. Further, although it's unclear whether SWCMG had actual notice of the pending action prior to the SAC, the Court finds it knew or should have known that, but for Plaintiff mistaking who or what entity was responsible for his medical care while detained, he would have brought the original complaint against SWCMG as the entity responsible for providing medical care at OCDC, and no prejudice is alleged or presented.[13] *See generally George v. Beaver Cnty.*, No. 2:16-CV-1076 TS, 2019 WL 181354, at *7 (D. Utah Jan. 11, 2019) (allowing relation back of amended complaint where it was clear that plaintiff "sought to assert a claim against the individual responsible for the operation of the jail at the time of [the inmate's] death. More specifically, the FAC brought claims against the individual or individuals responsible for the decisions that Plaintiff contends ultimately led to [the inmate's] death, including the decisions of how to classify him, monitor him, and treat him."); *Monical v. Marion Cnty.*, No. 6:18-CV-103-YY, 2021 WL 228891, at *5 (D. Or. Jan. 22, 2021) (tolling statute of limitations due to extraordinary circumstances beyond

---

[13] The allegations in the SAC stem from the same set of facts espoused in the original complaint. The confinement and injuries described in the original complaint and SAC are the same.

[inmate's] control where he did not know who ran the commissary, and jail did not inform him of that fact, nor did any of the original defendants). The Court, therefore, recommends the **DENIAL** of Defendant SWCMG's motion for partial summary judgment based on the statute of limitations (Doc. 70).

### B.  *The MTC Defendants' Motion to Dismiss*

### (i)    *Statute of Limitations*

The MTC Defendants move to dismiss the SAC under rule 12(b)(6) in part because they maintain it raises "entirely new claims against entirely new Defendants." Doc. 52 at 3. They contend the statute of limitations bars claims regarding Plaintiff's confinement at OCPF from March 2016 to February 2017. Because Plaintiff left the OCPF facility in August 2018, the MTC Defendants argue that his claims about any behavior arising more than two or three years before the SAC are barred by the two-year-limitations period that applies to the NMTCA claims and/or the three-year-period that applies to the § 1983 claims. Because Plaintiff filed his SAC on January 14, 2021 (Doc. 40), the MTC Defendants argue that the statute of limitations bars tort claims arising before January 14, 2019, and constitutional claims arising before January 14, 2018.

Plaintiff's SAC, however, challenges 353 continuous days of solitary confinement at OCPF from March 2016 to February 2017. Doc. 40 ¶ 31. Plaintiff left that facility, and then was sent back and placed in solitary confinement again for 274 consecutive days, November 29, 2017 to August 30, 2018. *Id*. ¶ 38. The MTC Defendants seek to have allegations regarding the earlier dates dismissed as a matter of law. They argue that because Plaintiff left OCPF in February 2017, his claims for conduct prior to that would have accrued at the time of the alleged misconduct, including the occurrence of any medical malpractice claim. Doc. 52 at 5. Yet, Plaintiff did not name the MTC Defendants until January 2021, four years after the occurrence of

the alleged misconduct.

The MTC Defendants' arguments fail for the same reason SWCMG's statute of limitations argument fails, *i.e.*, the January 2021 SAC relates back under Rule 15(c). The Court is not persuaded by the MTC Defendants' reliance on anti-tolling case law that rejects a plaintiff's addition of a new party in the complaint where there was no identity of interest between the party first named and that which plaintiff identified in the amendment. *Graves v. Gen. Ins. Corp.*, 412 F.2d 583, 585 (10th Cir. 1969) ("there is no identity of interest between the General Insurance Corporation and the General Insurance Company. They are headquartered in different cities, directed and controlled by different persons and have no supplementing business activities. Furthermore, the General Insurance Corporation did not receive notice of the action until after the period of limitation had run."); *see* Doc. 52 at 6 n.3.

The MTC Defendants cite *Torres v. Marcantel*, No. 16cv1352 KG/LF, 2017 WL 3084463 (D.N.M. July 17, 2017) to support their position that that Plaintiff's claims about improper placement in solitary confinement are time-barred. In that case, Mr. Torres complained about segregation he experienced in 2008 and 2011, but he did not file his original complaint until December 12, 2016. Those facts are clearly distinguishable from the situation here, where Plaintiff challenges his segregation from October 24, 2017 to April 9, 2019, and he filed his original complaint on September 10, 2018, less than one year after his first period of solitary confinement. The Court reiterates that a lack of discovery prevented Plaintiff from identifying current defendants until January 14, 2021, at which time the contractors and employees of the entities involved with the challenged actions should have already known that such complaints targeted their services because the SAC stems from the same set of facts espoused in the original complaint. *See Palmer v. York Cnty.*, No. 1:20-CV-00539, 2021 WL 674244, at *5 n.1 (M.D. Pa. Feb. 22, 2021) (permitting relation-back of § 1983 action against prison's medical service

provider where plaintiff "acted expeditiously to identify and name the [defendants], and [plaintiff's] failure to do so sooner was largely attributable to repeated refusals by York County to turn over records, even after it was ordered to do so by multiple Pennsylvania judges"). The Court does not imply that Plaintiff's claims have merit, but simply that they are not barred by the statute of limitations. Plaintiff amended his complaint to identify individuals and entities involved with the alleged misconduct once he received the discovery that clarified those involved and arguably responsible for the conduct at OCPF and OCDC. At this stage of the proceedings, the facts suggest that the MTC Defendants each had a potential role in the alleged state and federal law deprivations, and that an identity of interest is sufficiently alleged.

