IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CARLOS HASAN HICKS,**

      **Plaintiff,**

      v.                                          Civ. No. 18-850 DHU/JFR

**BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF OTERO et al.,**

      **Defendants.**

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION REGARDING DOCS. 137, 143

**THIS MATTER** is before the Court by Order of Reference[1] in accordance with 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990). Doc. 105. On April 20, 2023, Defendants Board of County Commissioners of the County of Otero ("Otero County") and Lieutenant Javier Sifuentes ("Sifuentes") filed a *Motion for Summary Judgment on All Plaintiff's Claims* ("Motion"). Doc. 137. Plaintiff responded in opposition on July 17, 2023, and Defendants replied on July 31, 2023. Docs. 148, 162. The Motion is ripe for decision.

In lieu of engaging in traditional discovery, the Court ordered Defendants to compile and submit a report pursuant to *Martinez v. Aragon*, 570 F.2d 317, 320 (10th Cir. 1987). Doc. 111. Defendants[2] submitted their *Martinez* Report on April 20, 2023. Doc. 131. Plaintiff responded

---

[1] By Order of Reference filed August 5, 2022, the presiding judge referred this matter to the undersigned to conduct hearings as warranted and to perform any legal analysis required to recommend an ultimate disposition of the case. Doc. 105.

[2] All Defendants who have entered this action participated in the compiling of the *Martinez* Report. Doc. 131. For purposes of this Motion, only the claims against Defendants Otero County and Lieutenant Sifuentes are at issue.

to the *Martinez* Report on July 17, 2023.³  Doc. 146.  The Court's Order directing Defendants to prepare the *Martinez* Report notified the parties that the Court would use it to resolve motions for summary judgment.  Doc. 111 at 2.  The Court does so here.

For the reasons that follow, the undersigned recommends that the presiding judge **GRANT** the Motion in its entirety and enter summary judgment in favor of Defendants Otero County and Sifuentes.  This proposed disposition renders Plaintiff's *Request for Summary Judgment Against Board of County Commissioners of Otero, Javier Sifuentes* (Doc. 143) ("Plaintiff's Motion") moot and thereby obviates the need for the Court to address it.  Therefore, the undersigned further recommends that the presiding judge **DENY** Plaintiff's Motion.

## I. ANALYSIS

**A.      The Pleadings**

Because a motion for summary judgment tests whether a trial on the claims presented is required, *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003), the Court begins by outlining Plaintiff's allegations against Defendants in his Second Amended Complaint ("Complaint").  The Court then turns to the parties' respective arguments with respect to the instant Motion before discussing the legal standards germane to its resolution.

    1.      *Plaintiff's Complaint*

In his Complaint, Plaintiff brings claims against Defendants Otero County and Sifuentes pursuant to 42 U.S.C. § 1983 and the New Mexico Tort Claims Act ("NMTCA"), N.M. Stat.

---

³ Plaintiff's response to the *Martinez* Report states that it "seems to be missing the Officer's Log, and Medical Staff's notes."  Doc. 146 at 1.  Plaintiff further directs the Court to certain material in the *Martinez* Report, specifically policies he claims were violated by Defendants.  *Id.* at 1-3.  To the extent Plaintiff's corresponding arguments are relevant, the Court considers them alongside its review of the *Martinez* Report in its entirety.  However, Plaintiff raises new allegations, seemingly directed at Defendant Otero County, regarding monetary charges he incurred while in custody at OCDC.  *Id.* at 2-3.  The Court does not consider them.  *See Pieri v. Corr. Med. Servs.*, No. 11-CV-1054, 2012 WL 13076254, at *1 (D.N.M. Oct. 24, 2012) (adopting a magistrate judge's conclusion that a claim raised for the first time in response to a *Martinez* Report should be denied as an untimely, prejudicial request to amend a complaint).

