IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CARLOS HASAN HICKS,**

  **Plaintiff,**

  v.                 Civ. No. 18-850 DHU/JFR

**BOARD OF COUNTY COMMISSIONERS**
**OF THE COUNTY OF OTERO et al.,**

  **Defendants.**

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION REGARDING DOCS. 135, 147

**THIS MATTER** is before the Court by Order of Reference[1] in accordance with 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990). Doc. 105. On April 20, 2023, Defendants Management and Training Corporation, Captain R. Ochoa, Lt. M. Soto, Sgt. V. Moya, and Sgt. M. Camacho (collectively, "MTC Defendants") filed a *Motion for Summary Judgment* ("Motion"). Doc 135. Plaintiff responded in opposition on July 17, 2023, and Defendants replied on August 21, 2023. Docs. 142, 165. The Motion is ripe for decision.

In lieu of engaging in traditional discovery, the Court ordered Defendants to compile and submit a report pursuant to *Martinez v. Aragon*, 570 F.2d 317, 320 (10th Cir. 1987). Doc. 111. Defendants[2] submitted their *Martinez* Report on April 20, 2023. Doc. 131. Plaintiff responded

---

[1] By Order of Reference filed August 5, 2022, the presiding judge referred this matter to the undersigned to conduct hearings as warranted and to perform any legal analysis required to recommend an ultimate disposition of the case. Doc. 105.

[2] All Defendants who have entered this action participated in the compiling of the *Martinez* Report. Doc. 131. While herein the Court uses "MTC Defendants" and "Defendants" interchangeably, for purposes of the instant Motion, only the claims against MTC Defendants are at issue.

to the *Martinez* Report on July 17, 2023.[3]  Doc. 146.  The Court's order directing Defendants to prepare the *Martinez* Report notified the parties that the Court would use it to resolve motions for summary judgment.  Doc. 111 at 2.  The Court does so here.

For the reasons that follow, the undersigned recommends that the presiding judge **GRANT** the Motion in its entirety and enter summary judgment in favor of MTC Defendants.  This proposed disposition renders Plaintiff's *Request for Summary Judgment Against Defendants M. Camacho, Management and Training Corporation, V. Moya, R. Ochoa, and M. Soto* (Doc. 147) ("Plaintiff's Motion") moot and thereby obviates the need for the Court to address it.  Therefore, the undersigned further recommends that the presiding judge **DENY** Plaintiff's Motion.

## I. ANALYSIS

**A.    The Pleadings**

Because a motion for summary judgment tests whether a trial on the claims presented is required, *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003), the Court begins by outlining Plaintiff's allegations against Defendants in his Second Amended Complaint ("Complaint").  The Court then turns to the parties' respective arguments with respect to the instant Motion before discussing the legal standards germane to its resolution.

*1.    Plaintiff's Complaint*

In his Complaint, Plaintiff brings claims against MTC Defendants pursuant to 42 U.S.C. § 1983 and the New Mexico Tort Claims Act ("NMTCA"), N.M. Stat. Ann. §§ 41-4-1 *et seq.*  Doc. 40 at 1-2, 8-12.  In Count One, Plaintiff alleges that MTC Defendants violated his

---

[3]    In his response to the *Martinez* Report, Plaintiff states that "this Report seems to be missing the Officer's Log, and Medical Staff's notes."  Doc. 146 at 1.  It is unclear exactly to what Plaintiff is referring.  However, a review of this pleading in its entirety reveals that it does not contain anything responsive to the material contributed by MTC Defendants to the *Martinez* Report.

Fourteenth Amendment right to procedural due process by placing him "into extraordinary periods of solitary confinement"[4] without affording him a hearing "before being placed into solitary conferment" and "to be heard regarding his conditions of confinement." *Id.* at 8-9. In Count Two, Plaintiff alleges that MTC Defendants violated his Fourteenth Amendment right[5] to substantive due process by placing him in solitary confinement "[r]ather than adequately treat[ing] Plaintiff's known mental health conditions." *Id.* at 9. In Count Three, Plaintiff alleges that Defendant MTC is liable under a theory of municipal and corporate liability for promulgating customs and policies that resulted in Plaintiff's alleged harms. *Id.* at 11. And in Count Four, Plaintiff alleges that MTC Defendants falsely imprisoned him because his "prolonged 38-month pretrial detention – much of which was spent in solitary confinement – was not justified or privileged under the New Mexico Tort Claims Act." *Id.* at 12.