   *(ii) <u>Plaintiff's Constitutional Law Claims</u>*

   The next area of dispute concerns the MTC Defendants' argument under Rule 12(b)(6) that Plaintiff's SAC fails to adequately allege a constitutional claim against them. The Fourteenth Amendment Due Process Clause states, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Due Process Clause encompasses two distinct forms of protection: (i) procedural due process . . . and (ii) substantive due process[.]" *Romero v. Bd. Of Cnty. Comm'rs*, 202 F. Supp. 3d 1223, 1242 (D.N.M. 2016). "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). Essential to both is the existence of a protected liberty or property interest. *See Zia Shadows, L.L.C.*, 829 F.3d at 1237 ("To prevail on a due-process claim under § 1983, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest.") (internal quotation marks omitted). The Court previously reviewed and applied those

standards in this case with respect to the amended complaint (Doc. 72 at 8-13), and repeats the applicable legal standards here in an abbreviated form.

Prison conditions that impose *atypical and significant hardship* on an inmate in relation to the ordinary incidents of prison life *may* create a liberty interest protected by the Due Process Clause. *Id*. (citing *Sandin v. Conner,* 115 S. Ct. at 2302); *see Payne v. Friel,* 266 F. App'x 724, 728 (10th Cir. 2008) (finding duration of confinement by itself may be an "atypical and significant hardship"); *Jordan v. Federal Bureau of Prisons,* 191 F. App'x 639, 651–53 (10th Cir. July 25, 2006) (finding that long periods spent in administrative segregation could be atypical if not justified by sufficient extenuating circumstances); *Fogle v. Pierson,* 435 F.3d 1252, 1259 (10th Cir. 2006) (reversing district court's dismissal of complaint as frivolous where court concluded that there was no arguable basis that a three-year period of administrative segregation, where prisoner was in his cell all but five hours a week and denied outdoor activities, was not "atypical"); *Trujillo v. Williams,* 465 F.3d 1210, 1225 (10th Cir. 2006) (allegation of 750 days spent in segregation "may itself be atypical and significant"); *Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir. 2000) (stating that confinement in SHU exceeding 305 days was atypical); *see also Smith v. Anderson*, No. 10-CV-01869-PAB-KMT, 2011 WL 1043367, at *7 (D. Colo. Jan. 24, 2011), *report and recommendation adopted*, No. 10-CV-01869-WJM-KMT, 2011 WL 976743 (D. Colo. Mar. 18, 2011) (finding that eight months "in administrative segregation alone may implicate a liberty interest").

To determine whether segregated confinement imposes an atypical and significant hardship, courts consider whether: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement ... ; and (4) the placement is indeterminate." *Grissom v. Roberts*, 902 F.3d 1162, 1169 (10th Cir. 2018) (internal quotation

marks and citation omitted) (granting summary judgment to prison officials with regard to the existence of a liberty interest because there was no clearly established law alerting them that 20 years in solitary confinement violated any constitutional rights on allegations of his drug distribution while incarcerated) (citing *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007)).

Defendants cite three cases to support their dismissal of this claim. First is *Shields v. Cline*, 829 F. App'x 321, 324 (10th Cir. 2020), where the court found insufficient allegations of a liberty interest where that plaintiff was segregated for 5 months and received monthly review board meetings. Both factors are distinguishable from the facts here, where plaintiff was segregated more than 38 months, with no review. Next is *Jackson v. Ward*, 159 F. App'x 39, 41 (10th Cir. 2005), where the plaintiff spent 36 *days* in segregated housing based on allegations he left a romantic note on the floor for a guard. Because such treatment was not atypical, the Circuit upheld the district court's dismissal of that claim, but permitted him to amend his complaint to allege more details. *Id*. Defendants also cite *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006), which actually reversed the district court's dismissal of constitutional claims based on the prisoner's 750 days in segregation because other inmates had been held a maximum of only 180 days. *Id*. at 1225. That case makes it clear that, although an inmate does not have an inherent liberty interest in remaining in the general population, before dismissing such a claim, the court must have evidence that addresses both the duration and degree of plaintiff's restrictions compared to other inmates. Like the *Trujillo* case, an evidentiary analysis is required here before the Court can determine whether a violation of Plaintiff's rights has occurred.