Ann. §§ 41-4-1 *et seq.* Doc. 40 at 1-2, 8-12. Specifically, in Count One, Plaintiff alleges that Defendants Otero County and Sifuentes violated his Fourteenth Amendment right to procedural due process by placing him "into extraordinary periods of solitary confinement" without affording him a hearing "before being placed into solitary confinement" and "to be heard regarding his conditions of confinement." *Id.* at 8-9. In Count Two, Plaintiff alleges that Defendants Otero County and Sifuentes violated his Fourteenth Amendment right[4] to substantive due process by "never referring Plaintiff to a dentist" and placing him in solitary confinement "[r]ather than adequately treat[ing] Plaintiff's known mental health conditions." *Id.* at 9. In Count Three, Plaintiff claims that that Defendant Otero County is liable as a municipality for promulgating customs and policies that resulted in Plaintiff's alleged harms. *Id.* at 11. Finally, in Count Four, Plaintiff alleges that Defendants Otero County and Sifuentes falsely imprisoned him because his "prolonged 38-month pretrial detention – much of which was spent in solitary confinement – was not justified or privileged under the New Mexico Tort Claims Act." *Id.* at 12.

    2.    *Defendants' Motion*

In their Motion, Defendants argue that Plaintiff cannot establish a procedural due process violation because the time Plaintiff spent in administrative segregation[5] at Otero County Detention Center ("OCDC")—122 days total—was nearly entirely at his request; only 31 days of that time was the result of two disciplinary actions. Doc. 137 at 8. For each disciplinary action, according to Defendants, Plaintiff was advised that his actions were in violation of facility rules which would result in a specified time-period of administrative segregation, and that he was able

---

[4]     *See infra* note 11.

[5]     Plaintiff complains of the time he spent in solitary confinement, which Defendants term as administrative segregation. The Court uses the terms interchangeably. *E.g..*, *Jordan v. Hood*, 117 F. App'x 31, 32 (10th Cir. 2004); *Hewitt v. Helms*, 459 U.S. 460, 479 (1983) (Stevens, J., dissenting) ("When respondent . . . was transferred to 'administrative segregation,' he was placed in solitary confinement."), *receded from by Sandin v. Conner*, 5155 U.S. 472, 480-482 (1995).

to appeal the disciplinary action. *Id.* at 8-9. Defendants further aver that, while Plaintiff was in administrative segregation, his "health and safety was constantly checked and documented," and that "the housing conditions in administrative segregation were substantially similar to those of the general population." *Id.* at 9. Defendants contend that "for the two separate periods of disciplinary administrative [segregation] . . . Plaintiff received regular medical care, including his prescription medication," and that "he was allowed to participate in recreational activities and community time almost daily, except when he refused to participate, which was often." *Id.*

Defendants argue that Plaintiff cannot establish a substantive due process violation because, while in administrative segregation, "he received all, or most, of the rights and privileges available to all pretrial detainees and the general population, including medical and dental care, and access to privileges, programs, and services." *Id.* at 11. According to Defendants, "Plaintiff had continuous contact with SWCMG[6] personnel throughout his detention at OCDC," to include "no fewer than 671 separate and documented interactions with SWCMG personnel." *Id.* at 12.

Defendants argue that Plaintiff has not established municipal or corporate liability against Defendant Otero County because, in his Complaint, he "makes no effort to distinguish" between the allegations related to custom or policy lodged against Otero County and Management & Training Corporation ("MTC").[7] *Id.* at 17. Defendants contend that this generality is insufficient to sustain a claim of municipal or corporate liability against Defendant Otero County. *Id.*

---

6   SWCMG provided care to inmates at OCDC and was previously a party to this litigation. Doc. 153 at 2. Plaintiff's single claim against SWCMG has been dismissed with prejudice. Doc. 174.

7   *See supra* note 2.

4

Defendants argue that Plaintiff has not established liability for false imprisonment under the NMTCA because, according to Defendants, the NMTCA "provides no waiver of immunity for false imprisonment." *Id.* at 20. They further argue that, even in the absence of immunity, Plaintiff's claim of false imprisonment fails factually and under New Mexico law. *Id.* at 20-21.

Finally, Defendant Sifuentes argues that he is shielded from liability under the doctrine of qualified immunity.[8] *Id.* at 21-22.