  2. *Defendants' Motion*

In their Motion, Defendants argue that, as to Count One, Plaintiff cannot establish his claim because the undisputed material facts demonstrate that he was afforded procedural due process through the opportunity to challenge his conditions of confinement, which he chose not to do. Doc. 135 at 14. As to Count Two, Defendants argue that Plaintiff's claim fails because his substantive due process rights were not violated as he received the same rights and privileges available to pre-trial detainees and general population inmates, including medical and dental care. *Id.* As to Count Three, Defendants argue that municipal and corporate liability cannot attach to MTC because Plaintiff's claim is legally deficient as it does not distinguish between the

---

[4]   Plaintiff complains of the time he spent in solitary confinement, which Defendants term as administrative segregation. The Court uses the terms somewhat interchangeably for purposes of resolving Defendants' Motion. *E.g.*, *Jordan v. Hood*, 117 F. App'x 31, 32 (10th Cir. 2004); *Hewitt v. Helms*, 459 U.S. 460, 479 (1983) (Stevens, J., dissenting) ("When respondent . . . was transferred to 'administrative segregation,' he was placed in solitary confinement."), *receded from by Sandin v. Conner*, 515 U.S. 472, 480-82 (1995).

[5]   *See infra* note 9.

harms alleged to have been perpetrated by MTC and those attributable to the Otero County Detention Center ("OCDC"). *Id*. at 18-19.  As to Count Four, Defendants argue that they are immune from liability because liability for false imprisonment is not waived under the NMTCA. *Id.* at 21.  Regardless, according to Defendants, Plaintiff's claim still fails because he was lawfully detained by them. *Id.* at 22.  Finally, Defendants renew a statute-of-limitations argument that was previously rejected.[6]  *Id.* at 23.

    3.    *Plaintiff's Response*

Plaintiff responds to Defendants' Motion by stating that he "has sufficiently pleaded procedural and substantive DUE PROCESS VIOLATIONS." Doc. 142 at 3.  Plaintiff directs the Court to *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Doc. 142 at 3.  Plaintiff also directs the Court to portions of the *Martinez* Report that are inapplicable to MTC Defendants.[7]  *Id.* at 1-2.  The remainder of Plaintiff's response restates allegations in his Complaint. *Id.* at 2.

    4.    *Defendants' Reply*

Defendants reply by noting that Plaintiff has failed to dispute any of the material facts set forth in their Motion.  Doc. 165 at 1-3.  Defendants continue by arguing that Plaintiff has failed

---

[6] The Court previously denied MTC Defendants' Motion to Dismiss premised, in part, on statute-of-limitations grounds.  Docs. 52, 100.  The Court declines Defendants' invitation to revisit that issue here. *See Tanner v. Garner*, 978 F.2d 1268 (10th Cir. 1992) (unpublished table decision) (declining to consider a statute of limitations issue where summary judgment was properly granted on other grounds); *see also McCarty v. Gilchrist*, 646 F.3d 1281, 1289 n.4 (10th Cir. 2011).

[7] Specifically, Plaintiff cites the agreement between Southwest Correctional Medical Group ("SWCMG") and Otero County, New Mexico for inmate medical care (Doc. 133-1) and SWCMG's policy concerning medical and dental care (Doc. 133-2).  Doc. 142 at 2.  Plaintiff also identifies "policies and procedures . . . E-02, E06," without further elaboration, and with citation to Doc. 133-2, which, again, does not appear to apply to MTC Defendants.  Doc. 142 at 2.  In any event, the Court "will not 'comb the record' to identify factual disputes, nor make a party's factual case" when resolving a summary judgment motion." *Torres-Vallejo v. CreativExteriors, Inc.*, No. 15-CV-2832, 2016 WL 6893149, at *1 (D. Colo. Nov. 23, 2016) (quoting *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000)).  This principle applies to pro se litigants as well. *See, e.g., Martinez v. Gonzales*, No. 13-CV-922, 2014 WL 12650975, at *3 n.2 (D.N.M. May 2, 2014).

to carry his burden to show a disputed issue of material fact such that summary judgment is not proper. *Id.* at 4. Finally, Defendants reiterate the arguments set forth in their Motion.