To the extent Defendants also rely upon *Grissom* to support their position for dismissal, the Court notes that case involved fact-specific findings in a summary judgment context where

plaintiff had multiple episodes of significant misconduct. *Grissom*, 902 F.3d at 1172. Moreover, as the concurrence opinion in that case states, given our "society's present understanding that prolonged solitary confinement inflicts progressive brain injury, we cannot consider such prolonged, unjustified confinement as anything other than extreme and atypical." *Id*. at 1177 (Lucero, J., concurring); *see Wilkerson v. Goodwin*, 774 F.3d 845, 858 (5th Cir. 2014) (listing cases in which courts have "considered the duration of the restrictions to be a central factor in the analysis"); *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical.").

Plaintiff *does* allege there was no penological interest proffered or presented. Doc. 40 ¶ 67. He further claims that segregation was ordered without the requisite mental health assessment, and without the opportunity to challenge his confinement. *Id*. ¶ 31. He alleges the decision was part of a policy targeting mentally ill, pretrial detainees like himself. *Id*. ¶¶ 37, 40, 44, 47. Any further requirement would demand that Plaintiff somehow prove a negative at the pleading stage of a motion under rule 12(b)(6), *i.e*., the absence of a valid reason for his segregation. *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010) (stating that with First Amendment claim, "we do not intend that *pro se* prisoners must plead, exhaustively, in the negative in order to state a claim. It is sufficient that he plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest.").

Defendants argue that segregation alone is not enough to create liability under § 1983, and the Court agrees. However, based on the fact-specific inquiry required to evaluate the *DeMarco* factors in the context of admissible evidence required for consideration here, the Court cannot conclude as a matter of law that the years of solitary confinement involved here did not

arise to the level of a constitutional violation.  *See Smith*, 2011 WL 1043367, at *7 ("It is clear

that any due process claim based on an inmate's segregation is highly-fact dependent and the

factors should be 'viewed in their totality.' ") (citation omitted).  The court finds, at this stage of

the case, it is conceivable that Plaintiff could prove facts showing that his housing in

administrative segregation was an "atypical and significant hardship on the inmate in relation to

the ordinary incidents of prison life."  *Sandin,* 115 S. Ct. at 2302.

Based on Hicks' allegations, a jury could conclude that the administrative segregation at

issue did not further a penological interest.  He alleges he was placed there as punishment, in part

because he had mental health disorders, and in part because he was a pretrial detainee.  The

determination of whether a condition of pretrial detention amounts to punishment turns on

whether the condition is imposed for the purpose of punishment or whether it is incident to some

legitimate government purpose.  *See Bell v. Wolfish*, 99 S. Ct. 1861, 1873 (1979).  An intent to

punish on the part of detention facility officials is sufficient to show unconstitutional pretrial

punishment.  *Id.*  Further, "if a restriction or condition is not reasonably related to a legitimate

goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the

governmental action is punishment[.]"  *Id.* at 1874.

The record to date is void of any reason for Plaintiff's segregation, so the Court is in no

position to find it was a legitimate reason until it hears more.  Whether his conditions were

extreme is also subject to evaluation based on the facts.  The Court, therefore, finds that

Plaintiff's allegations sufficiently allege extreme conditions where the Defendants placed him in

solitary confinement for more than 38 months or 70% of his pretrial detention.

Plaintiff also claims he was denied medical, mental health, and dental care, including

never seeing a dentist despite broken and infected teeth; his situation was made worse by the fact

that nobody ever explained why he was so confined, nor reviewed his confinement conditions.

Whether Hicks' placement increased his duration of confinement or was indeterminate remains

unclear; but he was sentenced to only 545 days after spending 1,171 days as a pretrial detainee.

Plaintiff has, therefore, sufficiently pled a deprivation of a constitutionally protected liberty

interest.

### *Procedural Due Process Rights*

Mr. Hicks pleaded that his placement in solitary confinement while housed at OCPF

deprived him of his procedural due process rights because he was not afforded a hearing before

being placed in solitary confinement, and was never afforded an opportunity to be heard

regarding the same.  Doc. 40 ¶¶ 58-59.  The record contains no grounds or explanation for his

lengthy period of solitary confinement, so no penological interest is yet presented.  Plaintiff's

allegations are sufficient because he states that of his 38-month pretrial detention, he spent more

than 70% (approximately 842 of 1,171 days) of his time in solitary confinement, without any

notice or an opportunity to challenge the conditions under which he was confined, nor has Otero

County provide any explanation for such segregation.  *See id.* ¶ 29; *accord Fogle v. Pearson*, 435

F.3d 1252, 1259 & n.3 (10th Cir. 2006) (district court abused its discretion when it held that

holding an inmate in administrative segregation for three years did not violate inmate's due

process rights) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S. Ct. 2963 (1974); *see also*

*Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir. 2002) (admonishing courts to "carefully

examine the conditions of the prisoner's confinement" before determining whether such

conditions were constitutional).