3.     *Plaintiff's Response*

Plaintiff responds to Defendants' Motion by stating that he "has sufficiently pleaded procedural and substantive DUE PROCESS VIOLATIONS." Doc. 148 at 2. Plaintiff directs the Court to the *Agreement for Inmate Health Care Services at Otero County, New Mexico*, made between SWCMG and Otero County (Doc. 133-1) and contained in the *Martinez* Report. Doc. 148 at 1-2. Pursuant to that agreement, he contends that the obligations of SWCMG to provide healthcare and dental services to him and Otero County's attendant obligations "were not followed."[9] *Id.* at 2. Plaintiff further states that "[D]efendant Javier Sifuentes was responsible for [Plaintiff's] well[]being" and that Defendant Sifuentes's "duty [was] to make sure [Plaintiff] was afforded all [his] rights." *Id.*

---

[8]     As illustrated in the Court's discussion below, it does not reach Defendant Sifuentes's argument for qualified immunity, because the Court determines that Plaintiff's claims against him are readily disposed of on the grounds that he fails to demonstrate the existence of material facts necessitating the need for trial on the merits. *James ex rel. James v. Unified Sch. Dist. No. 512*, 959 F. Supp. 1407 (D. Kan. 1997) ("The court does not reach the qualified immunity issue if the plaintiff's claims against [the individual defendants] are not actionable." (citing *Kaul v. Stephan*, 83 F.3d 1208, 1213 (10th Cir. 1996)).

[9]     Plaintiff also identifies "policies E-02, E-06" without further citation or elaboration, merely stating that they were "total[ly] disregard[ed]" by Defendants. Doc. 148 at 2. The Court's consideration of this argument goes no further, because in resolving a summary judgment motion, it "will not 'comb the record' to identify factual disputes, nor make a party's factual case for [him]." *Torres-Vallejo v. CreativExteriors, Inc.*, No. 15-CV-2832, 2016 WL 6893149, at *1 (D. Colo. Nov. 23, 2016) (quoting *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000)). This principle applies to pro se litigants as well. *See, e.g., Martinez v. Gonzales*, No. 13-CV-922, 2014 WL 12650975, at *3 n.2 (D.N.M. May 2, 2014).

Plaintiff does not dispute the material facts as presented by Defendants or present material facts of his own.

    4.    *Defendants' Reply*

Defendants reply generally by arguing that Plaintiff has not met his burden to demonstrate disputed material facts necessitating a trial on his claims. Doc. 162 at 1-2. Specifically, Defendants highlight that Plaintiff has failed to point to any documentation to substantiate his claims, or otherwise argue that the materials used in support of Defendants' Motion do not establish the absence of a dispute of material fact. *Id.* at 5-8. Defendants further state that, both in his Complaint and response to the instant Motion, Plaintiff does not clarify to whom he directs his Section 1983 claim premised on municipal and corporate liability. *Id.* at 8-9. Finally, Defendants argue that Plaintiff "provided no explanation or documentation to support" his position with respect to his claim for false imprisonment under the NMTCA, and that Plaintiff has done nothing to demonstrate that Defendant Sifuentes is not entitled to qualified immunity. *Id.* at 10-12.

**B.**    **Summary Judgment Standard**

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). "The movant bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial." *Whitehead v. Mgmt. & Training Corp.*, 524 F. Supp. 3d 1155, 1166 (D.N.M. 2021) (internal quotation marks and citations omitted). "A dispute is genuine if there's enough

evidence on each side that a rational trier of fact could resolve the issue either way." *Rose ex rel. Rose v. Brown*, 14 F.4th 1129, 1138 (10th Cir. 2021). In the resolution of a summary judgment motion, the Court construes the evidence before it "in the light most favorable to the non-moving party." *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016) (internal quotation marks and citation omitted). But the Court will not weigh evidence or decide issues of credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). "For purposes of summary judgment, a prisoner's pleadings are treated as evidence if they allege specific facts based on the prisoner's personal knowledge and have been subscribed under penalty of perjury." *Whitehead*, 524 F. Supp. 3d at 1167 (D.N.M. 2021) (citations omitted).