**B.** **Summary Judgment Standard**

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). "The movant bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial." *Whitehead v. Mgmt. & Training Corp.*, 524 F. Supp. 3d 1155, 1166 (D.N.M. 2021) (internal quotation marks and citations omitted). "A dispute is genuine if there's enough evidence on each side that a rational trier of fact could resolve the issue either way." *Rose ex rel. Rose v. Brown*, 14 F.4th 1129, 1138 (10th Cir. 2021). In the resolution of a summary judgment motion, the Court construes the evidence before it "in the light most favorable to the non-moving party." *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016) (internal quotation marks and citation omitted). But the Court will not weigh evidence or decide issues of credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). "For purposes of summary judgment, a prisoner's pleadings are treated as evidence if they allege specific facts based on the prisoner's personal knowledge and have been subscribed under penalty of perjury." *Whitehead*, 524 F. Supp. 3d at 1167 (D.N.M. 2021) (citations omitted).

    1.    *Legal Standard for Pro Se Litigants and Facts Presented without Opposition*

The Court recognizes that Plaintiff is proceeding pro se and liberally construes his pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). At the same time, his pro se

status does not excuse him from compliance with procedural rules or shield him from the consequences of noncompliance. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (noting that the Tenth Circuit has "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants"). According to the District of New Mexico's Local Rules, all material facts set forth in a motion for summary judgment that are not met with a contrary response are deemed admitted. D.N.M.LR-Civ. 56.1(b); *see also* Fed. R. Civ. P. 56(e)(2); *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (stating that "it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record" (omission omitted)). Plaintiff does not cite to the record or dispute any material facts, save for directing the Court to certain policies that he claims, without elaboration, were not followed. So, the Court deems the relevant facts set forth in Defendants' Motion undisputed and uses them as its own. *See*, *e.g.*, *Payne v. Tri-State Careflight, LLC*, No. 14-CV-1044, 2016 WL 6396214, at *1 n.1 (D.N.M. Oct. 25, 2016) ("[T]he [d]efendants' facts are deemed undisputed, . . . and the Court will use them for its undisputed facts."); *Martinez*, 2014 WL 12650975, at *4 ("In their [r]esponse, [the p]laintiffs do not cite to the record. They fail to dispute any material facts and therefore, [the d]efendants facts are deemed undisputed.").

      2.    *Undisputed Material Facts*

OCDC pretrial detainees can be remanded to the Otero County Prison Facility ("OCPF") pursuant to an agreement between MTC and Otero County, New Mexico. Docs. 132-1 at 4; 132-7. The agreement defines "[o]ffender[s]" as "all detainees or inmates housed at [OCPF], other than County Offenders." Doc. 132-7 at 5. It defines a "County Offender," in relevant part, as "a post-conviction [o]ffender." *Id.* at 4. Plaintiff was a pretrial detainee, or "'holdover [o]ffender'"

remanded to the custody of the OCPF from OCDC on two separate occasions between 2016-2018.  Doc. 132-1 at 3-4.  OCDC holdover offenders remanded to OCPF are placed in administrative segregation in a restrictive housing unit pursuant to the agreement, though the Warden has discretion to house holdover offenders in general population units provided only holdover offenders are housed in those units.  *Id.* at 6.  Administrative segregation is a non-punitive form of separation from the general population for purposes of security.  *Id.* at 8.

Plaintiff was first remanded to the custody of OCPF from OCDC on February 10, 2016, and remained there for 408 days, until March 23, 2017.  *Id.* at 3.  During this time, Plaintiff was held in FD and FC, which were 19-person dorms, or Special Housing Units MSHU 1 and MSHU 2.  *Id.*; Doc. 132-3.  MSHU 1 was used as a general population unit, rather than an administratively segregated unit, with around 82 holdover offenders, from December 21, 2016, to March 23, 2017.  Doc. 132-1 at 3.  Plaintiff was housed in MSHU 1 during that time.  *Id.* at 4.  Plaintiff was housed with the general population for 321 days, and administrative segregation for 87 days.  *Id.* at 3-4.  As a holdover offender, Plaintiff was placed in administrative segregation for his protection and for the security and orderly maintenance of OCPF.  *Id.* at 8.  When Plaintiff was in MSHU 1 or MSHU 2, whether operated as a general population unit or administrative segregation unit, Plaintiff occasionally had a cellmate.  *Id.* at 3.  Plaintiff was again remanded to OCPF from OCDC on November 29, 2017, and remained there for 275 days, until August 30, 2018.  *Id.* at 4.  During this time, Plaintiff was housed in MSHU 2.  *Id.*  He had a cellmate from November 29, 2017, to April 9, 2018.  *Id.*  While housed at OCPF, Plaintiff was afforded all the rights and privileges of general population inmates, including regular meals, access to the library, visits, and telephone calls.  *Id.* at 9.  FD, FC, MSHU 1, and MSHU 2 were equipped with shower, recreation, and game facilities.  *Id.*; *see* Docs. 132-15; 132-16.  Plaintiff

had access to and received medical care, including mental health and dental checkups, while he was housed at OCPF.  Doc. 132-1 at 6, 9.