Assuming Plaintiff's allegations are true, he sufficiently states a procedural due process

claim.  *See Quintanilla v. Bryson*, 730 F. App'x 738, 747 (11th Cir. 2018) (finding that

allegations of near-constant exposure to unhygienic conditions in solitary confinement, as well as

denial of adequate food, exercise and human contact, for at least one year, state a claim for denial

of procedural due process and an Eighth Amendment violation); *Warren v. Emerald Healthcare Sys.*, No. CV 12-1086 KG/LAM, 2014 WL 12796823, at *6 (D.N.M. Apr. 22, 2014) (denying dismissal under rule 12(b)(6) where plaintiff alleged that defendant did not conduct a periodic classification review of the solitary confinement decision or provide plaintiff with an opportunity to respond to the continued decision to keep plaintiff in solitary confinement); *Johnson v. Dobbins*, No. 3:19-CV-01160, 2021 WL 2474463, at *5 (M.D. Tenn. June 17, 2021) ("Plaintiff plausibly alleges [procedural due process claim where] the County Defendants placed him in solitary confinement for 23 hours a day inside his cell and only one hour outside his cell without penological justification for fifteen months. Plaintiff also alleges that the lone hour outside of his cell did not include recreation time, outdoor activity, or social interaction with other inmates."); *see generally Harden-Bey v. Rutter*, 524 F.3d 789, 793 (6th Cir. 2008) ("courts have found such [atypical and significant] hardship in lengthy, involuntary confinement as 'unusual and substantial in relation to the ordinary incidents of prison life'" in potential violation of procedural due process rights) (collecting cases).  The Court, accordingly, recommends **DENYING** the MTC Defendants' motion to dismiss this claim.

### *Substantive Due Process Rights*

A pre-trial detainee's conditions of confinement may also implicate substantive due process. "To make a substantive due process claim for conditions of confinement, a plaintiff must satisfy two requirements. . . . First, the alleged deprivation must be "sufficiently serious," which turns on the severity of the alleged deprivations and their duration. . . . Second, [a plaintiff] must show that the jail officials had a sufficiently culpable state of mind." *Romero*, 202 F. Supp. 3d at 1261-62.  To determine whether the first prong of the substantive due process test is met, courts must take a holistic look at the detainee's allegations, rather than asking whether each specifically alleged violation is "sufficiently serious." *Id.* at 1261 (citing *Wilson v.*

*Seiter*, 501 U.S. 294, 305 (1991)).  As discussed in the Court's prior Order, Mr. Hicks alleges

that he remained in the custody of Otero County for 38 months of pretrial detention, 28 of which

he spent in solitary confinement.  Doc. 40 ¶¶ 28-29.  Mr. Hicks also alleges that Otero County

was aware that he suffered from pre-existing mental health conditions, including schizoaffective

disorder and post-traumatic stress disorder (*id.* ¶ 27), and that the extreme duration of his solitary

confinement caused his mental health to deteriorate (*id.* ¶ 56), and the uncertainty of how much

longer he would have to stay in solitary confinement caused him to take a plea that he otherwise

would have rejected (*id*. ¶ 26).  Finally, Mr. Hicks has alleged that he was denied dental care,

even though he made repeated requests to see a dentist throughout his 38 months of pretrial

confinement, but "was never given adequate care."  *Id.* ¶¶ 50-53.  Taken as a whole, the Court

finds that Mr. Hicks has sufficiently alleged that the deprivations he suffered due to his

conditions of confinement were "sufficiently serious."

 Mr. Hicks has also adequately alleged that Defendants acted with deliberate indifference

to his health and safety, in satisfaction of the second prong, *i.e.*, a sufficiently culpable state of

mind.  *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) ("In the context of prison-

conditions claims, the required state of mind is one of 'deliberate indifference' to inmate health

and safety.") (quoting *Farmer v. Brennan*, 114 S. Ct. 1970 (1994)); *see, e.g.*, Doc. 40 ¶¶ 63-71.

He maintains the Defendants ignored years of requested dental care, disregarded known mental

health problems as a form of punishment and abuse, and repeatedly deprived him of required

recreation, outside time, exercise, and personal hygiene (including showering and dental care).

Doc. 40 ¶ 66.  On these allegations, and viewing the pleadings in a light most favorable to Mr.

Hicks, the Court finds that he has adequately stated a substantive due process claim as well.

### ***Sufficiency of the Allegations Against Each Defendant***

 Next, Defendants seek dismissal on the grounds that Plaintiff has failed to connect each

individual Defendant to the alleged constitutional violations.  Doc. 52 at 9-10.  Yet, the SAC

asserts that MTC, the employer of the individual defendants associated with OCPF, provides the

medical services Plaintiff sought, but was denied during his pretrial detention.  Doc. 40 ¶ 5.