    1.    *Legal Standard for Pro Se Litigants and Facts Presented without Opposition*

The Court recognizes that Plaintiff is proceeding pro se and liberally construes his pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). At the same time, his pro se status does not excuse him from compliance with procedural rules or shield him from the consequences of noncompliance. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (noting that the Tenth Circuit has "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants"). According to the District of New Mexico's Local Rules, all material facts set forth in a motion for summary judgment that are not met with a contrary response are deemed admitted. D.N.M.LR-Civ. 56.1(b); *see also* Fed. R. Civ. P. 56(e)(2); *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (stating that "it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record" (omission omitted)). Plaintiff does not cite to the record or dispute any material facts, save for directing the Court to certain policies that he claims, without elaboration, were not followed. So, the Court deems the

relevant facts set forth in Defendants' Motion undisputed and uses them as its own. *See*, *e.g.*, *Payne v. Tri-State Careflight, LLC*, No. 14-CV-1044, 2016 WL 6396214, at *1 n.1 (D.N.M. Oct. 25, 2016) ("[T]he [d]efendants' facts are deemed undisputed, . . . and the Court will use them for its undisputed facts."); *Martinez*, 2014 WL 12650975, at *4 ("In their [r]esponse, [the p]laintiffs do not cite to the record. They fail to dispute any material facts and therefore, [the d]efendants facts are deemed undisputed.").

   2.   *Undisputed Material Facts*

Plaintiff was a pretrial detainee, who was remanded to custody by the Twelfth Judicial District Court of New Mexico pending trial based, at least in part, on a finding that he was a flight risk, having previously absconded from the state while released on bond. Doc. 134-9 at 2-24. Plaintiff spent a total of 122 days in administrative segregation at OCDC. Doc. 134-1 at 4-5. Two of those occasions, from October 24, 2017, to November 7, 2017, and March 21, 2019, to April 5, 2019, totaling 31 days, were disciplinary actions for Plaintiff's failure to obey directions and orders of OCDC staff. Doc. 134-1 at 4. The remaining time Plaintiff spent in administrative segregation was per his requests. *Id.* For each disciplinary action, Plaintiff was warned that his conduct was actionable, and advised of the proposed disciplinary action and his right to appeal the action. Doc. 134-10 at 46-50, 56-60. He chose not to appeal. *See, e.g.*, *id.* at 59 (indicating that Plaintiff "[r]efused appeal form").

While Plaintiff was in administrative segregation at OCDC, his housing conditions were substantially similar to the housing conditions of general population inmates, he received regular medical care, including his prescription medications, his health and safety was continually monitored and documented, and he was permitted to participate in recreational and community

8

time almost daily, though he often declined participation. Docs. 134-1 at 5; 134-3 at 3-12; 134-10 at 119-121; 134-11 at 2-459.

**C.     Defendants Are Entitled to Summary Judgment on Each of Plaintiff's Claims Against Them**

*1.     Count One – Procedural Due Process*

To sustain a procedural due process claim under the Fourteenth Amendment, Plaintiff must show that Defendants interfered with a constitutionally cognizable liberty or property interest. *Bd. of Regents State Colls. v. Roth*, 408 U.S. 564, 569 (1972); *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). "Classification of a plaintiff into segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause." *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006) (alterations, omission, internal quotation marks, and citation omitted). Indeed, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468. "The constitutionality under a due process analysis of the nature or duration of pretrial detention turns on whether such detention amounts to punishment in the constitutional sense." *Romero v. Bd. of Cnty. Comm'rs*, 202 F. Supp. 3d 1223, 1255 (D.N.M. 2016) (internal quotation marks and citation omitted). "Holding a prisoner in certain conditions may violate the Due Process Clause if the prisoner is subjected to an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" [10] *Id.* at 1256 (quoting *Sandin*, 515 U.S. at 484); *see*

---

[10]     In determining whether segregation is atypical, the Tenth Circuit considers several non-dispositive factors: (1) the duration of segregation and whether it increases the inmate's overall confinement duration; (2) whether the placement in segregation is indeterminate; (3) the frequency with which the segregation placement is reviewed; (4) the penological interest furthered by segregation, "such as safety or rehabilitation;" and (5) whether the "conditions of placement are extreme." *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007). Plaintiff's procedural due process claim focuses almost entirely on the duration of his time in administrative segregation, save for his statement that he "SUFFERED GREATLY" in his response brief. Doc. 148 at 2. Thus, because the other factors do not appear to be at issue, and because none is dispositive, the Court limits its analysis to those factors bearing on the duration and conditions of Plaintiff's time in administrative segregation.