Plaintiff's housing in administrative segregation was reviewed in accordance with MTC's policy and procedures.  *Id.* at 9; Doc. 132-6; *see* Doc. 132-5.  On at least one occasion, Plaintiff requested placement in administrative segregation.  Docs. 132-1 at 9; 132-6 at 3.  Plaintiff never objected to placement in administrative segregation.  Doc. 132-1 at 9-10.  Defendant MTC developed and maintained grievance procedures at OCPF for holdover offenders.  *Id.* at 5; Doc. 132-4.  Plaintiff never filed a grievance regarding placement in administrative segregation.  Doc. 132-1 at 5, 10.  Plaintiff never had any disciplinary action at OCPF.  *Id.* at 10.

**C.     Defendants Are Entitled to Summary Judgment on Each of Plaintiff's Claims Against Them**

*1.     Count One – Procedural Due Process*

To sustain a procedural due process claim under the Fourteenth Amendment, Plaintiff must show that Defendants interfered with a constitutionally cognizable liberty or property interest.  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972); *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).  "Classification of a plaintiff into segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause."  *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006) (alterations, omission, internal quotation marks, and citation omitted).  Indeed, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."  *Hewitt*, 459 U.S. at 468.  "The constitutionality under a due process analysis of the nature or duration of pretrial detention turns on whether such detention amounts to punishment in the constitutional sense."  *Romero v. Bd. of Cnty. Comm'rs*, 202 F. Supp. 3d 1223, 1255 (D.N.M. 2016) (internal quotation marks and citation omitted).  "Holding a prisoner in certain conditions may violate the Due

8

Process Clause if the prisoner is subjected to 'an atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Id.* at 1256 (quoting *Sandin*, 515 U.S. at 484); *see also Brown v. Moore*, No. 13-CV-888, 2013 WL 309317, at *2 (D. Colo. June 18, 2013) (applying *Sandin* to a pretrial detainee's Fourteenth Amendment due process claim premised on his time in segregation). While inmates are entitled to "some sort of periodic review" of administrative segregation, the Constitution does not require the review to include "submission of any additional evidence or statements," and a highly structured hearing is not required. *Hewitt*, 459 U.S. at 477 n.9.

Plaintiff alleges that Defendants interfered with his liberty by placing him "into extraordinary period of solitary confinement." Doc. 40 at 8. Specifically, Plaintiff claims he was denied due process because he "was not afforded a hearing before being placed into solitary confinement" and "was not afforded an opportunity to be heard regarding his conditions of confinement." *Id.* at 9. To the extent Plaintiff's claim is based on time spent in administrative segregation at his request, *see* Docs. 132-1 at 9; 132-6 at 3, the Court does not consider it. *See Raines v. Wise*, No. 10-CV-1926, 2013 WL 4521357, at *7 (N.D. Ala. Aug. 26, 2013) (concluding that an inmate cannot assert a procedural due process claim for voluntary placement into administrative segregation); *Peak v. Schwebler*, No. 11-CV-41, 2013 WL 316995, at *3 (N.D.N.Y. Jan. 28, 2013) (concluding that an inmate placed in protective custody voluntarily is not "deprived of a liberty interest sufficient to support a Fourteenth Amendment due process claim").

In determining whether segregation is atypical, the Tenth Circuit considers several non-dispositive factors: (1) the duration of segregation and whether it increases the inmate's overall confinement duration; (2) whether the placement in segregation is indeterminate; (3) the

frequency with which the segregation placement is reviewed; (4) the penological interest furthered by segregation, "such as safety or rehabilitation;" and (5) whether the "conditions of placement are extreme." *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007). The Court notes that Plaintiff focuses his procedural due process claim almost entirely on the duration of his time in administrative segregation, while he focuses his substantive due process claim on conditions of confinement. *See* Docs. 40 at 8-10; 142 at 2. The Court restricts its procedural due process analysis accordingly, bearing in mind that none of the factors above is dispositive, and reserving discussion of conditions of confinement for Plaintiff's substantive due process claim.[8]