Plaintiff further specifically alleges a particular act by each individually named MTC Defendant

acting within the course and scope of his employment.  *Id*. ¶¶ 8-14, 39-40; *see also id*. ¶ 63-64.

While the allegations are somewhat general and brief, they suffice for purposes of pleading

requirements, and the Court recommends Defendants' motion be DENIED with respect to the

due process claim.

### (iii)    *Municipal and Corporate Liability:   Custom, Policy or Practice*

The MTC Defendants seek the dismissal of the "corporate liability" claim that Plaintiff

asserts against Otero County for municipal liability, and against the MTC for corporate liability.

Plaintiff's third count asserts a claim against the government entity and the private organization

that he alleges were responsible for a "custom, policy or practice" that violated his constitutional

rights under *Monell v. Department of Social Services of the City of New York*.  That case held

that an injured plaintiff may recover from a municipal entity "when execution of a government's

policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy, inflicts the injury."  98 S. Ct. 2018 (1978).  The claim has three

general requirements:  (1) an underlying injury to a constitutional right of the plaintiff; (2) a

municipal policy or custom; and (3) a direct causal link between the policy or custom and the

injury.  *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir.

2013); *see also Romero v. Bd. of Cnty. Comm'rs for the Cnty. of Curry,* 202 F. Supp. 3d 1223,

1255 (D.N.M. 2016) (detainee adequately alleged a procedural due process claim against the

County by asserting that officers confined her in punishing conditions that were excessive in

relation to any legitimate governmental interest without providing any hearings or reviews).  The

MTC Defendant argues that dismissal of this count against it is warranted because Plaintiff makes only conclusory and formulaic allegations, citing one case, *Hall*, 935 F.2d at 110 ("Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

However, corporate entities involved in carrying out municipal policies and customs may be liable where those actions rise to the level of a constitutional violation. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) ("caselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants") (citing cases).

The SAC alleges that Otero County and the MTC operated under and carried out two policies that led to a deprivation of his constitutional rights:  one is a policy that houses mentally ill people in segregation or solitary confinement, and the other is an alleged policy that houses pre-trial detainees in segregation or solitary confinement, both as a means to punish those individuals, including Plaintiff, by denying medical care and minimizing their interactions with the general population.  Doc. 40 ¶¶ 73-77.  Plaintiff alleges the polices were detrimental to his mental and physical health and were created with a deliberate disregard for his rights.  *Id*. ¶¶ 77-78.  He contends the policies were the moving force behind the violations of his constitutional rights.  *Id*. ¶ 79.  At this stage, that claim remains validly asserted as to Defendants Otero County and the MTC.  *See Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015) ("With formal or written policies, satisfying this pleading standard is easy; the plaintiff can simply allege what the policy is and where it is codified.  With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct ... or use other evidence, such as [ ] police officers' statements attesting to the

policy's existence.").[14]   The Court recommends denial of the MTC Defendants' motion seeking

denial of Plaintiff's corporate and municipal liability claim.   The Court now turns to the

remaining motions.

### C.   *Motion for Extension of Time, Motions to Strike, Evidentiary Motion*

Plaintiff's first response to the MTC Defendants' motion to dismiss is irrelevant because

it is devoid of any substantive position.   Instead, Plaintiff informs the Court that he was delayed

in responding to the motion because he was suffering with symptoms of deep depression.   Doc.

73.   Then, without leave of the Court, he responds again on October 6, 2021 (Doc. 84),

essentially arguing that his SAC is not properly dismissed under the liberal standards afforded

under rule 12(b)(6).   Doc. 84.   The Court will treat Plaintiff's first response as a motion for

extension of time to respond, and recommends (1) **GRANTING** that request for an extension of

time, (2) permitting the later filed response (Doc. 84) to stand, and (3) **DENYING** the MTC

Defendants' motion to strike the second response (*see* Doc. 86).

Defendants replied to their motion to dismiss based on Plaintiff's first filed brief (that

lacked any substance).   Doc. 74 (Reply).   Plaintiff then responded to Defendants' Reply in what

is tantamount to a surreply.   Doc. 76.   Therefore, Defendants also moved to strike Plaintiff's

response at Document 76 as an improper surreply.   Doc. 77 (Mot. to Strike).   Here, the Court

agrees with Defendants, and recommends striking what amounts to Plaintiff's third bite at the

apple with respect to the MTC Defendants' motion to dismiss.   A surreply brief is necessary only

if the reply brief raises new material that was not included in the original motion.   *See Green* v.