9

*also Brown v. Moore*, No. 13-CV-888, 2013 WL 309317, at *2 (D. Colo. June 18, 2013) (applying *Sandin* to a pretrial detainee's Fourteenth Amendment due process claim premised on his time in segregation). While inmates are entitled to "some sort of periodic review" of administrative segregation, the Constitution does not require this review to include "submission of any additional evidence or statements," and a highly structured hearing is not required. *Hewitt*, 459 U.S. at 477 n.9.

Here, Plaintiff claims that Defendants interfered with his liberty by placing him in administrative segregation without constitutionally adequate process, i.e., an opportunity to be heard prior to such placement. Doc. 40 at 8-9. Because it is undisputed that Plaintiff was placed into administrative segregation on only two occasions as a disciplinary measure and requested placement into administrative segregation at all other relevant times, the Court's analysis focuses only on whether there is a genuine issue of material fact concerning the former incidents of administrative segregation, specifically, whether Defendants unconstitutionally deprived Plaintiff of a liberty interest on those two occasions. *See Raines v. Wise*, No. 10-CV-1926, 2013 WL 4521357, at *7 (N.D. Ala. Aug. 26, 2013) (concluding that an inmate cannot assert a procedural due process claim for voluntary placement into administrative segregation); *Peak v. Schwebler*, No. 11-CV-41, 2013 WL 316995, at *3 (N.D.N.Y. Jan. 28, 2013) (concluding that an inmate placed in protective custody voluntarily is not "deprived of a liberty interest sufficient to support a Fourteenth Amendment due process claim").

For each of the two times Plaintiff was placed in administrative segregation, he was warned that his conduct was actionable, and advised of the proposed disciplinary action and his right to appeal the action. Doc. 134-10 at 46-50, 56-60. He chose not to appeal. *See, e.g., id.* at 59 (indicating that Plaintiff "[r]efused appeal form"). The total duration of the two instances at

issue was 31 days.  Doc. 134-1 at 4.  Moreover, while in administrative segregation, his housing conditions were substantially similar to the housing conditions of general population inmates, he received regular medical care, including his prescription medications, his health and safety was continually monitored and documented, and he was permitted to participate in recreational and community time almost daily, though he often declined participation.  Docs. 134-1 at 5; 134-3 at 3-12; 134-10 at 119-121; 134-11 at 2-459.  Plaintiff does not dispute these facts or otherwise offer facts to the contrary, aside from claiming he "SUFFERED GREATLY," which is insufficient to defeat a convincing presentation for summary judgment by Defendants; bare allegations are insufficient to defeat summary judgment.  *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994).

Based on these undisputed facts, the applicable precedent and persuasive caselaw do not cut in Plaintiff's favor.  *See, e.g.*, *Sandin*, 515 U.S. at 486 (concluding that the inmate's confinement in punitive segregation, which, with insignificant exceptions, mirrored the conditions in administrative segregation, did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction).  *Compare Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (concluding that an inmate's allegations that he was confined to his cell for three years except for five hours weekly and denied access to the telephone, showers, outdoor recreation, the law library and programs offered to the general inmate population may violate procedural due process), *with Gaines v. Stenseng*, 292 F.3d 1222, 1226 (10th Cir. 2002) (noting that disciplinary segregation for a period of less than 75 days "could fail as a matter of law to satisfy the 'atypical and significant' requirement in a case in the future, thereby making it futile to allow the pro se plaintiff to amend his complaint") *and Brown*, 2013 WL 3093917, at *3

("[P]unitive segregation of thirty-six days does not constitute a significant duration necessary to demonstrate an 'atypical and significant hardship.' The due process claim is without merit.").

Based on the foregoing, the undersigned recommends granting Defendants' Motion with respect to Count One.