The undisputed material facts establish that: (1) Plaintiff's housing in administrative segregation was reviewed in accordance with MTC's policy and procedures, 132-1 at 9; Doc. 132-6; *see* Doc. 132-5; (2) Plaintiff never objected to placement in administrative segregation, Doc. 132-1 at 9-10; (3) Defendant MTC developed and maintained grievance procedures at OCPF for holdover offenders, *Id.* at 5; Doc. 132-4; and (4) Plaintiff never filed a grievance regarding placement in administrative segregation, Doc. 132-1 at 5, 10. These facts cut directly against Plaintiff's allegations, and establish that Plaintiff received the constitutional process due to an individual in his circumstances: "periodic review" of confinement in administrative segregation. *Hewitt*, 459 U.S. at 477 n.9. And Plaintiff did not avail himself to the grievance procedures available to him. *See Kister v. Dawson*, No. 20-CV-871, 2022 WL 875627, at *3 (N.D. Ala. Mar. 23, 2022) (rejecting a pretrial detainee's procedural due process claim because,

---

[8] To the extent Plaintiff's procedural due process claim is based on conditions of confinement, the Court notes the undisputed material facts establish that, while housed at OCPF, Plaintiff was afforded all the rights and privileges of general population inmates, including regular meals, access to the library, visits, and telephone calls, Doc. 132-1 at 9, and "confinement in administrative segregation under conditions substantially similar to those experienced by the general jail population does not implicate a liberty interest." *Anderson v. Chapman*, 604 F. App'x 810, 813 (11th Cir. 2015) (citing *Sandin*, 515 U.S. at 485-86).

10

*inter alia*, he "never requested a hearing" and "understood he could file a grievance about the placement" but did not). The undisputed material facts further establish that Plaintiff's placement in administrative segregation was for his protection and the safety and orderly maintenance of OCPF, and not for purposes of punishment. Doc. 132-1 at 8; *see id.* at 10. This is a legitimate concern. *See Hewitt*, 459 U.S. at 472; *Bell*, 441 U.S. at 561 ("Ensuring security and order at the institution is a permissible non-punitive objective, whether the facility houses pretrial detainees, convicted inmates, or both."). And it is one that triggers a limited degree of process, which Plaintiff was afforded but did not utilize:

> [T]he process required for administrative transfers of pretrial detainees need not be extensive. Detainees have a liberty interest in not being subjected to punishment for the crime with which they have been charged until after they have been convicted and sentenced, but the governmental interest in maintaining prison security for the duration of their detention is substantial. . . . Prison officials must provide detainees who are transferred into more restrictive housing for administrative purposes only an explanation of the reason for their transfer as well as an opportunity to respond.

*Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007). "[T]he opportunity to respond can be satisfied by written grievances." *Kanu v. Lindsey*, 739 F. App'x 111, 117 (3d Cir. 2018) (citing *Helms*, 459 U.S. at 476).

For these reasons, the undersigned recommends granting Defendants' Motion with respect to Count One.

### 2.    *Count Two – Substantive Due Process*[9]

---

[9]    The Court notes that Plaintiff's Complaint is brought pursuant to 42 U.S.C. § 1983, which "affords a remedy for violations of federal law and does not provide a basis for redressing violations of state law." *D.L. v. Unified Sch. Dist. No. 947*, 596 F.3d 768, 776 (10th Cir. 2010) (internal quotation marks and citation omitted). In Count Two, Plaintiff alleges that Defendants not only violated his federal constitutional right to substantive due process, but additionally violated "a similar substantive due process right under Article II Section 4 of the New Mexico Constitution." Doc. 40 at 9. "'Unlike federal law, New Mexico has no statute analogous to § 1983 that would provide for damages against government entities or their officials for past violations of state statutes or the state Constitution.'" *Price v. Whitten*, No. 20-CV-1099, 2021 WL 3663851, at *10 (D.N.M. Aug. 18, 2021) (quoting *Carter v. City of Las Cruces*, 915 P.2d 336, 340 (NM. Ct. App. 1996)); *see also Reynolds v. Bd. of Cnty. Comm'rs*, No. 00-168, 2000 WL 36739562, at *2 (D.N.M. Sept. 15, 2000). ("[The plaintiff's] attempt to bring a state constitutional claim against a public entity or public employee cannot be done outside the structure of the [NMTCA]."). Accordingly, to the extent Count Two is premised on Article II, Section 4 of the New Mexico Constitution, the Court recommends it be disposed

"Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted). "The Eighth Amendment requires jail officials 'to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measure to guarantee the inmates' safety.'" *Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). "To make a substantive due-process claim for 'conditions of confinement, a plaintiff must satisfy two requirements.'" *Romero*, 202 F. Supp. 3d at 1261 (quoting *Craig*, 164 F.3d at 495). "First, the alleged deprivation must be 'sufficiently serious,' which turns on the 'severity of the alleged deprivations' and 'their duration.'" *Id.* (quoting *Craig*, 164 F.3d at 495). Second, a plaintiff "must show that the jail officials had a 'sufficiently culpable state of mind.'" *Id.* (quoting *Craig*, 164 F.3d at 495). "In the context of prison-conditions claims, the required state of mind is one of deliberate indifference to inmate health and safety." *Craig*, 164 F.3d at 495 (internal quotation marks and citation omitted). This means that liability attached only when a jail official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal quotation marks and citation omitted).

---

of and summary judgment entered in Defendants' favor. As discussed more fully below, Plaintiff does seek recourse for alleged violations of a different right for which immunity is waived under the NMTCA, but he cannot premise his substantive due process claim on the New Mexico Constitution. And while the Court recognizes that the recent enactment of the New Mexico Civil Rights Act ("NMCRA"), N.M. Stat. Ann. § 41-4A-1 *et seq.*, may render the above principles null in the future, Plaintiff does not invoke the NMCRA, and even if he did, it would not apply to his claim. *See* N.M. Stat. Ann. § 41-4A-12 (2021) ("Claims arising solely from acts or omissions that occurred prior to July 1, 2021 may not be brought pursuant to the [NMCRA].").

12

Plaintiff alleges that his right to substantive due process was violated by Defendants because they failed to "adequately treat [his] known mental health conditions," choosing instead "to place [him] in solitary confinement to punish and abuse him." Doc. 40 at 9. Plaintiff further alleges that he "was unable to engage in adequate recreational time, including outside time and exercise," "was unable to maintain his personal hygiene, including showering and dental care, and was unable to maintain his general and dental health." *Id.* at 10. Plaintiff claims that he "repeatedly complained to Defendants of the unreasonable conditions to which he was being subjected, including repeatedly requesting medical and mental health care, access to showers, and access to outdoor recreation." *Id.*

The Court first notes that, in his response to the *Martinez* Report, Plaintiff does not dispute any of the medical information provided by MTC Defendants. Doc. 146 at 1-2 (discussing Hidalgo County Detention Center, for which MTC is not responsible, *see* Doc. 40 at 2 (alleging that "MTC is liable for any constitutional deprivations and other negligence caused by OCPF and its employees"), and SWCMG, who has since been dismissed as a party, Doc. 174). Setting aside Plaintiff's allegations bearing on medical and dental care, in his response to the instant Motion, he states that he "was denied adequate recreation time, shower time, the ability to interact with other human beings, not to mention [he] was not afforded the right to attend Christian services." Doc. 142 at 2. To the extent he raises new allegations in his response, they are not considered. *See Borum v. Coffeyville State Bank*, 6 F. App'x 709, 712 (10th Cir. 2001) (refusing to consider allegations mentioned only in response to the defendant's motion for summary judgment (citing *Lawmaster v. Ward*, 125 F.3d 1341, 1346 n.2 (10th Cir. 1997)).

13

The undisputed material facts establish that, while housed at OCPF, (1) Plaintiff was afforded all the rights and privileges of general population inmates, including regular meals, access to the library, visits, and telephone calls, Doc. 132-1 at 9; (2) FD, FC, MSHU 1, and MSHU 2, the units where Plaintiff was housed, were equipped with shower, recreation, and game facilities, *Id.*; *see* Docs. 132-15; 132-16; and (3) Plaintiff had access to and received medical care, including mental health and dental checkups, while he was housed at OCPF. Doc. 132-1 at 6, 9. Given these undisputed facts, Plaintiff's claim for violations of substantive due process fails at the first prong. The undisputed material facts do not indicate that Plaintiff's conditions of confinement amounted to a deprivation sufficiently serious such that his right to substantive due process was violated by Defendants. *See Craig*, 164 F.3d at 495 ("[T]he Constitution does not mandate comfortable prisons. To the contrary, jail conditions may be restrictive and even harsh without violating constitutional rights." (internal quotation marks and citations omitted)); *id.* ("Indeed, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." (omission, internal quotation marks, and citation omitted)).