*New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) (citing *Beaird v. Seagate Tech., Inc.,* 145 F.3d

1159, 1164 (10th Cir.1998)).   "New material" can include new legal arguments or factual

---

[14] The MTC Defendants originally sought dismissal of the Plaintiff's claim against them based on the New Mexico Tort Claims Act.   Doc. 52 at 11-12.   However in light of recent developments in New Mexico law, the MTC Defendants retracted that argument.   Doc. 74 at 2 n.1.   The Court will, therefore, not address that issue further.

evidence. *Id.* (citing *Doebele v. Sprint/United Mgmt. Co.,* 342 F.3d 1117, 1139 n. 13 (10th Cir. 2003)). Defendants do not raise new material. Consequently, the surreply is improper and unnecessary.

The Court also considers a fourth document Plaintiff filed that purportedly relates to the MTC Defendants' motion to dismiss at Doc. 52, which is Plaintiff's "Further Testimony Offered," at Document 85. In that pleading, Plaintiff seeks the right to obtain testimony from a former neighboring-inmate, whom he alleges will testify that the MTC Defendants tortured the Plaintiff. Doc. 85. That individual, inmate Robert Nelson, is apparently detained on death row in Ohio. Doc. 85. Defendants did not respond to that motion, which constitutes consent under this Court's Local Rule 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."). D.N.M.LR-Civ.7.1(b). Nonetheless, this Court considers the delicate balance of interests involved with Plaintiff's request.

"[W]hile an inmate generally has the right to call witnesses and present evidence, such right is not absolute; the prison can restrict witness testimony and documentary evidence due to special requirements of the prison setting." *Diaz v. McGuire*, 154 F. App'x 81, 84 (10th Cir. 2005) (unpublished) (citing *Wolff*, 418 U.S. at 566–67). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Wolff*, 418 U.S. at 566.

"Confrontation and cross-examination present great hazards to institutional interests." *Id.* at 567. "The Constitution does not require the opportunity for confrontation and cross-examination in disciplinary proceedings." *Diaz*, 154 F. App'x at 84 (citing *Wolff*, 418 U.S. at 568). The scope of a prisoner's right to confront and cross-examine witnesses is similarly

committed to the sound discretion of prison officials.  *Id.* at 569.  If the case proceeds to trial,

Plaintiff shall address what affect Mr. Nelson's testimony will have on his case.  *See generally*

*Brown v. Wyo. Dep't of Corr. State Penitentiary Warden*, 234 F. App'x 874, 879 (10th Cir. 2007)

("[A] prisoner cannot maintain a due process claim for failure to permit witness testimony if he

fails to show that the testimony 'would have affected the outcome of this case.'") (citation

omitted); *see also Bird v. Pacheco*, 729 F. App'x 627, 630–31 (10th Cir. 2018) (same) (citing

*Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993)).  Until then, only the MTC Defendants

possess the information that Plaintiff needs regarding the witness he believes is helpful to his

case.

The Court recommends the presiding judge order the MTC Defendants to provide a

Status Report within 30 days, setting forth information in their possession or control as to

whether Mr. Nelson can be located in his current confinement and/or whether he is available and

willing to provide a sworn statement (via affidavit or Zoom testimony) as Plaintiff alleges he will

do.  Although Defendants did not respond to Plaintiff's request, they could have suggested that,

in accordance with Rule 34 of the Federal Rules of Civil Procedure, they would provide

information in their possession or control with respect to the potential witness that Plaintiff

identified.  Such information is a proper discovery request for production of documents and

things.  *See Brown v. Dorneker*, No. 06-3245-CM, 2007 WL 1246222, at *2 & n.9 (D. Kan. Apr.

27, 2007) (rejecting inmate's request for subpoena concerning former inmate until defendants

were permitted to make discovery disclosures under rule 34) (citing *Beaver v. Supercuts &*

*Representatives,* No. 05–4131–RDR, 2005 U.S. Dist. LEXIS 33772 at *1 (D. Kan. Dec. 16,

2005) (construing *pro se* plaintiff's various motions seeking to "summons" records as requests

for production of documents).

Alternatively, the Court could treat Plaintiff's request as a rule 45[15] subpoena to produce

for inspection and copying any "documents showing the name and last known address for the

previous inmate" the Plaintiff identified.  *See Brown v. Narvais*, No. CIV-06-228-F, 2009 WL

2230774, at *2 (W.D. Okla. July 22, 2009) (recommending denial of prison's motion to quash

inmate's subpoena for information about former inmate where the incarcerated plaintiff had "no

opportunity to learn the identity or address of the individual he believes is a witness who can

support his claim").  At this stage of the litigation, Plaintiff is entitled to receive information

regarding the location and contact information for this witness, whom Plaintiff believes can help

his case; as stated, only the MTC Defendants have access to that information.

Closer to any hearing in this case, the Court can consider, if necessary, the means by

which Plaintiff may obtain any relevant testimony, dependent upon any prison rules and

regulations that impact Mr. Nelson's incarceration at that time.  *Cf. Turner v. Safley*, 482 U.S.