2. *Count Two – Substantive Due Process*[11]

"Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted). "The Eighth Amendment requires jail officials 'to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety.'" *Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). "To make a substantive due-process claim for 'conditions of confinement, a plaintiff must satisfy two requirements.'" *Romero*, 202 F. Supp. 3d at 1261 (quoting *Craig*, 164 F.3d at 495). "First, the alleged deprivation must be 'sufficiently serious,' which turns on the 'severity of the alleged deprivations' and 'their duration.'" *Id.* (quoting

---

[11] The Court notes that Plaintiff's Complaint is brought pursuant to 42 U.S.C. § 1983, which "affords a remedy for violations of federal law and does not provide a basis for redressing violations of state law." *D.L. v. Unified Sch. Dist. No. 947*, 596 F.3d 768, 776 (10th Cir. 2010) (internal quotation marks and citation omitted). In Count Two, Plaintiff alleges that Defendants not only violated his federal constitutional right to substantive due process, but additionally violated "a similar substantive due process right under Article II Section 4 of the New Mexico Constitution." Doc. 40 at 9. "'Unlike federal law, New Mexico has no statute analogous to § 1983 that would provide for damages against government entities or their officials for past violations of state statutes of the state Constitution.'" *Price v. Whitten*, No. 20-CV-1099, 2021 WL 3663851, at *10 (D.N.M. Aug. 18, 2021) (quoting *Cater v. City of Las Cruces*, 915 P.2d 336, 340 (NM. Ct. App. 1996); *see also Reynolds v. Bd. of Cnty. Comm'rs*, No. 00-168, 2000 WL 36739562, at *2 (D.N.M. Sept. 15, 2000). ("[The plaintiff's] attempt to bring a state constitutional claim against a public entity or public employee cannot be done outside the structure of the [NMTCA]."). Accordingly, to the extent Count Two is premised on Article II, Section 4 of the New Mexico Constitution, the Court recommends it be disposed of and summary judgment entered in Defendants' favor. As discussed more fully below, Plaintiff does seek recourse for alleged violations of a different right for which immunity is waived under the NMTCA, but he cannot premise his substantive due process claim on the New Mexico Constitution. And while the Court recognizes that the recent enactment of the New Mexico Civil Rights Act ("NMCRA"), N.M. Stat. Ann. § 41-4A-1 *et seq.*, may render the above principles null in the future, Plaintiff does not invoke the NMCRA, and even if he did, it would not apply to his claim. *See* N.M. Stat. Ann. § 41-4A-12 (2021) ("Claims arising solely from acts or omissions that occurred prior to July 1, 2021 may not be brought pursuant to the [NMCRA].").

*Craig*, 164 F.3d at 495). Second, a plaintiff "must show that the jail officials had a 'sufficiently culpable state of mind.'" *Id.* (quoting *Craig*, 164 F.3d at 495). "In the context of prison-conditions claims, the required state of mind is one of deliberate indifference to inmate health and safety." *Craig*, 164 F.3d at 495 (internal quotation marks and citation omitted). This means that liability attaches only when a jail official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal quotation marks and citation omitted).

Plaintiff alleges that his right to substantive due process was violated by Defendants because they failed to "adequately treat [his] known mental health conditions," choosing instead "to place [him] in solitary confinement to punish and abuse him." Doc. 40 at 9. Plaintiff further alleges that he "was unable to engage in adequate recreational time, including outside time and exercise," "was unable to maintain his personal hygiene, including showering and dental care, and was unable to maintain his general and dental health." *Id.* at 10. Plaintiff claims that he "repeatedly complained to Defendants of the unreasonable conditions to which he was being subjected, including repeatedly requesting medical and mental health care, access to showers, and access to outdoor recreation." *Id.*

The Court first notes that, in his response to the *Martinez* Report, Plaintiff does not dispute any of the medical information provided by Defendant Otero County. Doc. 146 at 1-2 (discussing Hidalgo County Detention Center, for which Otero County is not responsible, *see* Doc. 40 at 2 (alleging that "Otero County is liable for any constitutional deprivations caused by OCDC and its employees"), and SWCMG, who has since been dismissed as a party, Doc. 174). Moreover, as previously stated, Plaintiff's response to the instant Motion states only that

13

"[D]efendant Javier Sifuentes was responsible for [Plaintiff's] well[]being." Doc. 148 at 2. Plaintiff contests nothing presented by Defendants concerning his other conditions of confinement. So, as it did with respect to Plaintiff's procedural due process claim, the Court rests on the undisputed material facts as presented by Defendants and reiterates them here.