Turning to the duration component of the first prong, the Court need not conduct a deep inquiry. First, the Court notes that any time voluntarily spent in administrative segregation need not be considered here. *Cf. Parker v. Walker*, No. 08-CV-152, 2008 WL 4837683, at *1, *4 (S.D. Ill. Nov. 6, 2008) (rejecting an inmate's Eighth Amendment claim because, *inter alia*, he voluntarily accepted the restrictions that accompanied disciplinary segregation). Second, as discussed extensively above regarding Plaintiff's procedural due process claim, Plaintiff's time in administrative segregation was predicated on legitimate concerns: his protection and the safety and orderly maintenance of OCPF, and not for purposes of punishment. Doc. 132-1 at 8. This

serves to foreclose his substantive due process claim. *See Stevenson*, 495 F.3d at 69 ("[W]here the allegations of punishment are coextensive with the allegations that form the basis for the procedural due process claim, it will generally be sufficient for the prison officials to submit affidavits to show that the classification was appropriate based on reasonable prison management concerns."); *id.* ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry."). Because Plaintiff has not demonstrated a sufficiently serious deprivation, and given OCPF's legitimate safety and institutional concerns, Plaintiff's claim fails at the first prong, the Court does not reach the state-of-mind inquiry. *See Romero*, 202 F. Supp. 3d at 1261.

For these reasons, the undersigned recommends granting Defendants' Motion with respect to Count Two.

    3.    *Count Three – Municipal and Corporate Liability*

"A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Rather, it may only be held liable "for its own unconstitutional or illegal policies." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). To establish municipal liability, the plaintiff is required to demonstrate (1) a municipal custom or policy exists, and (2) a direct causal link between the custom or policy and the plaintiff's alleged injury. *Id.*; *see also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1319 (10th Cir. 2002) ("It is absolutely necessary to show that the execution of the governments' policy or custom inflicted the injury in order to hold a municipality liable under

§ 1983." (alterations, omission, internal quotation marks, and citation omitted)). In addition to these elements, the plaintiff must show that the custom or policy complained of "was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013); *see also George ex rel. Bradshaw v. Beaver Cnty.*, 32 F.4th 1246, 1254 (10th Cir. 2022).

Plaintiff alleges that Defendant MTC "created policies of housing the mentally ill in segregation or solitary confinement" and "created policies of housing pre-trial detainees in segregation or solitary confinement." Doc. 40 at 11. Plaintiff further alleges that "[t]hese policies are to punish these detainees, rather than provide them adequate medical care or allow them to interact with the general population" and that "[t]hese policies were created with deliberate disregard for the rights of pre-trial detainees such as Plaintiff." *Id.* Finally, Plaintiff alleges that Defendant MTC "knew or should have known that placing detainees, such as Plaintiff, in extended lengths of solitary confinement would be detrimental to the detainees' mental and physical health." *Id.* He asserts that these policies were a moving force behind the violations of [his] constitutional rights." *Id.*

In cases where municipal and corporate liability is pled, the plaintiff may allege an action taken as a result of policy by showing that the constitutional injury resulted from the action or decision of an individual with final policy making authority with respect to the action ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 (1986). The plaintiff may also show a policy by demonstrating a widespread practice that, although not expressly authorized, is "so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Here, the only policies Plaintiff identifies do not apply to MTC Defendants. Specifically, Plaintiff cites the agreement between SWCMG and Otero County, New Mexico for inmate medical care (Doc. 133-1) and SWCMG's policy concerning medical and dental care (Doc. 133-2). Doc. 142 at 2. Plaintiff also identifies "policies and procedures . . . E-02, E06," without further elaboration, and with citation to Doc. 133-2, which, again, does not appear to apply to MTC Defendants. Doc. 142 at 2. He further states that "[t]hese same rules should apply to [MTC] Defendants whom at custody [sic] and supervised these violations." *Id.* So, liberally construed, it appears Plaintiff intends his theory of liability to be violations of policy so pervasive that it has become a custom. But, again, the policies Plaintiff has identified do not appear to apply to MTC Defendants; even if they did, to sustain a municipal liability claim, he must show that a policy itself caused him harm. Therefore, Plaintiff cannot sustain this claim. *See Barney*, 143 F.3d at 1307; *see also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1319 (10th Cir. 2002) ("It is absolutely necessary to show that the execution of the government's policy or custom inflicted the injury in order to hold a municipality liable under § 1983." (alterations, omission, internal quotation marks, and citation omitted)).