78, 93 (1987) (finding that a prison rule that prohibited inmate-to-inmate correspondence does

not unconstitutionally abridge the First Amendment rights of prison inmates); *see also Nasir v.*

*Morgan*, 350 F.3d 366, 376 (3[d] Cir. 2003) (treating the claim under the First Amendment in a

civil rights case brought under § 1983, and upholding a prison rule that prohibited inmates from

corresponding with former inmates).  "The scope of a prisoner's right to call and confront

witnesses is committed to the sound discretion of prison officials" and prison officials must make

the determination on an individual basis.  *Ramer v. Kerby,* 936 F.2d 1102, 1104 (10th Cir. 1991).

To the extent Plaintiff's proffer of further evidence (Doc. 85) can be construed as a

motion to depose an inmate formerly housed in close proximity to the Plaintiff at the time of the

---

[15] "Generally, Federal Rule of Civil Procedure 45 authorizes the issuance of a subpoena commanding a person to whom it is directed to attend and give testimony, or to produce and permit the inspection of designated documents. Rule 45(a)(1)(C). Rule 45 is the only discovery method whereby information may be obtained from a nonparty to the suit."  *Cf. Calpin v. Lackawanna Cty.,* No. CV 3:16-2013, 2017 WL 4883199, at *2 (M.D. Pa. Oct. 30, 2017) (citing *See* Adv. Comm. Note on 1991 Amendments to Fed. R. Civ. P. 45) (additional citation omitted).

alleged offense, this Court recommends the motion be **GRANTED IN PART**.  The Court recommends that the MTC Defendants provide a Status Report to provide the information in its possession or control as set forth above.

### D. _Defendant Sifuentes' Motion to Dismiss_

Plaintiff alleges that Defendant Sifuentes is the person at OCDC who authorized, directed, controlled and/or approved Plaintiff's placement in solitary confinement at that facility. Doc. 40 at 4-8.  Defendant Sifuentes seeks dismissal of the complaint against him on many of the same grounds the MTC Defendants raised:  (1) statute of limitations; (2) failure to state a constitutional violation, adding the defense of qualified immunity; and (3) failure to state a claim under the New Mexico Tort Claims Act.  Doc. 64.  In his reply brief, Defendant Sifuentes also asks the Court to strike evidence Plaintiff relies upon in his response to the motion to dismiss, namely affidavits from three former inmates, Johnny Gutierrez, Johnny Haynes, and Kevin B. Reed.  Doc. 87 at 2.

Sifuentes' statute of limitation argument is a summary request to dismiss Plaintiff's claims that fall outside the applicable statute of limitations time period.  Doc. 64 at 6.  Possibly, he intended to rely upon the specific arguments the MTC Defendants or SWCMG raised in their motions seeking to bar claims based upon the timing of the conduct and the SAC; if so, this Court recommends a denial of Sifuentes' motion on the same grounds discussed above.  Because Sifuentes raises nothing specific or novel about the statute of limitation defense beyond issues this Court has already addressed, that part of Sifuentes' motion should be DENIED.

Similarly, Sifuentes' motion to dismiss the constitutional law claims for violation of his substantive and procedural due process rights largely mimics the other defendants' motions, often verbatim.  Aside from Sifuentes' arguments about a lack of a protected liberty interest or an atypical hardship argument, which the Court will not repeat, Defendant Sifuentes' also argues

(as did the other defendants) that Plaintiff fails to sufficiently allege "who did what to whom" in the SAC.  Doc. 64 at 8-9.

However, Plaintiff does allege that Sifuentes was the correction officer at OCDC who acted under color of state law, within the course and scope of his employment at all times relevant to this case.  Doc. 40 ¶ 7.  And, that Sifuentes authorized, approved, and/or made the decision to place and retain Plaintiff in solitary confinement at the OCDC as a punishment that served no penological interest.  *Id*. ¶¶ 35-37, 43, 47.  The Court disagrees with Sifuentes' contention that Plaintiff's claims are passive voice attempts at suggesting Plaintiff's constitutional rights "were violated" in a way that prevents Defendant from realizing Plaintiff's version of who did what to whom.  Instead, Plaintiff has specifically alleged that Sifuentes was the decision maker and/or approval authority for his extended confinement conditions; therefore, Plaintiff survives this motion to dismiss.  Personal involvement under section 1983 does not require direct participation because that provision states "'[a]ny official who "causes" a citizen to be deprived of her constitutional rights can also be held liable.'" *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (internal citations omitted).  While Sifuentes argues that he is entitled to qualified immunity on this claim, this argument is also limited to one short paragraph. Doc. 64 at 9-10.