While in administrative segregation, Plaintiff's housing conditions were substantially similar to the housing conditions of general population inmates, he received regular medical care, including his prescription medications, his health and safety was continually monitored and documented, and he was permitted to participate in recreational and community time almost daily, though he often declined participation. Docs. 134-1 at 5; 134-3 at 3-12; 134-10 at 119-121; 134-11 at 2-459. Given these undisputed facts, Plaintiff's claim for violations of substantive due process fails at the first prong. Nothing about the undisputed material facts above indicates that Plaintiff's conditions of confinement were sufficiently serious such that his right to substantive due process was violated by Defendants. *See Craig*, 164 F.3d at 495 ("[T]he Constitution does not mandate comfortable prisons. To the contrary, jail conditions may be restrictive and even harsh without violating constitutional rights." (internal quotation marks and citations omitted)); *id.* ("Indeed, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." (omission, internal quotation marks, and citation omitted)).

The next step of this inquiry bears on the duration of Plaintiff's stay in administrative segregation: 122 days total, of which 91 were voluntary. Doc. 134-1 at 4-5. Again, it is undisputed that Plaintiff's conditions of confinement were substantially similar to the housing conditions of general population inmates. *Id.* at 5. Even still, Plaintiff cannot use restrictive conditions he placed upon himself, i.e., voluntarily entering administrative segregation and

refusing recreational and community time, to establish his claim. *See Parker v. Walker*, No. 08-CV-152, 2008 WL 4837683, at *1, *4 (S.D. Ill Nov. 6, 2008) (rejecting an inmate's Eighth Amendment claim because, *inter alia*, he voluntarily accepted the restrictions that accompanied disciplinary segregation).

For theses reasons, the undersigned recommends granting Defendants' Motion with respect to Count Two.

      3.      *Count Three – Municipal and Corporate Liability*

"A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Rather, it may only be held liable "for its own unconstitutional or illegal policies." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). To establish municipal liability, the plaintiff is required to demonstrate (1) a municipal custom or policy exists, and (2) a direct causal link between the custom or policy and the plaintiff's alleged injury. *Id.*; *see also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1319 (10th Cir. 2002) ("It is absolutely necessary to show that the execution of the governments' policy or custom inflicted the injury in order to hold a municipality liable under § 1983." (alterations, omission, internal quotation marks, and citation omitted)). In addition to these elements, the plaintiff must show that the custom or policy complained of "was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013); *see also George ex rel. Bradshaw v. Beaver Cnty.*, 32 F.4th 1246, 1254 (10th Cir. 2022).

Plaintiff alleges that Defendant Otero County "created policies of housing the mentally ill in segregation or solitary confinement" and "created policies of housing pre-trial detainees in

15

segregation or solitary confinement." Doc. 40 at 11. Plaintiff further alleges that "[t]hese policies are to punish these detainees, rather than provide them adequate medical care or allow them to interact with the general population" and that "[t]hese policies were created with deliberate disregard for the rights of pre-trial detainees such as Plaintiff." *Id.* Finally, Plaintiff alleges that Defendant Otero County "knew or should have known that placing detainees, such as Plaintiff, in extended lengths of solitary confinement would be detrimental to the detainees' mental and physical health." *Id.* He asserts that these policies "were a moving force behind the violations of [his] constitutional rights." *Id.*

In cases where municipal and corporate liability is pled, the plaintiff may allege an action taken as a result of policy by showing that the constitutional injury resulted from the action or decision of an individual with final policy making authority with respect to the action ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 (1986). The plaintiff may also show a policy by demonstrating a widespread practice that, although not expressly authorized, is "so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Here, it is unclear what Plaintiff is asserting. While his Complaint alleges that Defendant Otero County promulgated policies that resulted in his harm, his response to the instant Motion alleges that he suffered as a result of policies not being followed by Otero County. *Compare* Doc. 40 at 11, *with* Doc. 148 at 2. Plaintiff's latter argument would not give rise to a municipal liability claim because a successful claim built on a theory of municipal liability requires him to show that a policy itself caused him harm, so the Court will focus only on the former argument. It is insufficient to sustain his claim.