For these reasons, the undersigned recommends granting Defendants' Motion with respect to Count Three.

    4.    *Count Four – False Imprisonment Under the NMTCA*

"Under New Mexico law, false imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." *Gose v. Bd. of Cnty. Comm'rs*, 727 F. Supp. 2d 1256, 1260 (D.N.M. 2010) (internal quotation marks and citation omitted). "A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort

except as waived."[10] N.M. Stat. Ann. § 41-4-4(A) (2001). The immunity granted, however, does not apply to false imprisonment when caused by law enforcement officers. N.M. Stat. Ann § 41-4-12 (2020).[11] The doctrine of respondeat superior applies to claims brought under the NMTCA, so "a governmental entity may be held vicariously liable 'for any torts of its employees acting within the scope of duties for which immunity is waived.'" *Bradshaw*, 2023 WL 5934397, at *13 (quoting *Silva v. New Mexico*, 745 P.2d 380, 385 (N.M. 1987)). To prove a claim of false imprisonment, plaintiff is required to show that (1) Defendants intentionally confined him or restrained him without his consent, and (2) Defendants knew that they had no lawful authority to do so. *Scull v. New Mexico*, 236 F.3d 588, 599 (10th Cir. 2000) (citing *Diaz v. Lockheed Elecs.*, 618 P.2d 372, 376 (N.M. Ct. App. 1980)).

Plaintiff alleges that he "was placed in solitary confinement in violation of his state and federal constitutional rights, and that his "prolonged 38-month pretrial detention – much of which was spent in solitary confinement – was not justified or privileged under the [NMTCA] and therefore constituted false imprisonment." Doc. 40 at 12. He alleged that Defendant MTC is liable for the acts of Defendants Ochoa, Soto, Moya, and Camacho under the doctrine of respondeat superior. *Id.* For purposes of resolving Defendants' Motion as to this claim, the Court assumes that Defendants are law enforcement officers under the NMTCA. *See Sanders v.*

---

[10] Defendant MTC concedes that it is a governmental entity and Defendants Ochoa, Soto, Moya, and Camacho concede they are public employees within the meaning of the NMTCA. Doc. 135 at 20-21.

[11] A previous version of this statute was in effect at the time of Plaintiff's alleged harms. The present version was amended in 2020 to, *inter alia*, define "law enforcement officers." *Compare* § 41-4-12 (2020), *with id.* (1977). That definition is not at issue here, and both versions of the statute provide that there is no immunity for law enforcement officers who commit false imprisonment. In any event, the Court notes that, to the extent it is relevant, the prior version of the statute controls, because it was the one in effect on the day Plaintiff filed suit against Defendants. *See Bradshaw v. Mgmt. and Training Corp.*, No. 22-CV-139, 2023 WL 5934397, at *13 (D.N.M. Sept. 12, 2023) (concluding that the version of Section 41-4-12 that applies "is the version in effect when [the p]laintiff filed his lawsuit").

*N.M. Corrs. Dep't*, 528 P.3d 716, 726 (N.M. Ct. App. 2022) (discussing the law enforcement waiver in § 41-4-12), *cert. granted*, 2023-NMCERT-003 (No. S-1-SC-39690, March 28, 2023).

Plaintiff cannot satisfy the second prong of the test for false imprisonment. Specifically, he does not dispute that he was lawfully in the custody of OCPF. Rather, he asserts only that his placement in solitary confinement was in violation of his constitutional rights. Doc. 40 at 12. Above, the Court concluded that there are no genuine disputes over issues of material fact with respect to Plaintiff's claims premised on constitutional violations. Therefore, Plaintiff's claim for false imprisonment in violation of the NMTCA fails, as he cannot satisfy both prongs required for this claim.

For these reasons, the undersigned recommends granting Defendants' Motion with respect to Count Four.

## II. CONCLUSION

The undersigned recommends that the presiding judge **GRANT** MTC Defendants' Motion (Doc.135) in its entirety and enter summary judgment in their favor.

This proposed disposition renders Plaintiff's Motion (Doc. 147) moot, and thereby obviates the need for the Court to address it. Therefore, the undersigned further recommends that the presiding judge **DENY** Plaintiff's Motion.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

JOHN F. ROBBENHAAR
United States Magistrate Judge