Sifuentes argues that Plaintiff fails to satisfy his burden in response to a qualified immunity defense, namely that defendants' actions violated a constitutional right, and that the right was clearly established at the time of defendants' actions.  Doc. 64 at 9.  Sifuentes then bootstraps his argument about Plaintiff's lack of a cognizable liberty interest or the presence of an atypical hardship to suggest that qualified immunity is warranted.  Doc. 64 at 10.  The qualified immunity analysis is subject to a rigid factual inquiry and thus not properly disposed of on a rule 12 motion as argued here. *Hall v. Reams*, No. 20-CV-01248-RM-NRN, 2021 WL

3679846, at *6 n.2 (D. Colo. Aug. 19, 2021) ("It is not uncommon for courts to defer ruling on qualified immunity until the summary judgment stage."); *citing*, *e.g.*, *Harvey v. Gonzalez*, No. 14-cv-02174-RBJ-NYW, 2015 WL 13730685, at *7 (D. Colo. Nov. 24, 2015), *report and recommendation adopted*, No. 14-cv-002174-RBJ-NYW, 2015 WL 9462057 (D. Colo. Dec. 28, 2015) (reasoning that ruling "on Defendant's assertion of qualified immunity . . . is an inquiry better suited for summary judgment once a factual record is developed."); *Torres v. White*, No. 08-CV-196 JHP/FHM, 2009 WL 37617 at *3 (same); *cf. Maxey by Maxey v. Fulton*, 890 F.2d 279, 281 (10th Cir. 1989) (district court's order denying Rule 12(b)(6) motion to dismiss "did not conclusively and finally deny [defendant]'s entitlement to qualified immunity, but merely deferred that issue pending development of a sufficient factual record").  At this stage, Plaintiff need only allege a constitutional violation that is plausible on its face. *Sayed v. Virginia*, 744 F. App'x 542, 545-46 (10th Cir. July 31, 2018).  This, he has done.

As to the false imprisonment claim Plaintiff brings under the New Mexico Tort Claims Act, Defendant Sifuentes argues first that the SAC fails to distinguish what each defendant did to him in a way that would permit the defendants to be on notice of such claims and properly respond.  Doc. 64 at 10.  This argument essentially repeats that which Sifuentes raised when seeking to have the constitutional claims dismissed.  But, Plaintiff has specifically asserted that Sifuentes made the decision and/or authorized and approved Plaintiff's ongoing time in solitary confinement at OCDC.  While Defendant Sifuentes also argues that he has not waived sovereign immunity against Plaintiff's tort claims, the Court has already addressed and dismissed that argument in its June 2021 proposed orders, later adopted by the district court.  Doc. 72 at 19 (discussing waiver of immunity for the tort of false imprisonment) (adopted at Doc. 78).   And, while Defendant Sifuentes challenges the tort claim against him because Plaintiff has not specifically alleged which actions against him were intentional, Defendant cites no law to

support that position, and he acknowledges that Plaintiff has alleged that the actions taken against him were intentional.  Doc. 64 at 11.  Plaintiff alleges that the intentional act of confining him without notice or an opportunity to be heard was part of a custom and policy aimed at segregating mentally ill pretrial detainees in solitary confinement.  Doc. 40 ¶¶ 73-76.  Those allegations are sufficient at this stage of the proceedings.  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) ("We assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs. . . .  Granting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice. Thus, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'") (internal citations omitted).  Based on those findings and conclusions, this Court recommends **DENYING** Defendant Sifuentes' motion to dismiss in its entirety.

## IV.    RECOMMENDATION

For the reasons set forth above, the Court makes the following recommendations:

1. The MTC Defendant's Motion to Dismiss (Doc. 52) filed March 15, 2021 should be **DENIED**.

2. Defendant Sifuentes' Motion to Dismiss (Doc. 64) filed on April 19, 2021 should be **DENIED**.

3. Southwest Correctional Medical Group, Inc. Motion for Partial Summary Judgment (Doc. 70) based on the statute of limitations filed on June 7, 2021 should be **DENIED**.

4. The MTC Defendants' Motion to Strike Document 76 (Doc. 77, filed August 17, 2021) should be **GRANTED**, and Document 76 stricken.

5.  The MTC Defendants' Motion to Strike Document 84 (Doc. 86, filed October 20, 2021) should be **DENIED**.  The court should not strike Document 84.

6.  Plaintiff's Motion to Proceed *Pro Se* (Doc. 82) should be **DENIED** as moot.

7.  Plaintiff's Motion to Depose Former Inmate (*i.e.*, "Further Testimony to (""MTC Defendants") No. 52") (Doc. 85, filed October 12, 2021) should be **GRANTED IN PART**.  The court recommends that the MTC Defendants file a Status Report within 30 days regarding Mr. Nelson's current location of incarceration, *i.e.*, his contact information, as well as regarding his willingness and ability to testify via affidavit or otherwise, to the extent Defendant has possession or control of such information.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**