Plaintiff does not allege that his harm stemmed from the decision of an individual with final policy making authority. With respect to demonstrating a widespread practice, Plaintiff's

16

allegations are exceedingly broad. Even if the Court could construe them to suggest a well-settled custom or practice, as they relate to the instant Motion, Plaintiff's attempts to support his contentions in his response to the Motion speak only to his personal experiences while in custody at OCDC and lack any evidentiary support. Therefore, Plaintiff's assertions are insufficient to support a broad allegation that Defendant Otero County did indeed act pursuant to the policies Plaintiff alleges in his Complaint. In the absence of specific policies, Plaintiff cannot establish the remaining elements of municipal liability against Defendant Otero County: that there is a causal connection between the policies and Plaintiff's alleged harms and that the policies were carried out with deliberate indifference such that a constitutional injury was nearly inevitable. *See George*, 32 F.4th at 1255; *Harper v. Woodward Cnty.*, No. 11-CV-996, 2014 WL 7399367, at *14 (W.D. Okla. Dec. 29, 2014).

For these reasons, the Court recommends granting Defendants' Motion with respect to Count Three.

    *4.    Count Four – False Imprisonment Under the NMTCA*

"Under New Mexico law, false imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." *Gose v. Bd. of Cnty. Comm'rs*, 727 F. Supp. 2d 1256, 1260 (D.N.M. 2010) (internal quotation marks and citation omitted). "A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived." N.M. Stat. Ann § 41-4-4(A) (2001). The immunity granted, however, does not apply to false imprisonment when caused by a law enforcement officer. N.M. Stat. Ann § 41-4-12 (2020).[12] The doctrine of respondeat superior applies to claims brought under the

---

[12] A previous version of this statute was in effect at the time of Plaintiff's alleged harms. The present version was amended in 2020 to, *inter alia*, define "law enforcement officer." *Compare* § 41-4-12 (2020), *with id.* (1977).

NMTCA, so "a governmental entity may be held vicariously liable 'for any torts of its employees acting within the scope of duties for which immunity is waived.'" *Bradshaw*, 2023 WL 5934397, at *13 (quoting *Silva v. New Mexico*, 745 P.2d 380, 385 (N.M. 1987)). To prove a claim of false imprisonment, Plaintiff is required to show that (1) Defendants intentionally confined him or restrained him without his consent and (2) Defendants knew that they had no lawful authority to do so. *Scull v. New Mexico*, 236 F.3d 588, 599 (10th Cir. 2000) (citing *Diaz v. Lockheed Elecs.*, 618 P.2d 372, 376 (N.M. Ct. App. 1980)).

Plaintiff alleges that he "was placed in solitary confinement in violation of his state and federal constitutional rights," and that his "prolonged 38-month pretrial detention – much of which was spent in solitary confinement – was not justified or privileged under the [NMTCA] and therefore constituted false imprisonment." Doc. 40 at 12. He alleges that Defendant Otero County is liable for Defendant Sifuentes's acts under the doctrine of respondeat superior. *Id.* Plaintiff's claim fails to satisfy both prongs of the false imprisonment test. As to the first prong, it is true that Plaintiff was intentionally confined by Defendants as a result of the state district court's order. Insofar as Plaintiff's claim is premised on the time he spent in administrative segregation only, it is undisputed that the bulk of the time Plaintiff spent in administrative segregation was a result of his consent—he requested assignment to administrative segregation. As to the second prong, Plaintiff does not dispute that he was lawfully in the custody of OCDC, having been ordered detained there pending trial by the state district court.

---

That definition is not at issue here, and both versions of the statute provide that there is no immunity for law enforcement officers who commit false imprisonment. In any event, the Court notes that, to the extent it is relevant, the prior version of the statute controls, because it was the one in effect on the day Plaintiff filed suit against Defendants. *See Bradshaw v. Mgmt. and Training Corp.*, No. 22-CV-139, 2023 WL 5934397, at *13 (D.N.M. Sept. 12, 2023) (concluding that the version of Section 41-4-12 that applies "is the version in effect when [the p]laintiff filed his lawsuit").

For these reasons, the undersigned recommends granting Defendants' Motion with respect to Count Four.

## II. CONCLUSION

The undersigned recommends that the presiding judge **GRANT** Defendants' Motion (Doc. 137) in its entirety and enter summary judgment in their favor.

This proposed disposition renders Plaintiff's Motion (Doc. 143) moot, and thereby obviates the need for the Court to address it. Therefore, the undersigned further recommends that the presiding judge **DENY** Plaintiff's Motion.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
**JOHN F. ROBBENHAAR**
United States Magistrate Judge